M. Douglas Flahaut (SBN 245558)
**ECHO PARK LEGAL, APC**
2210 Sunset Blvd. # 301
Los Angeles, CA  90026
Telephone:      310.709.0658
Email:  df@echoparklegal.com
*Proposed* Counsel for Debtor and Debtor-in-
Possession Spearman Aerospace, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

In re

**Spearman Aerospace, Inc.**

               Debtor and Debtor-in-Possession

Case No. 2:25-bk-10917-DS

Chapter 11, Subchapter V

**DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Emergency Hearing:**

**Date:** February 11, 2025 *(proposed)*
**Time:** 1:00 p.m. *(proposed)*
**Location:**
Courtroom 1639
255 East Temple
Los Angeles, CA 90012

**TO THE HONORABLE DEBORAH SALTZMAN, UNITED STATES BANKRUPTCY JUDGE AND ALL PARTIES IN INTEREST:**

Spearman Aerospace, Inc, as debtor and debtor-in-possession in the above-captioned chapter 11 case ("Debtor") hereby moves this Court, on an emergency basis, for entry of interim and final orders approving cash collateral use pursuant to that certain budget through and including April 30, 2025 (the "Budget") attached to the 'First Day' declaration of Scott Holand (the "Holland Declaration") filed substantially concurrently herewith as **Exhibit 1** thereto.

The Debtor makes this Motion pursuant to Section 363 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Bankruptcy Rules 4001-2 and 9075-1.  As set forth herein and in the attached Memorandum of Points and Authorities and the Holland Declaration, there are good and sufficient grounds to grant the requested usage of cash collateral.

The Debtor is a manufacturer of specialized aerospace parts and components out of steel, aluminum, titanium, and other metals for its customers, which include Lockheed, Ducommun, Boeing, and other aerospace companies.  It requires usage of cash collateral to pay its employees as well as the costs and expenses it must incur to continue its operations and ensure the going concern value of the Debtor is maintained for all stakeholders.

<u>**Summary of Certain Cash Collateral Provisions**</u>

***Name of Each Entity with an Interest in the Cash Collateral:*** As set forth in the Holland Declaration, many UCC-1 financing statements and judgement liens have been filed against this Debtor with the California Secretary of States and the Debtor will endeavor to serve notice of this motion on all parties that have filed a UCC-1 or judgment lien against the Debtor that has not (i) lapsed, (ii) been withdrawn, or (iii) is the subject of a subsequent filed notice of satisfaction. However, based on information and belief, a more manageable number of these UCC-1 filings appear to (1) relate to an unsatisfied debt of the Debtor and (2) contain descriptions of collateral that would arguably give such creditor an interest in the Debtors cash collateral.[1]  Thus, the Debtor believes Pacific Premier Bank (as successor in interest to Opus Bank) may be the only

---

[1] Many of the UCC-1 financing statements filed against this Debtor contain narrow collateral descriptions describing specific pieces of machinery, etc… and, as such, any asserted liens would not extend to the Debtor's cash collateral.

secured creditor with an interest in cash collateral.  This is because while Midland States Bank, Valley Acquisition Corporation, Celtic Capital Corporation, and ASSN Company may have a cognizable interest in its cash collateral based on their filings with the Secretary of State, the Debtor believes Midland States Bank underlying debt has been fully satisfied by way of a repossession of machinery that took place in June 2024.  Moreover, the Debtor also believes the underlying debts owed to ASSN Company, Celtic Capital Corporation and Valley Acquisition Corporation have also been satisfied, though given the omission and misrepresentations made by the seller in connection with the sale, the Debtor cannot be sure.  For purposes of this Motion, the term "Secured Creditors" shall mean the entity or entities that have a perfected security interest in the Debtor's cash collateral.  A true and correct copy of the Lien Search Summary is attached as **Exhibit 2** to the Holland Declaration.

*The Purpose for the Use of Cash Collateral:* Business operations including, paying employee wages, buying necessary inventory and materials, paying insurance, paying taxes, paying utilities, and paying other necessary expenses to continue operation of the Debtor's business.

*Material Terms, Including Duration, of the Use of Cash Collateral:* The Debtor will use cash collateral pursuant to the Budget through and including April 30, 2025 or such earlier date as the Debtor confirms a chapter 11 plan of reorganization, in amounts not to exceed 115% of the monthly amounts contained in the each line item in the Budget, with all budget savings carried over and available to the Debtor for use in subsequent weeks.

