1  M. Douglas Flahaut (SBN 245558)
   **ECHO PARK LEGAL, APC**
2  2210 Sunset Blvd., 301
   Los Angeles, CA 90026
3  Telephone:    310.709.0658
   Email: df@echoparklegal.com
4  *Proposed* Counsel for Debtor and Debtor-in-
   Possession Spearman Aerospace, Inc.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>**Spearman Aerospace, Inc.**<br><br>Debtor and Debtor-in-Possession | Case No. 2:25-bk-10917-DS<br><br>Chapter 11, Subchapter V<br><br>**DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION LOAN; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF SCOTT HOLLAND IN SUPPORT THEREOF**<br><br>**Hearing:**<br><br>Date: April 8, 2025<br>Time: 1:00 p.m.<br>**Location:**<br>Courtroom 1639<br>255 East Temple<br>Los Angeles, CA 90012 |

**TO THE HONORABLE DEBORAH SALTZMAN, UNITED STATES BANKRUPTCY JUDGE AND ALL PARTIES IN INTEREST:**

Spearman Aerospace, Inc, as debtor and debtor-in-possession in the above-captioned chapter 11 case ("Debtor") hereby moves this Court for entry of an order authorizing the Debtor to obtain a postpetition loan on the terms and conditions specified in that certain Post-Petition Promissory Note (the "Promissory Note"), a true and correct copy of which is attached to the declaration of Scott Holland (the "Holland Declaration") as **Exhibit 1**. In addition, in support of this Motion, the Debtor relies on and hereby incorporates by reference the *First Day Declaration of Scott Holland* [Dkt. No. 2] (the "First Day Declaration") and all papers and pleadings on file herein, and such other evidence that may be presented to the Court at or prior to the hearing on the Motion.

**WHEREFORE**, the Debtor seeks an order of the Court: (1) authorizing the Debtor to execute the Promissory Note and enter into the proposed post-petition financing transaction with the Current Owner as provided for herein; (2) granting the Current Owner a security interest in assets of the Debtor's bankruptcy estate as provided for herein and in the Promissory Note to secure repayment of amounts advanced to the Debtor under the Promissory Note; (3) a waiver of Rule 6004(h) stay (to the extent applicable); and (4) for other and further relief as necessary.

DATED: March 18, 2025

**ECHO PARK LEGAL, APC**

/s/ M. Douglas Flahaut
*Proposed* Counsel for Debtor and Debtor-in-Possession Spearman Aerospace, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Debtor filed this Chapter 11 bankruptcy case after it was discovered that the Debtor's previous owner, Urio Zanetti and his solely controlled entity Arca Investments, LLC (collectively "Zanetti"), perpetrated fraud and mispresented the financial health of the Debtor, such that the Debtor was in previously unidentified severe financial difficulty. While there is a currently pending lawsuit against Zanetti in state court, the Debtor is attempting to use the bankruptcy process to reorganize its business, comprehensively address its cash flow issues, prepare accurate financial records, and maximize the value of its business operations for the benefit of all creditors and interest holders.

The Court has already authorized the Debtor to use cash collateral in this case through April 30, 2025. However, in order to fund its operations through the confirmation of a plan of reorganization, the Debtor requires additional debtor-in-possession ("DIP") financing. The Debtor has agreed with the Current Owner (defined below) for a loan of up to $500,000 (the "Principal Balance"), at 4% interest. In essence, the proposed financing vehicle provides the Debtor with a line of credit, up to the Principal Balance, which the Debtor may utilize if the Debtor needs the funds through confirmation of its plan and/or if necessary to consummate the plan. In return, the Current Owner shall receive an administrative claim in accordance with Section 503(b)(1) of the Bankruptcy Code for the Principal Balance. In addition, the DIP Loan shall be secured by all unencumbered post-petition assets of the Debtor's bankruptcy estate, including the avoiding power claims of the Debtor's bankruptcy estate that arise under Chapter 5 of the Bankruptcy Code and the Debtor's rights in the pending action against Zanetti. In the event the case is converted to Chapter 7, the Current Owner shall be deemed to have a duly perfected lien against all the Debtor's assets, subordinate only to the interest held by any duly perfected purchase money security interest of an equipment lender.