*Any Liens, Cash Payments, or Other Adequate Protection that Will be Provided:* For and solely to the extent of any diminution in the value of the cash collateral, Secured Creditors will be adequately protected by the maintenance and preservation of the going concern value of the Debtor and the granting of replacement liens (the "Replacement Liens" or "Replacement Lien"), to the extent of the diminution of value in the Secured Creditors' collateral, if any, in and to all of the Debtor's personal property but excluding any avoidance or turnover actions under Chapter 5 of the Bankruptcy Code and the pre-petition retainer provided to Echo Park Legal,

1  APC, in the same validity and priority and scope as the pre-petition liens of the Secured

2  Creditors, with all rights to challenge such liens specifically reserved.

3      The Debtor has an ongoing need to use cash collateral to maintain the going concern value

4  of the Debtor and ensure the Debtor's value is maximized for the benefit of its creditors and

5  stakeholders. Discontinuing access to cash collateral at this time will invariably lead to a

6  diminution of the value of the Debtor's Estate to the detriment of creditors. Additionally, the

7  terms of the Debtor's proposed use of cash collateral are reasonable and adequately protect the

8  Secured Creditors that have asserted an interest in the cash collateral because the value of the

9  Debtor's assets will be preserved by the Debtor's continued operation, thereby maximizing value

10  for all creditors.

11      Pursuant to Federal Rule of Bankruptcy Procedure 4001(b)(1)(A) a copy of the Debtor's

12  proposed form of order granting this Motion is attached hereto as **Exhibit 3** to the Holland

13  Declaration.

14      WHEREFORE, the Debtor respectfully requests that this Court enter an order: (1)

15  granting this Motion; (2) authorizing the use of cash collateral (initially on an interim basis and

16  then, subsequently, on a final basis) through and including April 30, 2025 pursuant to the Budget;

17  (3) waiving any applicable stay under FRBP 6003 and 6004 or any other stays and providing any

18  order is immediately effective, and (4) granting other further relief as may be necessary and

19  appropriate.

20  RESPECTFULLY SUBMITTED,

21  DATED: February 7, 2025                    **ECHO PARK LEGAL, APC**

22                                             /s/ M. Douglas Flahaut.
                                               *Proposed* Counsel for Debtor and Debtor-in-
23                                             Possession Spearman Aerospace, Inc.

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Case Background

The Debtor is in the business of making specialized aerospace parts and components out of steel, aluminum, titanium and other metals for its customers, which include Lockheed, Ducommun, Boeing, and other aerospace companies.  The components made by the Debtor are designed and/or machined in the Debtor's shop located in Santa Fe Springs, California and then shipped nationally.  The Debtor specializes in fabricating highly specialized components for both commercial and military applications, in addition to supporting fabrication of components used on aircraft platforms that are classified as being Top Secret and are controlled by the Department of Defense of the United States of America.  Furthermore, the Debtor is ITAR certified and D.O.D cyber security certified as it is required to be a custodian of the technical data essential to fabricating the components it produces.

As of the petition date, the Debtor has approximately nine employees and its principal assets consist of primarily 12 high-end CNC milling machines and metal working equipment.

On October 10, 2024, SPAC Holdings I, LLC (the "Current Owner") acquired 100% of the stock of the Debtor from Urio Zanetti and his solely controlled entity Arca Investments, LLC (collectively "Zanetti").  Since October 10, 2024 the Current Owner has engaged outside legal and financial advisors in an attempt to reconcile the Debtor's books and records which were previously maintained and controlled by Zanetti.  Unfortunately, these records are severely deficient and appear to contain multiple omissions and false representations.  On December 24, 2024 the Debtor and the Current Owner commenced an action against Zanetti for Fraud, etc… related to, among other things, the omissions and false representations discussed above.  That action is currently pending in the Los Angeles County Superior Court as Case No. 24STCV34051.  The severity of the omissions and misrepresentations was so great

that the Debtor has been unable to reliably produce monthly and annual cash reconciliation since the October 10, 2024 purchase.

Suffice it to say that since its purchase of the Debtor the Current Owner has discovered the financial condition of the Debtor was significantly worse than was represented in connection with the acquisition.  Owing to the Debtor's poor financial condition, the Debtor has been unable to pay its debts and in the past months has faced significant negative collection actions, including a bank levy and the filing of an unlawful detainer action by its landlord.

In order to comprehensively address its cash flow issues, prepare accurate financial records, and maximize the value of its business operations for the benefit of all creditors and interest holders, the Debtor made the difficult decision to seek bankruptcy relief and elected to file a voluntary petition on February 6, 2025.