## II.

## **BACKGROUND**

The Debtor is a California corporation that is 100% owned by SPAC Holdings I, LLC ("Current Owner"). The Debtor is in the business of making specialized aerospace parts and components out of steel, aluminum, titanium and other metals for its customers, which include Lockheed, Ducommun, Boeing, and other aerospace companies. The components made by the Debtor are designed and/or machined in the Debtor's facility located in Santa Fe Springs, California and then shipped nationally. The Debtor specializes in fabricating highly specialized components for both commercial and military applications, in addition to supporting fabrication of components used on aircraft platforms that are classified as being Top Secret and are controlled by the Department of Defense of the United States of America. Furthermore, the Debtor is ITAR certified and D.O.D cyber security certified, as it is required to be a custodian of the technical data essential to fabricating the components it produces.

The Debtor has approximately eleven employees, and its principal assets consist of high-end CNC milling machines and metal working equipment. On October 10, 2024, the Current Owner acquired 100% of the stock of the Debtor from Zanetti. Since October 10, 2024 the Current Owner has engaged outside legal and financial advisors in an attempt to reconcile the Debtor's books and records which were previously maintained and controlled exclusively by Zanetti. Unfortunately, these records were severely deficient and appeared to contain multiple omissions and false representations. On December 24, 2024 the Debtor and the Current Owner commenced an action against Zanetti for Fraudulent Concealment, Intentional Misrepresentation, and other causes of action related to, among other things, the omissions and false representations discussed above. That action is currently pending in the Los Angeles County Superior Court as Case No. 24STCV34051 (the "Zanetti Action").

To comprehensively address its cash flow issues, prepare accurate financial records, and maximize the value of its business operations for the benefit of all creditors and interest holders, the Debtor made the difficult decision to seek bankruptcy relief and elected to file a voluntary petition under Chapter 11, Subchapter V, of the Bankruptcy Code on February 6, 2025. The Debtor

intends to file a motion to value and plan that will seek to bifurcate the claims of its purported secured creditors and pay those purported secured creditors holding a valid and perfected lien in collateral, the allowed amount of their claim(s) up to the value of that collateral in full. All purported secured claims in excess of the value of the underlying collateral will be treated as general unsecured claims and share (along with the Debtor's other general unsecured creditors) in the Debtor's projected disposable income over three (3) years.

On February 7, 2025, the Debtor filed a motion seeking an interim and final order authorizing the use of cash collateral [Dkt. No. 3], which the Court has granted [Dkt. No. 35] on an interim basis through April 30, 2025. Through this Motion, the Debtor seeks approval of a financing vehicle which will provide the Debtor with financing to fund operations until the approval of the Debtor's plan of reorganization, and for financing to consummate the plan (if necessary). This DIP financing is necessary because the Debtor's cash flow has not been sufficient to pay certain post-petition obligations and one of its creditors (NEU Investments, LLC) has filed a motion [Dkt. No. 59] on account of such non-payment.

After careful consideration and negotiation, the Debtor has reached an agreement with the Current Owner for a loan in the amount of up to $500,000 (the "Principal Balance"), at an interest rate of 4% per annum (the "DIP Loan"). The proposed financing vehicle provides the Debtor with a line of credit, up to the Principal Balance, which the Debtor may utilize through confirmation of its plan and/or if necessary to consummate the plan. The Current Owner shall receive an administrative claim in accordance with Section 503(b)(1) of the Bankruptcy Code for the Principal Balance. In addition, the DIP Loan shall be secured by all unencumbered post-petition assets of the Debtor's bankruptcy estate, including the avoiding power claims of the Debtor's bankruptcy estate that arise under Chapter 5 of the Bankruptcy Code and the Debtor's bankruptcy estate's rights in and to the Zanetti Action. Finally, in the event the Debtor's case is converted to Chapter 7, then the Current Owner shall be deemed to have a duly perfected lien against all of the Debtor's assets subordinate only to the interest held by any duly perfected purchase money security interest of an equipment lender. No further document, filing, or recording will be required to evidence the Current Owner's security interest as provided herein and Bankruptcy Court's order approving the

Promissory Note shall be evidence of the validity and priority of the security interest granted to the Current Owner herein.