## II.    The Debtor Needs to Use of Cash Collateral to Avoid Immediate and Irreparable Harm

The Debtor needs to use cash collateral to maintain its operations, fulfill open orders, pay wages, and otherwise ensure the business retains its going concern value.  As provided in the Budget attached to the Holland Declaration, the Debtor anticipates operation through April 30, 2025 will ensure the value of the Debtor is preserved for the benefit of creditors and interest holders. However, failure to continue operations is sure to result in a significant loss of value, which would be compounded by the loss of revenue generated by such operations. Moreover, prohibiting the Debtor from using cash collateral would prevent it from maintaining necessary insurance coverage and otherwise protect the interests of the estate and all parties. Accordingly, if this Motion is not approved, the value of the Debtor's estate will suffer greatly. However, by continuing to use the cash collateral pursuant to the Budget and maintaining its

operations, the Debtor will preserve the value of the Estate for the benefit of all creditors and interest holders.

## ARGUMENT

### I.    Use of Cash Collateral Pursuant to the Budget and Other Proposed Terms is Appropriate and Necessary

A debtor-in-possession's use of estate property is generally governed by Section 363 of the Bankruptcy Code, which provides in pertinent part:

> "If the business of the debtor is authorized to be operated under section… 1108… of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."

11 U.S.C. 363(c)(1).  Section 363(c)(2) goes on to establish a special requirement with respect to cash collateral, providing that a debtor-in-possession may use cash collateral if: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. 363(c)(2)(A) and (B).  Further, upon the request of an entity that has an interest in property proposed to be used, the court shall prohibit or condition such use "as is necessary to provide adequate protection of such interest."  11 U.S.C. 363(e).

"While the term 'adequate protection' is not defined in the Bankruptcy Code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to the decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent."  *In re Mellor*, 734 F.2d 1396. 1400 (9th Cir. 1984).  An "interest is not adequately protected if the security is depreciating during the term of the stay."  *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 370 (1988).

As a preliminary matter it is well established that a bankruptcy court, where possible should, resolve issues in favor of the Debtor's continue operations, especially early in the reorganization process. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1397-98 (10th Cir. 1987) ("The first effort of the court must be to ensure the value of the collateral will be preserved…. In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard."); *In re Heatron, Inc.,* 6 B.R. 493, 496 (Bankr. W.D. MO 1980) ("At the beginning of the reorganization process, the Court must work with less evidence than might be desirable and should resolve issues in favor of the reorganization, where the evidence is conflicting.").  Indeed, it is well-settled that it is appropriate for a chapter 11 debtor to use cash collateral for a reasonable period of time for the purpose of maintaining and operating its property.  *See In re Oak Glen R-Vee,* 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981); *In re Tucson Indus. Partners,* 129 B.R. 614 (9th Cir. BAP 1991).

Here, all creditors with an interest in the Debtor's cash collateral will be protected by the continued operation of the Debtor's business and the generation of additional income. Indeed, courts routinely recognize that using cash collateral to preserve the value of a secured creditor's collateral can be sufficient to provide adequate protection and a Debtor need not necessarily make adequate protection payments when the Debtor's use of the cash collateral is vital to maintain, and may also, increase the value of the secured creditor's collateral.  *See e.g. In re McCombs Properties VI, Ltd.,* 88 B.R. 261, 267 (Bankr. CD Cal. 1988); *In re Certified Corp.*, 51 B.R. 154, 156 (Bankr. D. Hawaii 1985).

Here, the Debtor believes that each secured creditor with a purported interest in its cash collateral is protected by the Debtor's maintenance of such collateral.  Nevertheless, to ensure their adequate protection the Debtor also proposes to grant the Replacement Liens to each

Secured Creditor.  Indeed, replacement liens are a judicially recognized form of adequate protection.  *See, e.g., In re Att'ys Off. Mgmt., Inc.*, 29 B.R. 96, 99 (Bankr. CD Cal. 1983) ("Section 361(b)(2) provides that an additional or replacement lien will suffice as a means of adequate protection where the use of the property… results in a decrease in the value….").

In this case the Debtor proposes to grant Replacement Liens to the Secured Creditors for the use of cash collateral.  During the term described in the Budget, the Secured Creditors will be granted Replacement Liens to the extent of the diminution of value of their collateral, if any, against the Debtor's post-petition assets but excluding any avoidance or turnover actions under Chapter 5 of the Bankruptcy Code and the pre-petition retainer provided to Echo Park Legal, APC, with the same validity, priority, and scope as each lender had with its pre-petition lien against property of the Debtor.[2]  The Replacement Liens secure diminution in value of the secured creditor's interests in its collateral, if any, and shall be in addition to the Secured Creditors' pre-petition security interests in the collateral.