### III.

### RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

In compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Rule 4001-2 of the Local Bankruptcy Rules ("LBR") the Debtors will concurrently file the Form 4001.2 finance statement with this instant Motion.

### IV.

### THE DEBTOR'S PREPETITION LENDER AND OTHER LIENHOLDERS

As set forth in the First Day Declaration, many UCC-1 financing statements and judgement liens have been filed against this Debtor with the California Secretary of States. However, based on information and belief, a number of these UCC-1 filings relate to a debt that was satisfied pre-petition or concern collateral that is not property of the bankruptcy estate. More particularly, the Debtor believes that the relevant liens in this case consist of (1) the purchase money security interests securing one or more specific items of machinery which would appear to be in a first-priority position vis-à-vis the specific item or items of machinery and (2) the blanket lien of Pacific Premier Bank. There are one or more recorded blanket liens junior to Pacific Premier Bank, but they would appear to be "out of the money" under any scenario. As the Debtor noted in its Cash Collateral Motion [Dkt. No. 3], Pacific Premier Bank (as successor in interest to Opus Bank) appears to be the only secured creditor with a material interest in cash collateral. Though given the omissions and misrepresentations made by Zanetti in connection with the sale, the Debtor cannot be sure.

### V.

### SUMMARY OF THE DIP FINANCING

Through this Motion, the Debtor seeks entry of an approving the DIP Loan in the amount of up to $500,000 pursuant to the terms in the Promissory Note. The Debtor also seeks the authorization to enter into the DIP Loan, or a substantially similar version of that agreement. A summary of the DIP Loan is as follows:

(a) **The DIP Loan**: Subject to the terms and conditions of the Promissory Note, the Current Owner agrees to make a loan or loan (each, a "DIP Advance") in the aggregate amount of up to $500,000 in accordance with the requirements of the Promissory Note. The proceeds of the DIP Loan shall be used by the Debtor to fund its ongoing operations and if necessary, to consummate the plan, i.e., exit financing.

(b) **Interest**: Interest shall accrue on the unpaid principal amount of the DIP Loan from the date of each DIP Advance is disbursed until the Principal Balance of the DIP Loan is paid in full at a rate equal to 4% per annum. Interest shall be calculated on the basis of a thirty-day (30) month and a three hundred sixty-day (360) year, except that (i) provided the advance date occurs on a date other than the first day of the month, interest payable for the period commencing on the advance date and ending on the last day of the month during which the advance date occurs shall be calculated on the basis of the actual number of days elapsed over a 365-day year. Upon the occurrence and during the continuance of an Event of Default, such rate shall increase to 10% per annum, simple interest.

(c) **Maturity**: The Maturity Date of the DIP Loan shall be the earlier to occur of: (1) the twenty-fourth (24th) month following the effective date of the Debtor's Chapter 11 Plan of Reorganization; (2) the date that the Case is converted to Chapter 7 of the Bankruptcy Code; (3) the appointment of a trustee in the Case, other than a Subchapter V trustee; (4) the dismissal of the Case; or (5) May 1, 2027.

(d) **Security Interest**: The Promissory Note shall be secured by all unencumbered post-petition assets of the Debtor's bankruptcy estate including the claims of the Debtor's bankruptcy estate that arise under Chapter 5 of the Bankruptcy Code and the Debtor's bankruptcy estate's rights in and to the Zanetti Action. Finally, in the event the Debtor's case is converted to Chapter 7, then the Current Owner shall be deemed to have a duly perfected lien against all of the Debtor's assets subordinate only to the security interests held by any duly perfected purchase money security interest of an equipment lender. No further document, filing, or recording will be required to

evidence the Current Owner's security interest as provided herein and Bankruptcy Court's order approving the Promissory Note shall be evidence of the validity and priority of the security interest granted to Current Owner.

(e)   **Priority Claims**: The Current Owner shall be granted an administrative claim in accordance with Section 503(b)(1) of the Bankruptcy Code for the Principal Balance of the DIP Loan.