The Replacement Liens granted: (1) are and shall be in addition to all security interests, liens, and rights of set-off of the Secured Creditors existing as of the Petition Date; and (2) are and shall be valid, perfected, and enforceable against all other person or entities and effective as of the date of the entry of an Order granting this Motion without any further action by the Debtor or any Secured Creditor and without the necessity of the execution, filing, serving, or recordation of any financing statements, security agreements, deeds, mortgages, or other documents that may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests or liens granted to the Secured Creditor.

---

[2] The Debtor obviously specifically reserves all rights to challenge the validity, amount, and / or priority of the asserted secured claims of all Secured Creditors.

This grant of the Replacement Liens is without prejudice to the Debtor's ability to seek to use any cash collateral subject to such Replacement Lien, or to surcharge such collateral under 11 U.S.C. § 506(c). The Secured Creditors are not automatically entitled to a lien on such assets. Furthermore, as discussed below, to the extent the secured creditors might claim a lien or liens on sale proceeds under 11 U.S.C. § 552(b)(1), such liens could and should be limited under 11 U.S.C. § 552(b)(2).

## II.    Emergency Relief Is Proper and Necessary

Section 363(c)(3) of the Bankruptcy Code and Rule 4001 provide the grounds for immediate relief for use of cash collateral and permit the Court to hold a preliminary hearing. *See also In re Center Wholesale, Inc.*, 759 F.2d 1440, 1449 at n. 21 (9th Cir. 1985).  Here, emergency use of cash collateral pursuant to the Budget is necessary for the Debtor to continue its limited maintenance operations and thereby ensure the value of the Debtor's assets is maintained for the benefit of the Secured Creditors, and indeed all creditors and interest holders.  The Debtor supports setting a final hearing on at least 14 days' notice as is required pursuant to the Bankruptcy Rules.

## III.    Manner and Form of Notice

The Debtor has complied with the procedural requirements of obtaining approval of cash collateral use.  Here, the Budget is attached to the Holland Declaration as well as to this Motion, and a proposed form of order is also attached to this Motion as **Exhibit 3**.  As required, this Motion begins with a concise statement of the relief requested and summarizes the material provisions of the proposed cash collateral usage.  Finally, pursuant to Local Bankruptcy Rule 4001-2(a) a copy of the mandatory Local Bankruptcy Form 4001-2 will be filed concurrently herewith.

The Debtor will provide telephonic, email, and/or mail notice of the hearing on this

Motion in the form and manner the Court may direct to: (a) the United States Trustee; (b) all

Secured Creditors; (c) the 20 largest unsecured creditors; and (d) all entities entitled to special

notice.  Due to the nature of the relief requested, the Debtor respectfully submits that this

service complies with the Rules and that no further notice of this Motion is required.

## CONCLUSION

**WHEREFORE**, based on the forgoing Motion and Memorandum of Points and

Authorities and the supporting Holland Declaration which includes the Budget; the notice of the

Motion; all pleadings and records on file in this case; all matters that are subject to judicial notice;

and all other evidence that may be introduced at or prior to any hearing on this Motion, the

Debtor respectfully requests entry of an order: WHEREFORE, the Debtor respectfully requests

that this Court enter an order: (1) granting this Motion; (2) authorizing the use of cash collateral

(initially on an interim basis and then, subsequently, on a final basis) through and including April

30, 2025 pursuant to the Budget; (3) waiving any applicable stay under FRBP 6003 and 6004 or

any other stays and providing any order is immediately effective, and (4) granting other further

relief as may be necessary and appropriate.


RESPECTFULLY SUBMITTED,

DATED: FEBRUARY 7, 2024                    **ECHO PARK LEGAL, APC**

                                           /s/ M. Douglas Flahaut.
                                           *Proposed* Counsel for Debtor and Debtor-in-
                                           Possession Spearman Aerospace, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Echo Park Legal, APC, 2210 W Sunset Blvd. #301, Los Angeles, CA 90026.

A true and correct copy of the foregoing document entitled (*specify*): _____
___*Debtor's Emergency Motion for Interim and Final Orders Authorizing the Use of Cash Collateral; Memorandum of Points and Authorities in Support Thereof* __  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 7, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **M Douglas Flahaut**   df@echoparklegal.com
- **Noreen A Madoyan**   Noreen.Madoyan@usdoj.gov
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On  (date)  I *caused to be* served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 2/7/2025 | M. Douglas Flahaut | /s/ M. Douglas Flahaut |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.