## VI.

## <u>LEGAL ARGUMENT</u>

Section 364(c)(1) allows a trustee to obtain post-petition financing "with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title." To obtain such financing, the trustee must "demonstrate that it has reasonably attempted, but failed, to obtain unsecured credit under sections 364(a) or (b)." *See In re Ames Dept. Stores Inc.*, 115 B.R. 34, 37 (Bankr S.D.N.Y. 1990). Here, the Debtor's President and CEO is experienced in the aerospace manufacturing business and he has reached out to his banking relationships and has confirmed that such financial institutions would absolutely not provide the Debtor with either (i) junior secured post-petition financing (*i.e.*, financing secured by a lien junior to all existing liens), or (ii) unsecured post-petition financing. Thus, the Debtor believes that the DIP Loan is on more favorable terms than the Debtor would be able to get from any third-party lender not affiliated with the Debtor.

Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" loans. Pursuant to Section 364(d)(1), the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien only if—

(1)   the trustee is unable to obtain such credit otherwise; and

(2)   there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted. 11 U.S.C. § 364(d)(1). In satisfying the standards of 11 U.S.C. § 364, a debtor need not seek credit from every available source, but should make a reasonable effort to seek other sources of credit available under § 364(a) and (b). *See, e.g., In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee had

demonstrated by good faith effort that credit was not available without senior lien by unsuccessfully contacting other financial institutions in immediate geographic area; "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); *Ames, supra*, 115 B.R. at 40 (finding that debtors demonstrated the unavailability of unsecured financing where debtors approached four lending institutions).

In analyzing a motion for post-petition financing, "the court's discretion under section 364 is to be utilized on the grounds that permit the reasonable business judgment [of the Trustee] to be exercised. . ." *In re Ames Dept. Stores Inc., supra*, at 37. In addition to showing that there is no unsecured financing available, some courts have required that a trustee show that "[t]he credit transaction is necessary to preserve the assets of the estate; and . . . [t]he terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender." *In re Aqua Associates*, 123 B.R. 192, 196 (Bankr. E.D. Penn. 1991).

Here, the Debtor has obtained a loan on the best terms available to it. The DIP Loan will allow the Debtor to continue operate until the Debtor can confirm its plan of reorganization, and if necessary to provide exit financing to consummate the plan. The financial condition of the Debtor was significantly worse than was represented in connection with the acquisition. Owing to the Debtor's poor financial condition and the disruption that resulted from the bankruptcy filing on February 6, 2025, the Debtor has had significant difficulty staying current on its post-petition debts and the DIP Loan will ensure that it can continue to operate through confirmation of its plan, maintain its going-concern value, and pay post-petition obligations. This will ensure unsecured trade creditors as well as the significant secured creditor deficiency claims will receive some value from the Debtor's ongoing operations though the plan, rather than nothing in a chapter 7 liquidation.

Without the DIP Loan, the Debtor will lack sufficient funds to operate while proceeding through the reorganization process. Failure to continue operations is likely to result in a significant loss of value, which would be compounded by the loss of revenue generated by such operations. Moreover, prohibiting the Debtor from obtaining DIP financing would prevent it from maintaining necessary insurance coverage and otherwise protecting the interests of the Estate and all parties. Accordingly, if this Motion is not approved, the value of the Debtor's estate will suffer greatly.

However, by permitting the DIP Loan, the Debtor will maintain operations and will preserve the value of the Estate for the benefit of all creditors and interest holders. Therefore, the instant bankruptcy case and the DIP Loan will enable the Debtor to reorganize its business. The terms of the DIP Loan are fair and reasonable under the circumstances. Consequently, the Debtor submits the DIP Loan is in the best interests of the Estate, and requests that the Court grant this Motion.

## VII.

## PROCEDURAL REQUIREMENTS

FRBP 4001(c) sets forth procedural requirements for obtaining credit. Specifically, FRBP 4001(c)(1) requires that: "A motion for authority to obtain credit shall be made in accordance with Rule 9014 and shall be served on . . . the creditors included on the list filed pursuant to Rule 1007(d), and on such other entities as the court may direct. The motion shall be accompanied by the copy of the agreement." A copy of this Motion will be served by regular mail to the Debtor's 20 largest unsecured creditors, the Office of the United States Trustee, and all creditors with an alleged security interest. Accordingly, the Motion complies with the requirements of FRBP 4001(c)(1), and thus the Debtor requests that the Court authorize the Debtor to enter into the DIP Loan.

## VIII.

## CONCLUSION

Under the circumstances of these cases, the Court should authorize the Debtor to obtain the DIP Loan and enter an order: (1) authorizing the Debtor to execute the Promissory Note and enter into the proposed post-petition financing transaction with the Current Owner as provided for herein; (2) granting the Current Owner a security interest in assets of the Debtor's bankruptcy estate as provided for herein and in the Promissory Note to secure repayment of amounts advanced to the Debtor under the Promissory Note; (3) a waiver of Rule 6004(h) stay (to the extent applicable); and (4) for other and further relief as necessary. and grant the Debtor such other and further relief as is just and appropriate under the circumstances of this case.

DATED: March 18, 2025  ECHO PARK LEGAL, APC

/s/ M. Douglas Flahaut.
*Proposed* Counsel for Debtor and Debtor-in-Possession Spearman Aerospace, Inc.

- 10 -

## DECLARATION OF SCOTT HOLLAND

I, Scott Holland, declare as follows:

1. I am over the age of 18 and have knowledge of the facts set forth in this Declaration either from my own personal knowledge or from my review of documents and records of Spearman Aerospace, Inc. (the "Debtor") and/or my discussions with management, attorneys, and/or employees of the Debtor. I make this declaration in support of the Debtor's *Motion for Order Authorizing the Debtor to Obtain Post-Petition Loan* (the "Motion").[1]

2. I am the sole member of the Debtor's board of directors and serve as its President and CEO.

3. I have carefully reviewed the Debtor's cash needs to maintain its operations and thereby preserve value for the estate and have carefully evaluated all possible ways to conserve cash while still operating and maintaining revenue. After this analysis, I believe that the Debtor will require additional DIP funding to maintain the Debtor's operations through the confirmation of a plan of reorganization and potentially to consummate its plan of reorganization. Without such additional funding, I believe the value of the Debtor is likely to decrease significantly, thereby harming all creditors and interest holders. More specifically, the DIP Loan will allow the Debtor to continue to operate and confirm a plan of reorganization, which will pay creditors the projected disposable income of the Debtor over three years. If, however, the Debtor cannot continue to operate and converts to chapter 7 unsecured creditors (including the deficiency claims of purported 'secured creditors' above the value of the collateral) are expected to receive nothing.

4. Accordingly, the Debtor has negotiated the DIP Loan with the Current Owner, pursuant to the Promissory Note, a true and correct copy of which is attached hereto as **Exhibit 1**.

5. The DIP Loan provides, in pertinent part, that:

    a. **The DIP Loan**: The Current Owner agrees to make a loan or loan (each, a "DIP Advance") in the aggregate amount of up to $500,000 in accordance with the requirements of the Promissory Note. The proceeds of the DIP Loan shall be used by the Debtor to fund operations and if necessary to

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

- 11 -

consumate the plan of reorganization.

b. **Interest**: Interest shall accrue on the unpaid principal amount of the DIP Loan from the date of each DIP Advance is disbursed until the principal amount of the DIP Loan is paid in full at a rate equal to 4% per annum. Interest shall be calculated on the basis of a thirty-day (30) month and a three hundred sixty-day (360) year, except that (i) provided the advance date occurs on a date other than the first day of the month, interest payable for the period commencing on the advance date and ending on the last day of the month during which the advance date occurs shall be calculated on the basis of the actual number of days elapsed over a 365-day year. Upon the occurrence and during the continuance of an event of default, such rate shall increase to 10% per annum, simple interest.

c. **Maturity**: The Maturity Date of the DIP Loan shall be the earlier to occur of: (1) the twenty-fourth (24th) month following the effective date of the Debtor's Chapter 11 Plan of Reorganization; (2) the date that the Case is converted to Chapter 7 of the Bankruptcy Code; (3) the appointment of a trustee in the Case, other than a Subchapter V trustee; (4) the dismissal of the Case; or (5) May 1, 2027.

d. **Security Interest**: The Promissory Note shall be secured by all unencumbered post-petition assets of the Debtor's bankruptcy estate including the claims of the Debtor's bankruptcy estate that arise under Chapter 5 of the Bankruptcy Code and the Debtor's bankruptcy estate's rights in and to the Zanetti Action. Finally, in the event the Debtor's case is converted to Chapter 7, then the Current Owner shall be deemed to have a duly perfected lien against all of the Debtor's assets, subordinate only to the interest held by any duly perfected purchase money security interest of an equipment lender. No further document, filing, or recording will be required to evidence the Current Owner's security interest as provided herein and

Bankruptcy Court's order approving the Promissory Note shall be evidence of the validity and priority of the security interest granted to Current Owner.

  e. **Priority Claims**: The Current Owner shall be granted an administrative claim in accordance with Section 503(b)(1) of the Bankruptcy Code for the Principal Balance of the DIP Loan.

6. I am experienced in the aerospace manufacturing business, and I have reached out to banking relationships that I have and have confirmed such financial institutions would absolutely not provide the Debtor with either (i) junior secured post-petition financing (*i.e.*, financing secured by a lien junior to all existing liens), or (ii) unsecured post-petition financing. As such, based on my experience and the discussions I had above, I believe the DIP Loan (including its very favorable interest and payment terms) is at least as favorable or more favorable than the Debtor could timely get from any third-party lender not affiliated with the Debtor.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 18th day of March in Pasadena, California.

_____
Scott Holland

# EXHIBIT 1

## Post-Petition Secured Promissory Note

This Post-Petition Secured Promissory Note ("Note") is dated March 18, 2025 and entered into by Spearman Aerospace, Inc, a California Corporation, as debtor and debtor-in-possession ("Debtor"), and, SPAC Holdings I, LLC, A California Limited Liability Company ("Lender"), with respect to the following:

A. On February 6, 2025, Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code, Subchapter 5, which case is pending before the United States Bankruptcy Court for the Central District of California ("Court") as Case Number 2:25-bk-10917-DS ("Case"). Debtor remains the debtor and debtor-in-possession in said Case.

B. Lender is prepared to loan Debtor the principal sum of up to $500,000.00 (Five Hundred Thousand Dollars) ("Maximum Balance"), but only upon the terms and conditions set forth in this Note. Any advance made by Lender is hereinafter referred to as an "Advance".

C. Provided that Debtor is not in default under the terms or conditions of this Note, Lender will loan Debtor up to the Maximum Balance, based upon the operational needs and written requests of the Debtor. Provided, however, Lender may decline to make any Advance or any portion of such request, if: (i) Debtor is in default under any term or condition of this Note, or (ii) in the sole and absolute discretion of Lender, the risk of repayment of any portion of the Note by Debtor is not adequately protected.

D. With respect to the amounts due and owing hereunder, Debtor hereby promises to repay same to Lender or order as follows:

1. **Payment of Principal and Interest**. Principal and interest under this Note shall be payable as follows:

    (a) **Interest only**. Interest on the Advances, shall accrue from the date any funds are disbursed to Debtor, each such disbursement is referred to herein as an Advance Date, at the rate of four percent (4%) per annum ("Interest Rate") and shall be paid on the first day of the calendar month next succeeding the Advance Date and on the first day of each and every succeeding calendar month thereafter until the full amount of principal and interest is paid in full.

    (b) **Balance due**. On the Maturity Date, a final payment in the aggregate amount of the unpaid principal sum evidenced by this Note, all accrued and unpaid interest thereon, and all other sums evidenced by this Note (collectively, "Principal Balance"), shall become immediately due and payable in full. Hereinafter, the Maturity Date shall be the earlier to occur of: (1) the twenty-fourth (24th) month following the effective date of the Debtor's Chapter 11 Plan of Reorganization; (2) the date that the Case is converted to Chapter 7 of the Bankruptcy Code; (3) removal of the Debtor from possession or appointment of a trustee in the Case, other than a Subchapter V trustee; (4) the dismissal of the Case; or (5) May 1, 2027.

    (c) Interest shall be calculated on the basis of a thirty (30) day month and a three hundred sixty (360) day year, except that (i) provided the Advance Date occurs on a date other

than the first day of the month, interest payable for the period commencing on the Advance Date and ending on the last day of the month during which the Advance Date occurs shall be calculated on the basis of the actual number of days elapsed over a 365 day year.

2.  **Application of Payments**. All payments made hereunder shall, at the sole option of Lender, be applied to the payment of any late charges and other sums due from Debtor to Lender under the loan documents, interest then due at the Interest Rate or at the Default Rate (as hereinafter defined), as applicable, on the unpaid principal of this Note, and the balance of said payments shall be applied in reduction of the unpaid principal sum of this Note.

3.  **Security**. This Note shall be secured by all post-petition assets including the avoiding power claims of the estate that arise under Chapter 5 of the Bankruptcy Code and the civil action commenced by Debtor and Lender against Arca Investments, Urio Zanetti and Ayaz Patel, which action is pending in the Los Angeles County Superior Court as Case No. 24STCV34051. Lender shall be granted an administrative claim in accordance with Section 503(b)(1) of the Bankruptcy Code for the Principal Balance, provided that so long as the Debtor is not in default under this Note, Lender agrees that such administrative claim does not need to be paid in full on the effective date of the Debtor's plan and may instead be treated as "exit financing" and paid as provided herein. In addition, if the Debtor's case is converted to Chapter 7, then Lender shall be deemed to have a duly perfected lien against all of the Debtor's assets subordinate only to the interest held by any duly perfected purchase money security interest of an equipment lender.

4.  **Late Charge**. In the event that any installment of interest, principal, or principal and interest shall become overdue for a period in excess of seven (7) days, a "late charge" of four cents ($.04) for each dollar ($1.00), or part thereof, so overdue may be charged to Debtor by Lender for the purpose of defraying the expenses incident to handling such delinquent payments. This charge shall be in addition to, and not in lieu of, any other remedy Lender may have and is in addition to Lender's right to collect reasonable fees and charges of any agents or attorneys which Lender employs in connection with any event of default. Such late charges if not previously paid shall become part of the indebtedness evidenced hereby, and shall, at the option of Lender, be added to any succeeding monthly payment due under the Note. Failure to pay such late charges with such succeeding monthly payment shall constitute an event of default and such late charges shall bear interest at the Default Rate from the date due. Lender agrees to comply with California Civil Code Section 2954.5 with respect to the giving of notice prior to imposing a late charge.

5.  **Acceleration Upon Default**. It is hereby expressly agreed that upon the failure of Debtor to pay any sum herein specified when due, or upon the occurrence of any other event of default under this Note, all amounts due under this Note shall at the option of Lender, become immediately due and payable, and payment of the unpaid principal sum evidenced by this Note and all accrued and unpaid interest thereon, may be enforced and recovered at once. Lender may proceed with any of its legal or equitable remedies.

6.  **Interest Upon Default**. Upon the occurrence of an event of default (including, without limitation, the failure of Debtor to pay any sum herein specified when due), the unpaid principal sum evidenced by this Note, all accrued and unpaid interest thereon, shall bear

interest at a rate per annum ("Default Rate") equal to the greater of: (i) the highest rate of interest permitted to be contracted for under the laws of the State of California, or (ii) ten percent (10%) per annum. The Default Rate shall be in lieu of any other interest rate otherwise applicable and shall commence, without notice, immediately upon and from the occurrence of such event of default and shall continue until all defaults are cured and all sums then due and payable under the Note are paid in full.

7.   Limitation on Interest. All agreements made by Debtor relating directly or indirectly to the indebtedness evidenced by this Note are expressly limited so that in no event or contingency whatsoever shall the amount of interest received, charged or contracted for by Lender exceed the highest lawful amount of interest permissible under the laws of the State of California.

8.   No Prepayment Penalty. The principal sum evidenced by this Note may be repaid in full at any time during the term hereof.

9.   Waiver by Debtor. Debtor hereby waives diligence, demand, presentment for payment, notice of non-payment, protest, notice of dishonor and notice of protest, notice of intent to accelerate and notice of acceleration and specifically consent to, and waives notice of, any renewals or extensions of this Note, whether made to or in favor of Debtor or any other person or persons, and hereby waives any defense by reason of extension of time for payment or other indulgence granted by Lender.

10.  Exercise of Rights. No single or partial exercise by Lender, or delay or omission in the exercise by Lender, of any right or remedy under the Note shall preclude, waive or limit any other or further exercise thereof or the exercise of any other right or remedy.

11.  Fees and Expenses. If this Note is placed in the hands of an attorney at law for collection by reason of default on the part of Debtor, Debtor hereby agrees to pay to Lender, in addition to the sums stated above, the costs and expenses of collection, including, without limitation, a reasonable sum as an attorneys' fee and costs.

12.  No Modifications. This Note may not be changed, amended or modified, except in a writing expressly intended for such purpose and executed by Debtor and Lender.

13.  Governing Law. This Note is to be construed and enforced in all respects in accordance with the laws of the State of California. However, the Note is conditioned upon the approval of the Court. The resolution of any and all controversies or disputes in the performance, interpretation or application of this Note shall be resolved by the Court.

14.  Construction. The words "Debtor" and "Lender" shall be deemed to include the respective heirs, personal representatives, successors and assigns of each, and shall denote the singular and/or plural, and the masculine and/or feminine, and natural and/or artificial persons, whenever and wherever the context so requires. If more than one party is named as Debtor, the obligations hereunder of each such party shall be deemed joint and several. The captions herein are inserted only for convenience of reference and in no way define, limit or describe

the scope or intent of this Note or any particular paragraph or section hereof, or the proper construction hereof.

15.  <u>Notices</u>.  All notices, demands, requests and consents permitted or required under this Note shall be given in writing and shall be deemed to have been duly given if delivered, personally, by facsimile, by E-mail, or by mail, with postage pre-paid, in an envelope sent to the address below, or such other address that the party may designate, from time to time, in writing:

| To: Debtor | To: Lender |
|---|---|
| Spearman Aerospace, Inc. | SPAC Holdings I, LLC |
| 9215 Greenleaf Avenue | 254 No. Lake Ave., No. 873 |
| Santa Fe Springs, California 90607 | Pasadena, California 91102 |

16.  <u>Time of the Essence</u>.  Time shall be of the essence in this Note with respect to all of Debtor's obligations hereunder.

17.  <u>Severability</u>.  If any provision hereof should be held unenforceable or void, then such provision shall be deemed separable from the remaining provisions and shall in no way affect the validity of this Note, except that if such provision relates to the payment of any monetary sum, then Lender may at its option declare the indebtedness evidenced hereby immediately due and payable.

IN WITNESS WHEREOF, Debtor has executed or caused this Note to be executed by its duly authorized representative(s) as of the date first above written.

Spearman Aerospace, Inc.,
a California corporation,
Debtor and Debtor-In-Possession

By: _____
Scott Holland,
Chief Executive Officer

Page 4 of 4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: Echo Park Legal, APC, 2210 W Sunset Blvd. #301, Los Angeles, CA 90026.

A true and correct copy of the foregoing document entitled (*specify*): DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO OBTAIN POST-PETITION LOAN; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF SCOTT HOLLAND IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 3/18/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Karen L Belair**    kbelair@zwickerpc.com
- **M Douglas Flahaut**    df@echoparklegal.com
- **Robert Paul Goe (TR)**    bktrustee@goeforlaw.com, kwareh@goeforlaw.com;bkadmin@goeforlaw.com;C187@ecfcbis.com;kmurphy@goeforlaw.com;rgoe@goeforlaw.com
- **Arnold L Graff**    agraff@wrightlegal.net, nvbkfiling@wrightlegal.net;jpowell@wrightlegal.net
- **Noreen A Madoyan**    Noreen.Madoyan@usdoj.gov
- **Sean A OKeefe**    sokeefe@okeefelc.com, seanaokeefe@msn.com
- **David L Oberg**    david@oberglawapc.com
- **Thomas J Polis**    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- **Amitkumar Sharma**    amit.sharma@aisinfo.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **David A Berkley**    david.berkley@wbd-us.com, mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
- **Madison B Oberg**    madison@oberglawapc.com
- **Dylan J Yamamoto**    dylan@echoparklegal.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/18/2025 | M. Douglas Flahaut | /s/ M. Douglas Flahaut |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.