1  M. Douglas Flahaut (SBN 245558)
   Dylan J. Yamamoto (SBN 324601)
2  **ECHO PARK LEGAL, APC**
   2210 Sunset Blvd., 301
3  Los Angeles, CA 90026
   Telephone:     310.709.0658
4  Email:  df@echoparklegal.com
          dylan@echoparklegal.com
5  Counsel for Debtor and Debtor-in-Possession
   Spearman Aerospace, Inc.

6

7

8

9               **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11                 **LOS ANGELES DIVISION**

12  In re                                    Case No. 2:25-bk-10917-DS

13  **Spearman Aerospace, Inc.**
                                             Chapter 11, Subchapter V
14            Debtor and Debtor-in-Possession

15                                           **DEBTOR'S MOTION FOR ORDER
                                             SETTING PROPERTY VALUE FOR
16                                           PURPOSES OF SECTION 506(A) OF THE
                                             BANKRUPTCY CODE AND
17                                           EXTINGUISHING LIENS IN EXCESS OF
                                             SAID VALUE; MEMORANDUM OF
18                                           POINTS AND AUTHORITIES AND
                                             DECLARATIONS OF SCOTT HOLLAND
19                                           AND MICHAEL OSTROM IN SUPPORT
                                             THEREOF**
20

21                                           <u>**Hearing:**</u>

22                                           **Date:** April 22, 2025
                                             **Time:** 1:00 p.m.
23                                           **Location:**
                                             Courtroom 1639
24                                           255 East Temple
                                             Los Angeles, CA 90012
25

26

27

28

**TO THE HONORABLE DEBORAH SALTZMAN, UNITED STATES BANKRUPTCY JUDGE; ALL PURPORTED SECURED CREDITORS; AND ALL OTHER PARTIES IN INTEREST:**

Spearman Aerospace, Inc, as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor") hereby moves this Court under 11 U.S.C. §§ 506(a)(1) and (d) for an order setting the values of estate property that constitutes collateral of purported secured creditors and extinguishing the liens (or portion of liens) held by purported secured creditors with a claimed interest in property of the estate above the value of such property. Specifically, the Debtor seeks an order of this Court substantially similar to the proposed order attached as **Exhibit 1** to the Holland Declaration valuing the property constituting collateral and extinguishing the liens of purported secured creditors in excess of such value.

This Motion is based on the following Memorandum of Points and Authorities, the Declaration of Michael Ostrom (the "Ostrom Declaration"), the Declaration of Scott Holland (the "Holland Declaration"), all exhibits attached thereto, the record in this case, and all other documents, arguments, evidence, and representations that may be presented at or prior to the hearing on the Motion.

**Wherefore** the Debtor seeks entry of an order substantially in the form of **Exhibit 1** to the Holland Declaration providing that:

(1) The value the Machinery Collateral is determined to be $1,507,500.00 and the value of each item of machinery specifically appraised in the Appraisal is valued at the Orderly Liquidation Value for such item of machinery described in the Appraisal attached to the Ostrom Declaration as **Exhibit 2** for purposes of Section 506;

(2) The value of each item or category of Non-Machinery Collateral is determined to be the values set forth in the Holland Declaration and the Debtor's Schedules for purposes of Section 506 for a total Non-Machinery Collateral value of $54,765.00;

(3) All purported liens of the Wholly Underwater Creditors are extinguished.

(4) All purported liens (or portion of such liens, if applicable) asserted by Secured Creditors in excess of the value of the underlying Collateral securing such liens as determined by

1    the Court herein will be extinguished and no longer constitute a lien against such collateral or a

2    secured claim against the Debtor's bankruptcy estate; and

3         (5)      For such other relief as the Court may grant.

4

5    DATED: April 1, 2025                                **ECHO PARK LEGAL, APC**

6                                                        /s/ M. Douglas Flahaut_____

7                                                        M. Douglas Flahaut
                                                         Dylan J. Yamamoto
8                                                        Counsel for Debtor and Debtor-in-Possession
                                                         Spearman Aerospace, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Debtor recognizes that the asserted and scheduled secured claims against assets of the Debtor's bankruptcy estate—particularly, the 16 items of equipment listed in its Schedules (the "Machinery Collateral") and the other various property (the "Non-Machinery Collateral") — significantly exceed the actual value of such assets.  The Machinery Collateral and the Non-Machinery Collateral are collective referred to herein as the "Collateral".  Accordingly, the Debtor seeks the Court's determination of the value of the Collateral including each item or category of such Collateral pursuant to Sections 506(a)(1) and (d) of the Bankruptcy Code for the purpose of determining the extent of the secured claims in this case and confirming its subchapter V plan.

As provided herein, the liens of Alltemp Alloys LLC; ODK Capital, LLC d/b/a/ Celtic Capital Corporation (with UCC-1 filed by ASSN Company); BMO Bank; CitiBank, N.A.; Financial Agent Services; Flagstar Bank; Intech Funding Corp; Manufacturers Capital; Midland States Bank; Valley Acquisition Corporation d/b/a Valley Force Inc.; and any other purportedly secured creditor (other than the Secured Creditors defined below) that may file a secured proof of claim (collectively, the "Wholly Underwater Creditors" and individually a "Wholly Underwater Creditor") appear to be out of the money under any scenario as the asserted liens of these creditors are (i) junior in priority to Pacific Premier Bank's ("PPB") $1,383,417.91 secured claim and related blanket lien as well as any first priority purchase money secured creditors with respect to assets of the Debtor's estate and/or (ii) assert a lien over something that was not an asset of the Debtor's estate as of the February 6, 2025 petition date.  As such, the Debtor requests an order of the Court extinguishing all purported liens of the Wholly Underwater Creditors in their entirety.

There is another group of purportedly secured creditors consisting of PPB (which holds the earliest in time blanket lien) and any subsequent purportedly secured creditor that complied with the requirements of a purchase money secured creditor for value such that their asserted lien would take priority over PPB despite it being filed / perfected later in time.  The Debtor is informed and believes that PPB; Huntington Bank; Ally Bank; Manufacturers Financing Services (including any

assignees); Siemens Financial Services, Inc.; Signature Financial and Leasing LLC; U.S. Bank Equipment Finance; and First Citizens Bank & Trust Company (collectively, the "Secured Creditors" and individually a "Secured Creditor") fall into this latter category. As such, with respect to these Secured Creditors, the Debtor requests an order of the Court valuing the Collateral and thereby limiting the liens of the Secured Creditors to the value of the item(s) of Machinery Collateral or item(s) or categories of Non-Machinery Collateral in which such Secured Creditor asserts a security interest. However, because the claims bar date has not yet passed and because one or more Secured Creditors may wish to challenge the validity or priority of another Secured Creditor, the Debtor takes no position as to the relative priority of any Secured Creditor vis-à-vis another Secured Creditor at this time and all rights to file claim objections against any Secured Creditor are reserved.

The Ostrom Declaration incorporates the March 24, 2025 appraisal by the Maynards Group of Companies (the "Appraisal") as **Exhibit 2** thereto. This Appraisal specifically and in detail provides valuations for each piece of the Machinery Collateral. In total, the Machinery Collateral is valued at $1,507,500 as of March 24, 2025.[1] The Non-Machinery Collateral is worth much less, but each item or category of asset that constitutes Non-Machinery Collateral is specifically valued in the Holland Declaration. Accordingly, any purported secured claims in excess of the value of the item or items of Collateral securing such claim are unsecured, and such liens in excess of the value of the Collateral should be extinguished.

The Debtor filed this Chapter 11 bankruptcy case after it was discovered that the Debtor's previous owner, Urio Zanetti and his solely controlled entity Arca Investments, LLC (collectively "Zanetti"), had perpetrated fraud and misrepresented the financial health of the Debtor, such that the Debtor was in previously unidentified severe financial difficulty. While there is a currently pending lawsuit against Zanetti in state court based on such misrepresentations, the Debtor intends to reorganize, and therefore, under Section 506(a) of the Bankruptcy Code, the orderly liquidation

---

[1] As set forth herein this is the orderly liquidation value. Because the ordinary liquidation value would constitute the likely cost for the Debtor to replace these items of used machinery with similar items of used machinery of the same age and condition, the Debtor asserts it is the appropriate replacement value for purposes of this Motion and the Debtor's plan.

value set forth in the Appraisal should be used as the replacement value for the Machinery Collateral as it represents credible and fact based evidence of what the Debtor would have to pay at auction or from a reseller of used equipment to replace each item of used machinery. With respect to the Non-Machinery Collateral, the Holland Declaration establishes the value for such assets, and those values should similarly be used in valuing such collateral for purposes of Section 506(a) of the Bankruptcy Code.

To proceed in confirming and executing its plan which provides for payment in full of valid secured creditors up the value of the underlying collateral securing such claims, the Debtor needs to determine the total amount of the valid secured claims in the case and an order providing that any purported lien or liens in excess of this value are in fact unsecured pursuant to Section 506(a) of the Bankruptcy Code. Accordingly, the Debtor requests that this Court issue an order setting the value of the Debtor's assets which constitute the Collateral at $1,564,265.00 which is comprised of a total of $1,507,500 representing the value of the Machinery Collateral and $54,765.00 representing the value of the Non-Machinery Collateral. Thus, any creditors holding a lien against the Debtor's property should be deemed secured only up to the value of the Collateral, and any other liens should be extinguished to the extent they exceed the value of the Collateral ordered by the Court and said deficiency claims shall be treated as unsecured claims only.

## II.

## BACKGROUND

**A.**    **General Background.**

The Debtor is a California corporation that is 100% owned by SPAC Holdings I, LLC ("Current Owner"). The Debtor is in the business of making specialized aerospace parts and components out of steel, aluminum, titanium and other metals for its customers, which include Lockheed, Ducommun, Boeing, and other aerospace companies. The components made by the Debtor are designed and/or machined in the Debtor's facility located in Santa Fe Springs, California and then shipped nationally. The Debtor specializes in fabricating highly specialized components for both commercial and military applications, in addition to supporting fabrication of components used on aircraft platforms that are classified as being Top Secret and are controlled by the

1    Department of Defense of the United States of America.  Furthermore, the Debtor is ITAR certified

2    and D.O.D cyber security certified, as it is required to be a custodian of the technical data essential

3    to fabricating the components it produces.  The Debtor has approximately eleven employees and

4    its principal assets consist of high-end CNC milling machines and metal working equipment.

5        To comprehensively address its cash flow issues, prepare accurate financial records, and

6    maximize the value of its business operations for the benefit of all creditors and interest holders,

7    the Debtor made the difficult decision to seek bankruptcy relief and elected to file a voluntary

8    petition under Chapter 11, Subchapter V, of the Bankruptcy Code on February 6, 2025.

9        The Court has set a claims bar date of April 17, 2025 [Dkt. No. 27]; as of the date this

10   Motion is filed, 29 claims have been filed, with approximately 8 of these claims asserting a secured

11   claim.   The Court has also set a deadline of April 1, 2025 for the Debtor to file a plan of

12   reorganization.  The Debtor intends to file its plan (the "Plan") by this date, such that a confirmation

13   hearing can be held on May 6, 2025.  The Plan will bifurcate the claims of its purported secured

14   creditors and pay those secured creditors holding a valid and perfected lien in collateral, the allowed

15   amount of their claim(s) up to the value of the collateral in full.  All purported secured claims in

16   excess of the value of the underlying collateral will be treated as non-priority unsecured claims and

17   will share in the Debtor's projected disposable income during the term of the Plan.

18   **B.**    **The Debtors Assets and Claims Secured By Such Assets.**

19       Certain assets of the estate including Chapter 5 avoidance claims and the Debtor's pre-

20   petition lawsuit against Zanetti are not subject to any pre-petition lien. The assets of the estate over

21   which a purported pre-petition secured creditor can hold a lien consist of the Machinery Collateral

22   and the Non-Machinery Collateral only.

23       There are many UCC-1 statements and judgment liens filed against the Debtor pre-petition

24   and the Debtor is not in possession of most of underlying contracts.  Furthermore, none of UCC-1

25   filings contain a collateral description with the specific serial numbers of the piece or pieces of

26   machinery constituting the claimed collateral. Finally, the debt underlying the UCC-1 filing may

27   have been subsequently assigned; and/or may have been wholly or partially satisfied pre-petition.

28

The Non-Machinery Collateral consists of (1) cash and cash equivalents of approximately $14,265; (2) accounts receivables totaling $15,000; (3) miscellaneous used office equipment valued at $2,000; (4) miscellaneous models, scraps, inventory, and works in progress worth approximately $1,000; (5) a website and other intangibles worth approximately $1,000; (6) a forklift worth approximately $5,000; (7) a computer server worth approximately $1,000; (8) a 2018 Ford F-150 truck worth approximately $7,500 and (9) miscellaneous items typical of a machine shop that has operated in the same space for some time as more particularly described in the Holland Declaration valued at $10,000.

The Machinery Collateral consists of the Debtor's scheduled 16 pieces of valuable used machining equipment which are the subject of the Appraisal and are valued therein. The table below describes all the Debtor's Collateral.

To date, there appears to be two purchase money secured proofs of claim filed - Proof of Claim No. 14-1 was filed by The Huntington National Bank ("Huntington") and Proof of Claim No. 15-1 filed by First Citizens Bank & Trust Company[2] - though the Debtor believes there may be additional purchase money secured claims filed prior to the April 17, 2025 claims bar date. Therefore, the information in the below table constitutes the Debtor's best estimate and is without prejudice to additional proofs of claim that may be filed or claim objections that may be subsequently filed by the Debtor and/or another party in interest.[3]

| Value of Collateral and Claims Believed Secured by Such Collateral | | | | | |
|---|---|---|---|---|---|
| Model / Description | Serial No. | Value | Believed 1st Priority Secured Creditor | Believed 1st Priority Amount | Believed 2nd Priority Secured Creditor |
| 2017 DOOSAN DNM 5700 | MV0091-001254 | $    50,000.00 | Manufacturers Financing Services | Lower of (i) $50,000 or (ii) the yet-to-be filed purchase money secured claim related to this | Pacific Premier Bank |

[2] The collateral for the asserted purchase money secured claim of First Citizens Bank & Trust Company appears to be printing equipment of minimal value which is included in the Debtor's office equipment valued at $2,000 in the Schedules Holland Declaration supporting this Motion.

[3] For purposes of this Motion, the Debtor does not seek to determine the order of priority of Secured Creditors vis-à-vis each other. Rather, the Debtor seeks an order valuing the Collateral such that regardless of the order of priority vis-à-vis Secured Creditor, their secured claims will be limited to the lower of (i) the amount of the claim, or (ii) the value of the collateral securing such claim after taking into account any Secured Creditor's secured claim in such collateral with priority.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | piece of machinery | |
| 2013 HWACHEON Vesta 100 | M281361K4NC | $ | 32,500.00 | Pacific Premier Bank | $32,500.00 | N/A |
| 2013 HWACHEON VESTA-1000 | M281361B2N A | $ | 32,500.00 | Intech Funding | Lower of (i) $32,500 or (ii) the yet-to-be filed purchase money secured claim related to this piece of machinery | Pacific Premier Bank |
| 2015 DOOSAN DNM 500 II | MV0010-003614 | $ | 37,500.00 | Pacific Premier Bank | $37,500.00 | N/A |
| 2022 MATSUURA MX-850 | 22477 | $ | 350,000.00 | Huntington Bank | $350,000.00 | N/A |
| 2018 MATSUURA MX-330 | 21166 | $ | 140,000.00 | Manufacturers Financing Services | Lower of (i) $140,000 or (ii) the yet-to-be filed purchase money secured claim related to this piece of machinery | Pacific Premier Bank |
| 2015 DOOSAN PUMA GT2600 | ML0258-000203 | $ | 42,500.00 | Pacific Premier Bank | $42,500.00 | N/A |
| 2021 DOOSAN PUMA 2600SY II | ML0372-000388 | $ | 115,000.00 | Manufacturers Financing Services | Lower of (i) $115,000 or (ii) the yet-to-be filed purchase money secured claim related to this piece of machinery | Pacific Premier Bank |
| 2021 DOOSAN DNM 5700 | MV0091-003576 | $ | 72,500.00 | Pacific Premier Bank | $72,500.00 | N/A |
| 2016 DOOSAN DNM 5700 | MV0091-000316 | $ | 45,000.00 | Manufacturers Financing Services | Lower of (i) $45,000 or (ii) the yet-to-be filed purchase money secured claim related to this piece of machinery | Pacific Premier Bank |
| 2017 DOOSAN DNM 350/5AX | MV0053-000278 | $ | 85,000.00 | Manufacturers Financing Services | Lower of (i) $85,000 or (ii) the yet-to-be filed purchase money secured claim related to this piece of machinery | Pacific Premier Bank |

| | | | | | |
|---|---|---|---|---|---|
| 2016 MATSUURA MX-330 with Fanuc Robot | 20444 | $ 210,000.00 | Manufacturers Financing Services | Lower of (i) $210,000 or (ii) the yet-to-be filed purchase money secured claim related to this piece of machinery | Pacific Premier Bank |
| 2018 DOOSAN DNM 750L II | MV0062-000785 | $ 85,000.00 | Manufacturers Financing Services | Lower of (i) $85,000 or (ii) the yet-to-be filed purchase money secured claim related to this piece of machinery | Pacific Premier Bank |
| 2020 DOOSAN DVF 5000 | MV0111-000328 | $ 115,000.00 | Siemens Financial Services | Lower of (i) $115,000 or (ii) the yet-to-be filed purchase money secured claim related to this piece of machinery | Pacific Premier Bank |
| 2016 DOOSAN DNM 5700 | MV0091-000411 | $ 45,000.00 | Pacific Premier Bank | $45,000.00 | N/A |
| 2019 HEXAGON MODEL NO GLOBAL S GREEN | N/A | $ 50,000.00 | Pacific Premier Bank | $50,000.00 | N/A |
| Misc. Items described as Category 9 in the Holland Declaration | N/A | $ 10,000.00 | Pacific Premier Bank | $10,000.00 | N/A |
| Cash and Cash Equivalents | N/A | $ 14,265.00 | Pacific Premier Bank | $14,265.00 | N/A |
| Accounts Receivable | N/A | $ 15,000.00 | Pacific Premier Bank | $15,000.00 | N/A |
| Used Office Furniture and Equipment | N/A | $ 2,000.00 | First Citizens Bank as to the VJ1580 STD (to the extent the Debtor has this item) and Pacific Premier Bank as to remainder of the Used Office Furniture and Equipment | $2,000.00 | N/A |
| Misc. Models, Scraps, Inventory, and Works in Progress | N/A | $ 1,000.00 | Pacific Premier Bank | $1,000.00 | N/A |
| Website and Other Intangibles | N/A | $ 1,000.00 | Pacific Premier Bank | $1,000.00 | N/A |
| Used Forklift | N/A | $ 5,000.00 | Pacific Premier Bank | $5,000.00 | N/A |
| Used Computer Server | N/A | $ 1,000.00 | Pacific Premier Bank | $1,000.00 | N/A |
| 2018 Ford | N/A | $ 7,500.00 | Ally Bank | $7,500.00 | N/A |
| | | | | | |

| | GRAND TOTAL | $1,564,265.00 | | | |
|---|---|---|---|---|---|

## C.    Secured Claims.

As the Debtor noted previously herein, the Debtor does not possess copies most of the underlying financing agreements related to the UCC-1s, and representations made by the prior owner Zanetti regarding the Debtor's liabilities have proved unreliable.  Notwithstanding this, the Debtor made its best efforts to list every potential secured creditor who may have a validly perfected security interest in the Collateral by performing a detailed search of all parties that filed a UCC-1 or Abstract of Judgement with the California Secretary of State and the Debtor has scheduled those filers who have not subsequently filed a termination or whose filing has not lapsed prior to the petition date.   The Debtor scheduled a total of $1,462,271.18 in Schedule D of the Debtor's Schedules, though many creditors were scheduled in an "unknown" amount such that the Debtor believes the actual extent of its secured creditor claims may be different.

As of the filing of this Motion, only four creditors appear to have filed proofs of claim asserting a secured claim in one or more pieces of Machinery Collateral: (1) Claim No. 1-1 by PPB asserts a blanket lien over all of the Debtor's assets securing a claim of $1,383,417.91 relating back to a blanket UCC-1 filed in on 10/29/2019 as UCC-1 No. 197743222229; (2) Claim No. 14-1 by The Huntington National Bank ("Huntington") as the assignee for one of the loans made by Manufacturers Financing Services, supported by a UCC-1 No. U220236101422, and asserts a first priority purchase money secured claim of $352,043.24 secured by the Debtor's Matsuura MX850; (3) Claim No. 13-2 by ODK Capital, LLC (aka Celtic Bank) asserts a secured claim of $129,507.83 supported by a 9/16/2023 blanket UCC-1 over all of the Debtor's assets junior to that of PPB as set forth in UCC-1 No. U230065354936;  and (4) Claim No. 26-1 by Fora Financial West, LLC ("Fora") asserts a secured claim of $219,648.39 supported by a 9/6/2023 blanket lien over all the Debtor's assets junior to that of PPB as set forth in UCC-1 No. U230062651823.

With respect to the Non-Machinery Collateral, it would appear the only secured claims filed as of the date of this Motion that are not blanket lien claims (blanket lien claims, of course, assert a lien in both Machinery Collateral and Non-Machinery Collateral and are discussed above) are:

1    (1) Claim No. 15-1 by First Citizens Bank & Trust Company in the amount of $28,498.40 secured

2    by a UCC-1 with a collateral description of a printer that, if the property is still in the Debtor's

3    possession, it is included in the Debtor's Non-Machinery Collateral[4]; and (2) Claim No. 21-1 by

4    Ally Bank in the amount of $24,225.62 secured by a title lien in the Debtor's 2018 Ford.

5      Finally, Altemp Alloys LLC has filed Claim No. 23-1 with a filed UCC-1, but the filed

6    UCC-1 does not appear to describe any property of the Debtor's estate as collateral.  Similarly,

7    Selway Machine Tool Co. Inc. filed Claim No. 12-1 but does not attach a UCC-1 to its proof of

8    claim and, in any case, it does not appear to have any security interest in collateral that constitutes

9    property of the Debtor's estate.

10      Obviously, there are other scheduled Secured Creditors and Wholly Underwater Creditors

11    who may potentially file a secured claim prior to the April 17, 2025 claims bar date but they have

12    not, to date, filed secured proofs of claim.

13    **III.**

14    **LEGAL ARGUMENT**

15    **A.**    **The Court Should Use The Values Provided Herein When Valuing Collateral Since**

16    **They Represent What the Debtor Would Pay to Purchase Replacement Used**

17    **Equipment From Machinery Auctions or other Orderly Liquidators of Used**

18    **Equipment and Other Assets.**

19    Section 506(a) of the Bankruptcy Code provides that:

20      An allowed claim of a creditor secured by a lien on property in which
21      the estate has an interest…is a secured claim to the extent of the value
  of such creditor's interest in the estate's interest in such property…
  and is an unsecured claim to the extent that the value of such
22      creditor's interest…is less than the amount of such allowed claim.

23
24    11 U.S.C. §506(a).  The value of the claim "shall be determined in light of the purpose of the

25    valuation and of the proposed disposition or use of such property, and in conjunction with any

hearing on such disposition or use or on a plan affecting such creditor's interest." *Ibid.*  In other

26

27    _____

28    [4] The Debtor is still trying to determine whether it has a printer that would match the collateral description.  Regardless, all printers and copying equipment at the Debtor's premises are included in the valuation of the Debtor's office equipment.

1    words, to determine the value of the property in question, the Court is required to look to the

2    proposed use of the property. *Assocs. Commer. Corp. v. Rash*, 520 U.S. 953, 965 (1997); *First*

3    *Southern Nat'l Bank v. Sunnyslope Hous. L.P. (In re Sunnyslope Hous. L.P.)*, 859 F.3d 637, 644

4    (9th Cir. 2017). When the debtor intends to continue operating and move forward with a plan of

5    reorganization, the value of the property "is the cost the debtor would incur to obtain a like asset

6    for the same 'proposed . . . use.'" *Assocs. Commer. Corp. v. Rash*, 520 U.S. at 965.

7    Here, the Debtor intends to continue operations and reorganize pursuant to a subchapter V

8    plan of reorganization to be filed concurrently with this Motion. To do that it seeks to reduce the

9    lien or liens that are 'in the money' to the value of the underlying collateral with those liens that

10    are entirely 'out of the money' being completely extinguished. *See* Holland Declaration. As

11    provided in the Ostrom Declaration, the orderly liquidation values are the values for a "privately

12    negotiated sale, properly advertised and professionally managed, by a seller obligated to sell over

13    an extended period of time." Accordingly, the orderly liquidation value for the Machinery

14    Collateral is the appropriate replacement value for purposes of this Motion as it represents what the

15    Debtor would likely pay to acquire the Machinery Collateral of the same condition, hours, and wear

16    and tear in a privately negotiated sale. Similarly, the values ascribed to the Non-Machinery

17    Collateral represent the amounts the Debtor would pay in a similarly privately negotiated sale and

18    should be used for purposes of this Motion.

19    Per the recent Appraisal, as of March 24, 2025, the orderly liquidation value of the

20    Machinery Collateral has been appraised at $1,507,500. *See* Ostrom Declaration and the Appraisal

21    attached thereto as **Exhibit 2**. The orderly liquidation value is "the privately negotiated sale,

22    properly advertised and professionally managed, by a seller obligated to sell over an extended

23    period of time, in this case within six to nine months, as of the effective date of the appraisal."[5] In

24    contrast, the forced liquidation value, constitutes "a properly advertised and conducted public

25    auction sale, held under forced sale conditions and under present day economic trends."[6] Here,

26    while the Debtor likely could obtain much of the necessary replacement equipment at an auction

27

28    ―――――――――――――――
[5] Appraisal, p. 8, attached as **Exhibit 2** to the Ostrom Declaration.
[6] *Ibid.*

typical of a forced liquidation scenario, the Debtor is not taking that aggressive approach and submits it could as a buyer easily obtain replacement used equipment through the exact channels a seller would typically use in an orderly liquidation.    Therefore, the Court should value the Machinery Collateral at the orderly liquidation value of $1,507,500, with each item of Machinery Collateral separately valued at the specific orderly liquidation value provided for each item of Machinery Collateral in the Appraisal for purposes of Section 506 of the Bankruptcy Code and this Motion.

Furthermore, the Holland Declaration provides a schedule of the proposed values for the Non-Machinery Collateral and those values should be used for the categories of Non-Machinery Collateral for purposes of valuing such collateral and determining the extent of secured claims in such collateral pursuant to Section 506 as requested herein.

**B.**    **The Court Should Extinguish Any Liens (Or Portions of Liens) that Exceed the Value of the Collateral.**

"To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void."    11 U.S.C. §506(d).    Federal Rule of Bankruptcy Procedure 3012 provides that the Court may determine "the amount of a secured claim under Section 506(a) of the Code" upon the motion of a party.  Fed. R. Bankr. P. 3012(a)(1).

As shown by the Ostrom Declaration and the Holland Declaration, the liens against the Debtor's various assets significantly exceed the replacement value of such Collateral.  While the Debtor has set forth the lenders it believes have an interest in the various asset of the estate (as originally scheduled in Schedule D), the Debtor takes no position herein as to the relative priority between Secured Creditors.  Therefore, the Debtor requests that the Court value the Collateral as provided herein and in the proposed order attached hereto for the purposes of determining whether creditors are secured or unsecured in such Collateral pursuant to Section 506.  A proposed form of order on this Motion is attached as **Exhibit 1** to the Holland Declaration.

More specifically, PPB has a blanket lien dating back to 2019 based on a UCC-1 and a subsequent pre-petition judgment in the amount of approximately $1.34 million.  However, PPB's priority appears to have been superseded by subsequent lenders who made purchase money loans

to the Debtor in connection with purchasing equipment.  Thus, the Debtor does not currently take a position regarding the relative priority between PPB and any purported purchase money secured creditor.  Ultimately, it is expected that PPB will have a first priority lien on any item of Collateral that is not secured by a purchase money security interest and will have a second priority lien on those items of collateral where a purchase money secured creditor obtained a first priority lien but the amount of the Secured Creditor's claim is less than the value of the item of collateral.

In other words, the Debtor seeks an order of this Court valuing the Collateral for the purpose of determining the value of secured claims and confirming its Plan.  The Debtor's Schedules and the table included in this Motion reflect the Debtor's best estimation of secured claims asserting liens against its Collateral.  However, the relief requested herein does not need a determination of the priority of the various Secured Creditors vis-à-vis each other and that can be determined later if necessary.  Put another way, the Debtor simply seeks an order of the Court valuing each specific item or category of Collateral, which order shall be determinative of the total amount of allowed secured claims related to each item of Collateral and the relative priority can be determined, if necessary, at a later date.  This is because the Debtor intends to pay all valid secured claims up to the value of the item or category of Collateral securing such claim as valued by this Court.

The value of the Collateral is significantly less than the amount owed to the purported secured creditors, and therefore, all purported secured claims in excess of the value of the Collateral should be extinguished pursuant to Section 506(d).  Accordingly, the Debtor requests that in setting the value of the Collateral as requested herein, the Court determine, pursuant to Bankruptcy Rule 3012 and Bankruptcy Code Section 506(d), that once the respective priority between purported secured creditors is determined, any claim(s) exceeding the value of an item or category of Collateral shall be deemed unsecured, and the liens (or portion of the liens) held by such creditors shall be extinguished.

For example, assume that A and B both assert claims of $100,000 against a piece of collateral, and the collateral is valued at $50,000.  If the Court determines that A holds a first priority lien, A has a secured claim and a lien in the amount of $50,000 (the value of the collateral), and an

1    unsecured claim of $50,000, and B (second priority) has a fully unsecured claim of $100,000, and

2    B's lien shall be extinguished.  Any such claimants who are determined to be wholly or partially

3    unsecured will be paid on account of such unsecured claim a *pro rata* share of money paid to non-

4    priority general unsecured creditors as provided in its plan.

5         In summary the Debtor's Plan proposes to pay allowed secured claims up to the value of

6    the underlying Collateral—as set by the Court by way of this Motion.  The Debtor, however,

7    reserves the right to object to claims and/or seek a final determination as to claim priority.

8    However, in this Motion, the Debtor requests that the Court find that any claim (or portion of a

9    claim), to the extent that it exceeds the value of the related collateral, is unsecured and accordingly

10   extinguish the lien relating to such claim pursuant to Section 506(d).

11                                   **IV.**

12                              **CONCLUSION**

13        Under the circumstances of this case, Debtor requests the Court enter an order substantially

14   in the form of **Exhibit 1** to the Holland Declaration providing that:

15        (1)    The value the Machinery Collateral is determined to be $1,507,500 and the value of

16   each item of machinery specifically appraised in the Appraisal is valued at the Orderly Liquidation

17   Value for such item of machinery described in the Appraisal attached to the Ostrom Declaration as

18   **Exhibit 2** for purposes of Section 506;

19        (2)    The value of each item or category of Non-Machinery Collateral is determined to

20   be the values set forth in the Holland Declaration and the Debtor's Schedules for purposes of

21   Section 506 for a total Non-Machinery Collateral value of $54,765.00;

22        (3)    All purported liens of the Wholly Underwater Creditors are extinguished.

23        (4)    All purported liens (or portion of such liens, if applicable) asserted by Secured

24   Creditors in excess of the value of the underlying Collateral securing such liens as determined by

25   the Court herein will be extinguished and no longer constitute a lien against such collateral or a

26   secured claim against the Debtor's bankruptcy estate and will be treated as unsecured; and

27        (5)    For such other relief as the Court may grant.

28   DATED: April 1, 2025                          **ECHO PARK LEGAL, APC**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ M. Douglas Flahaut.
M. Douglas Flahaut
Dylan J. Yamamoto
Counsel for Debtor and Debtor-in-Possession
Spearman Aerospace, Inc.

## DECLARATION OF SCOTT HOLLAND

I, Scott Holland, declare as follows:

1.     I am over the age of 18 and have knowledge of the facts set forth in this Declaration either from my own personal knowledge or from my review of documents and records of Spearman Aerospace, Inc. (the "Debtor") and/or my discussions with management, attorneys, and/or employees of the Debtor. I make this declaration in support of the *Debtor's Motion for Order Setting Property Value for Purposes of Section 506(a) and Extinguishing Liens in Excess of Said Value* (the "Motion").[7]

2.     I am the sole member of the Debtor's board of directors and currently serve as its President. I was also involved in due diligence and acted as an advisor to the Current Owner with respect to its acquisition of the stock of the Debtor from Zanetti. As such, I am very familiar with the assets of the Debtor.

3.     I have served as a consultant for numerous aircraft manufacturing companies over the past 28 years. I have been involved in the purchasing and selling of virtually all of the types of assets that the Debtor utilizes in the operation of its manufacturing business. As such, I am very familiar with the current value of the Debtor's assets and what it would cost to replace those assets.

4.     There are many prepetition UCC-1 filings and filed judgment liens related to the Debtor, and the Debtor does not possess most of the underlying contracts.

5.     Notwithstanding this, the Debtor made its best efforts to list in its Schedules [Dkt. No. 44] every potential secured creditor who could possibly have a validly perfected security interest in the Debtor's Collateral by performing a detailed search of all parties that filed a UCC-1 or Abstract of Judgement with the California Secretary of State. The Debor has scheduled those entities in its Schedule D. At my direction notice of the foregoing motion will be served on, *inter alia,* all potentially secured creditors listed on the Debtor's Schedule D.

6.     As of the February 6, 2025 petition date, in addition to the Machinery Collateral described at length in the Ostrom Declaration, the Debtor's assets included: (1) cash and cash equivalents of approximately $14,265; (2) accounts receivables totaling $15,000; (3) miscellaneous

---

[7] Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

used office equipment valued at $2,000; (4) miscellaneous models, scraps, inventory, and works in progress worth approximately $1,000; (5) a website and other intangibles worth approximately $1,000; (6) a forklift worth approximately $5,000; (7) a computer server worth approximately $1,000; and (8) a 2018 Ford F-150 truck worth approximately $7,500.  Categories 1-8 were scheduled in the Debtor's Schedules.  Since the filing of the petition, I have continued to spend time at the Debtor's facility and there are certain other items of little value that were not part of the Appraisal and do not necessarily fall neatly within one of the eight categories above.  More specifically, the Debtor has some old non-CNC capable machining equipment (that is functionally obsolete for the Debtor's manufacturing purposes); a small air compressor; and a FaroArm that is currently inoperable as it lacks the necessary software and is not affixed to any item of machinery. Additionally, the Debtor has some additional miscellaneous items typical of a machine shop that has operated in the same space for some time.  These items have little to no value to the Debtor but should be included as Collateral and therefore are referred to herein as Category 9.

7.      I believe the replacement value of the items/categories 3-8 above has not changed materially since February 6, 2025 and believe the valuations ascribed to such collateral in Paragraph 6 above and in the Schedules remains accurate as of the filing of this Declaration as the reasonable replacement value of such items and categories of Non-Machinery Collateral.  Additionally, I believe the Category 9 items discussed in the preceding paragraph collectively have a value of no more than $10,000.

8.      The Debtor's cash and cash equivalents as well as its accounts receivables (categories 1 and 2 above) have varied since the February 6, 2025 petition date.  However, because in connection with the Court's interim orders approving use of cash collateral [Dkt. Nos. 35 and 67] secured creditors were granted replacement liens against the Debtor's post-petition assets only to the extent of post-petition diminution of value, if any, of their collateral, the value of the Debtor's cash and cash equivalents and accounts receivable for purposes of the foregoing Motion should be the values as of the February 6, 2025 petition date as set forth herein in Paragraph 6 above and in the Schedules.

9. I have personal knowledge of the items and categories of Non-Machinery Collateral set forth above and believe the values set forth above constitute reasonable replacement value for such items and submit these items and categories of Non-Machinery Collateral should be valued for purposes of this Motion and Section 506 of the Bankruptcy Code as set forth above.

10. A true and correct copy of the proposed Order granting the Motion, determining the value of the Collateral as requested in the Motion, and extinguishing purported liens (or portions of liens) asserted by creditors in excess of the value of the underlying Collateral securing such liens as determined by the Court is attached hereto as **Exhibit 1**.

11. The Debtor intends to file its subchapter V plan of reorganization on April 1, 2025 in order to reorganize and continue its operations. By valuing the Debtor's assets which constitute collateral of the purported secured creditors, the Debtor can move forward with paying its valid secured creditors in full up to the value of their collateral and paying its unsecured creditors (including the claims of the Wholly Underwater Creditors as well as the unsecured portion of any Secured Creditor's claim in excess of the value of such creditor's collateral) a *pro rata* share of the Debtor's projected disposable income as provided in the plan.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 1st day of April in Pasadena, California.

Scott Holland

# EXHIBIT 1

M. Douglas Flahaut (SBN 245558)
Dylan J. Yamamoto (SBN 324601)
**ECHO PARK LEGAL, APC**
2210 Sunset Blvd., 301
Los Angeles, CA  90026
Telephone:       310.709.0658
Email:  df@echoparklegal.com
            dylan@echoparklegal.com
Counsel for Debtor and Debtor-in-Possession
Spearman Aerospace, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:25-bk-10917-DS |
| **Spearman Aerospace, Inc.** | Chapter 11, Subchapter V |
| Debtor and Debtor-in-Possession | ***[PROPOSED]* ORDER GRANTING DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE AND EXTINGUISHING LIENS** |
| | **Hearing:** |
| | **Date:** April 22, 2025 **Time:** 1:00 p.m. **Location:** Courtroom 1639 255 East Temple Los Angeles, CA 90012 |

**IN THIS DISTRICT, IN LOS ANGELES, CALIFORNIA, ON THE DATE INDICATED BELOW:**

On April 22, 2025, at 1:00 p.m., a hearing (the "Hearing") was held before the Honorable Deborah J. Saltzman, United States Bankruptcy Judge, to consider *Debtor's Motion for Order Setting Property Value and Extinguishing Liens* [Dkt. No. ___] (the "Motion")[1] filed by Spearman Aerospace, Inc, as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"). M. Douglas Flahaut of Echo Park Legal, APC, appeared on behalf of the Debtor. All other appearances are reflected on the record.

The Court having reviewed and considered (i) the Motion; (ii) notice of the Motion (iii) the supporting declarations of Scott Holland and Michael Ostrom in support thereof; (iv) all papers filed in support of and opposing the Motion; (v) the record in this case; and (vi) the statements of counsel and the evidence presented at the Hearing; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AS FOLLOWS:**

1.    The aggregate value of the Machinery Collateral is set at $1,507,500.00, and the replacement value of the individual items of Machinery Collateral specifically appraised in the Appraisal is valued as follows, pursuant to 11 U.S.C. § 506(a):

| Description | Serial No. | Value |
|---|---|---|
| 2017 DOOSAN DNM 5700 | MV0091-001254 | $50,000.00 |
| 2013 HWACHEON VESTA 1000 | M281361K4N C | $32,500.00 |
| 2013 HWACHEON VESTA-1000 | M281361B2N A | $32,500.00 |
| 2015 DOOSAN DNM 500 II | MV0010-003614 | $37,500.00 |

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Motion.

| | | |
|---|---|---|
| 2022 MATSUURA MX-850 | 22477 | $350,000.00 |
| 2018 MATSUURA MX-330 | 21166 | $140,000.00 |
| 2015 DOOSAN PUMA GT2600 | ML0258-000203 | $42,500.00 |
| 2021 DOOSAN PUMA 2600SY II | ML0372-000388 | $115,000.00 |
| 2021 DOOSAN DNM 5700 | MV0091-003576 | $72,500.00 |
| 2016 DOOSAN DNM 5700 | MV0091-000316 | $45,000.00 |
| 2017 DOOSAN DNM 350/5AX | MV0053-000278 | $85,000.00 |
| 2016 MATSUURA MX-330 with Fanuc Robot | 20444 | $210,000.00 |
| 2018 DOOSAN DNM 750L II | MV0062-000785 | $85,000.00 |
| 2020 DOOSAN DVF 5000 | MV0111-000328 | $115,000.00 |
| 2016 DOOSAN DNM 5700 | MV0091-000411 | $45,000.00 |
| 2019 HEXAGON MODEL NO GLOBAL S GREEN | N/A | $50,000.00 |
| | **GRAND TOTAL** | **$1,507,500.00** |

2.　　The aggregate value of the Non-Machinery Collateral is set at $54,765.00, and the replacement value of each item or category of Non-Machinery Collateral is determined to be the values set forth below for the purposes of 11 U.S.C. §506(a).

| Item or Category Description | Value |
|---|---|
| Misc. Items Described as Category 9 in the Holland Declaration. | $10,000.00 |
| Cash and Cash Equivalents | $14,265.00 |
| Accounts Receivables | $15,000.00 |
| Used Office Furniture and Equipment | $2,000.00 |
| Misc. Models, Scraps, Inventory, and Works in Progress | $1,000.00 |
| Website and Other Intangibles | $1,000.00 |

| | |
|---|---|
| Used Forklift | $5,000.00 |
| Used Computer Server | $1,000.00 |
| 2018 Ford | $7,500.00 |
| **GRAND TOTAL** | **$54,765.00** |

**WHEREFORE IT IS HEREBY ORDERED:**

1.    The Motion is granted in its entirety;

2.    The purported liens of the Wholly Underwater Creditors are extinguished in their entirety as none of these creditors have a claim supported by value as required by 11 U.S.C. § 506(d). Provided that nothing in this Order shall constitute a final determination with respect to the validity or amount of such creditor's unsecured claim(s).

3.    All purported liens (or portions of such liens) asserted by Secured Creditors in excess of the value of the underlying Collateral securing such liens as determined by the Court herein are extinguished and no longer constitute a lien against such collateral, pursuant to 11 U.S.C. § 506(d).

4.    Except as otherwise provided herein, the validity, priority, and extent of any purported claims or liens of Secured Creditors related to the Collateral may be determined at a later date, as necessary.  Thus, with respect to Secured Creditors, this Order does not make a final determination with respect to the validity, priority, or extent of any purported claims or liens, except to the extent that this Order does limit the total liens encumbering each item or category of Collateral to the value of such Collateral as set forth herein and extinguishes or reduces (as applicable) any claimed or purported lien(s) in excess of the valuations established herein.

                                                    ###

# DECLARATION OF MICHAEL R. OSTROM

I, Michael R. Ostrom declare as follows:

1.      I am over the age of 18 and have knowledge of the facts set forth in this Declaration either from my own personal knowledge or from my inspection and review of the various machinery items which are the subject of my Machinery and Equipment Appraisal Report (the "Appraisal"), a true and correct copy of which is attached hereto as **Exhibit 2** and incorporated fully herein by this reference.

2.      I am a managing director at the Maynards Group of Companies, a leading appraiser of machinery.  A true and correct description of my qualifications and certifications are set forth in full in Section XVI of the Appraisal and that description is incorporated herein in full.

3.      I have some prior familiarity with the machinery which is the subject of the Appraisal as I was involved with preparing a July 2023 appraisal of Spearman Aerospace, Inc.'s machinery and I physically visited the premises located at 9215 Greenleaf Avenue on July 13, 2023.

4.      On March 19, 2025 I again personally visited the Debtor's premises located at 9215 Greenleaf Avenue in connection with preparing the Appraisal and conducted a physical inspection of the 16 items of machinery which are the subject of my Appraisal.

I declare under the penalty of perjury that the foregoing is true and correct.  Executed this ___ day of April in _____, California.

_____

Michael R. Ostrom

# EXHIBIT 2



**Maynards**
SINCE 1902

APPRAISAL SERVICES

INDUSTRIAL SOLUTIONS
AUCTIONS / LIQUIDATIONS
EQUIPMENT FINANCE
ENERGY EXCHANGE
REAL ESTATE

## Machinery and Equipment
### APPRAISAL REPORT

# SPEARMAN AEROSPACE, INC.

### 9215 GREENLEAF AVENUE
### SANTA FE SPRINGS, CA 90670

**Effective Date: March 19, 2025 | Report Date: March 24, 2025**

**Client: Oberg Law Group, A.P.C.**

MAYNARDS GROUP OF COMPANIES | APPRAISAL SERVICES
17177 North Laurel Park Drive, Suite 236
Livonia, MI 48152
www.maynards.com

MICHAEL R. OSTROM, ASA, CEA, ARM-MTS
Managing Director
Phone: 714.351.8615
Email: mostrom@maynards.com

Doc 90   Filed 04/01/25   Entered          25:04   Desc
Main Document      Page 29 of 69

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Valuation Summary | 1 |
| II. | Letter of Transmittal | 2-3 |
| III. | Certificate of Value | 4 |
| IV. | Scope of Work | 5-7 |
| V. | Value Definitions | 8 |
| VI. | Approach to Value | 9-10 |
| VII. | Methodology | 11 |
| VIII. | Company Overview | 12-14 |
| | *Facility Overview* | *12* |
| | *Machinery and Equipment Overview* | *13* |
| | *Values by Asset Type Chart* | *14* |
| IX. | Condition Statement | 15-16 |
| | *Condition Chart* | *16* |
| X. | Useful Life Overview | 17 |
| XI. | Effective Age, Normal Useful Life, and Remaining Useful Life | 18 |
| | *Estimated Remaining Useful Life Chart* | *18* |
| XII. | Industry Outlook | 19 |
| XIII. | Valuation Considerations | 20-22 |
| XIV. | Statement of Assumptions and Limiting Conditions | 23-25 |
| XV. | Appraiser's Certification | 26-27 |
| XVI. | Qualifications of the Appraiser | 28-30 |
| | *Curriculum Vitae* | *28* |
| | *Professional Accreditation Certificates* | *29-30* |
| XVII. | Appendices | |
| | *Appendix A: Location Summary* | *1 Page* |
| | *Appendix B: Machinery and Equipment Listing* | *3 Pages* |
| | *Appendix C: Sample Appraisal Photographs* | *4 Pages* |

**Maynards**
SINCE 1902
APPRAISAL SERVICES

INDUSTRIAL SOLUTIONS
AUCTIONS / LIQUIDATIONS
EQUIPMENT FINANCE
ENERGY EXCHANGE
REAL ESTATE

MAYNARDS GROUP OF COMPANIES | APPRAISAL SERVICES
17177 North Laurel Park Drive, Suite 236
Livonia, MI 48152
www.maynards.com

MICHAEL R. OSTROM, ASA, CEA, ARM-MTS
Managing Director
Phone: 714.351.8615
Email: mostrom@maynards.com

25-DS    Doc 90    Filed 04/01/25    Entered 04/01/25 ... 25:04    Desc
Main Document    Page 30 of 69

# I. VALUATION SUMMARY

| SPEARMAN AEROSPACE, INC. | |
|---|---|
| **Machinery and Equipment** | |
| **FORCED LIQUIDATION VALUE** | **$1,132,500 USD** |
| **ORDERLY LIQUIDATION VALUE** | **$1,507,500 USD** |
| Effective Date: March 19, 2025 │ Report Date: March 24, 2025 | |



**MAYNARDS GROUP OF COMPANIES | APPRAISAL SERVICES**
17177 North Laurel Park Drive, Suite 236
Livonia, MI 48152
www.maynards.com

Case 25-_____-DS   Doc 90   Filed 04/01/25   Entered 04/01/25 __:__:__   Desc
Main Document      Page 31 of 69

**MICHAEL R. OSTROM, ASA, CEA, ARM-MTS**
Managing Director
Phone: 714.351.8615
Email: mostrom@maynards.com

# II. LETTER OF TRANSMITTAL

**_PRIVATE AND CONFIDENTIAL_**

March 24, 2025

Mr. David L. Oberg                          Phone: (818) 223-9384
Managing Partner                            **david@oberglawapc.com**
Oberg Law Group, A.P.C.
23679 Calabasas Road, Suite 541
Calabasas, CA 91302

**M&E APPRAISAL:           SPEARMAN AEROSPACE, INC.**
                          ➢  **9215 Greenleaf Avenue, Santa Fe Springs, CA 90670**

Mr. Oberg,

At your request, I, as an appraiser for Maynards Group of Companies | Appraisal Services (Maynards), have prepared this on-site machinery and equipment appraisal report of specific assets owned by Spearman Aerospace, Inc. (Spearman). A copy of the report is enclosed.

This report is intended for the exclusive use by Oberg Law Group, A.P.C. and Mr. David L. Oberg (Client), specifically for determining the liquidation value of the listed equipment for bankruptcy purposes. _Client has authorized SPAC Holdings I, LLC as an additional intended user of this report._

The appraiser does not authorize the use of this appraisal by any other party, nor is the report intended for any purpose other than as stated, unless express written consent is provided.

This report qualifies as an Appraisal Report under USPAP Standards Rule 8-2(a).

On March 19, 2025, I conducted a physical inspection of specific machinery and equipment located at the address listed above.

Following the inspection, I researched the market conditions for this type of equipment to prepare an impartial report.

The sales comparison, cost, and income approaches to value were considered for this appraisal and have been applied where appropriate, or deemed unsuitable for the value conclusions presented in this report.

After a thorough analysis of the machinery and equipment, as well as a review of the information provided to me, it is my opinion that, as of March 19, 2025 (effective date), the machinery and equipment possess a forced liquidation value and orderly liquidation value as indicated on the certificates I have prepared.



**MAYNARDS GROUP OF COMPANIES │ APPRAISAL SERVICES**
*17177 North Laurel Park Drive, Suite 235*
*Livonia, MI 48152*
*www.maynards.com*

Case 25-... -DS    Doc 90    Filed 04/01/25    Entered ... 25:04    Desc
Main Document      Page 32 of 69

**MICHAEL R. OSTROM, ASA, CEA, ARM-MTS**
*Managing Director*
*Phone: 714.351.8615*
*Email: mostrom@maynards.com*

---

**FORCED LIQUIDATION VALUE**
*One Million One Hundred Thirty-Two Thousand Five Hundred US Dollars*
**$1,132,500 USD**

---

**ORDERLY LIQUIDATION VALUE**
*One Million Five Hundred Seven Thousand Five Hundred US Dollars*
**$1,507,500 USD**

---

As an agent of Maynards, I certify that neither I, nor Maynards, nor any of its employees, have any present or future interest in the appraised property. However, should the equipment that is the subject of this report become available for sale, our firm could be considered as a source for liquidation.

The fee charged for this appraisal is not contingent upon the values reported.

Should you require any additional information, please do not hesitate to contact us.

**Maynards Group of Companies │ Appraisal Services**

Michael R. Ostrom, ASA, CEA, ARM-MTS
Managing Director
**mostrom@maynards.com**



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document       Page 33 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

## III. CERTIFICATE OF VALUE

### Maynards Group of Companies │ Appraisal Services

DOES CERTIFY

THAT ON THIS DATE GIVEN IN THIS CERTIFICATE, THE ASSETS OF

### SPEARMAN AEROSPACE, INC.

ARE WELL AND REASONABLY WORTH THE VALUES LISTED BELOW

| Machinery and Equipment | |
|---|---|
| **FORCED LIQUIDATION VALUE** | **$1,132,500 USD** |
| **ORDERLY LIQUIDATION VALUE** | **$1,507,500 USD** |
| **Effective Date: March 19, 2025 │ Report Date: March 24, 2025** | |

*(Refer to Appendices A through C)*

**Maynards Group of Companies │ Appraisal Services**

Michael R. Ostrom, ASA, CEA, ARM-MTS
Managing Director
**mostrom@maynards.com**





**Company Appraised:**
**SPEARMAN AEROSPACE, INC.** Bk 10917-DS   Doc 90   Filed 04/01/25   Entered 04/01/25
*9215 Greenleaf Avenue*            Main Document      Page 34 of 69
*Santa Fe Springs, CA 90670*

**Report Prepared For:**
**OBERG LAW GROUP, A.P.C.**
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

# IV. SCOPE OF WORK

### *ASSIGNMENT TYPE*

Machinery & Equipment Appraisal Report (On-Site Inspection)

### *INTENDED USERS & INTENDED USE*

Maynards has been engaged by Mr. David L. Oberg, Managing Partner, Oberg Law Group, A.P.C. (Client) to perform an on-site inspection machinery and equipment appraisal of Spearman Aerospace, Inc. (Spearman).

This report is intended for the exclusive use by Oberg Law Group, A.P.C. and Mr. David L. Oberg (Client), specifically for determining the liquidation value of the listed equipment for bankruptcy purposes. *Client has authorized SPAC Holdings I, LLC as an additional intended user of this report.*

The appraiser does not authorize the use of this appraisal by any other party, nor is the report intended for any purpose other than as stated, unless express written consent is provided. This report qualifies as an appraisal report under USPAP Standards Rule 8-2(a).

### *EFFECTIVE DATE AND DATE OF THE APPRAISAL REPORT*

The effective date of the appraisal is March 19, 2025, which is the date I completed the physical inspection of the Spearman assets. The report date of this appraisal is March 24, 2025.

### *SCOPE OF WORK*

On March 19, 2025, I conducted a physical inspection of specific machinery and equipment owned by Spearman and located at the address listed in the letter of transmittal.

Based on the gathered information, I conducted research into the relevant markets and, utilizing the sales comparison approach, formed an opinion on the forced liquidation value and orderly liquidation value of the listed assets as of March 19, 2025 (effective date).

A detailed listing of Spearman's machinery and equipment is included in this report. Leased or rented assets have been excluded from the appraisal. The resources utilized in determining the value opinions include, but are not limited to:

➤ Maynards internal comparable sales database

➤ Spearman fixed asset register

➤ Comparable sales data gathered in the form of quotations or priced advertising from used machinery dealers and advertising publications and/or websites



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

Bk 10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document    Page 35 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
Effective Date: March 19, 2025
Report Date: March 24, 2025

➢ Discussions with used machinery dealers, appraisers, new machinery dealers, original equipment manufacturers, and auctioneers

➢ Consulting recent auction sales

➢ The experience of the appraiser

This appraisal report has been prepared in compliance with the <u>Uniform Standards of Professional Appraisal Practice</u> (USPAP) 2024-2025 edition, as well as the guidelines established by the <u>American Society of Appraisers</u> (ASA) and the <u>Association of Machinery and Equipment Appraisers</u> (AMEA). A digital version of this appraisal report has been provided to the Client.

## *MAYNARDS APPRAISAL TEAM*

The following Maynards personnel assisted with the inspection, data gathering, research, valuation, report writing, and/or appraisal review.

| Maynards Personnel | Site Visit | Valued |
|---|---|---|
| Michael R. Ostrom, ASA, CEA, ARM-MTS | Yes | Yes |

## *SPEARMAN REPRESENTATIVES*

Maynards personnel engaged in conversations with the following Spearman representatives to discuss operations, obtain asset cost information, and gather other pertinent details necessary for valuing the assets. These discussions also helped determine the condition and capabilities of certain equipment appraised.

| Spearman Representatives | Title |
|---|---|
| Tricia Knopf | Chief Financial Officer |

Maynards provided a final asset list to Spearman for confirmation and verification of its accuracy before issuing the final appraisal report. Any incorrect information, including omitted assets related to the Appendix B, is the responsibility of Spearman.

## *EXTRAORDINARY ASSUMPTIONS[1]*

The Uniform Standards of Professional Appraisal Practice (USPAP) defines an extraordinary assumption as: "*An assumption, directly related to a specific assignment, as of the effective date of the appraisal results, which, if found to be false, could alter the appraiser's opinions or conclusions.*"

---

[1] *Uniform Standards of Professional Appraisal Practice – The Appraisal Foundation;* <u>www.appraisalfoundation.org</u>



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document    Page 36 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

The following extraordinary assumptions have been made:

➢ It is assumed that information provided by Spearman and Client is reliable and credible for the appraisal assignment.

➢ It is also assumed that there is a landlord waiver in place allowing Client access to the assets should it be necessary to sell them in place. This has not been verified by the appraiser.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25 ...
Main Document        Page 37 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

## V. VALUE DEFINITIONS[2]

The American Society of Appraisers defines *forced liquidation value* as follows:

**FORCED LIQUIDATION VALUE (FLV)** "An opinion of the gross amount, expressed in terms of money, that typically could be realized from a properly advertised and conducted public auction, with the seller being compelled to sell with a sense of immediacy on an as-is, where-is basis, as of a specific date."

Maynards further describes forced liquidation value as a properly advertised and conducted public auction sale, held under forced sale conditions and under present day economic trends, as of the effective date of the appraisal report. This public auction sale allows for a **forty-five day** marketing period, immediately followed by a **one or multiple day** final auction, with an additional forty-five day period at the conclusion of the auction for asset removal and site cleanup. Conclusions taken into consideration are physical location, difficulty of removal, physical condition, adaptability, specialization, marketability, overall appearance and psychological appeal. Further, the ability of the asset group to draw sufficient prospective buyers to insure competitive offers is considered. All assets are to be sold on a piecemeal basis 'as is' with purchasers responsible for removal of assets at their own risk and expense. Any deletions or additions to the total assets appraised could change the psychological and or monetary appeal necessary to gain the price indicated.

The American Society of Appraisers defines *orderly liquidation value* as follows:

**ORDERLY LIQUIDATION VALUE (OLV)** "An opinion of the gross amount, expressed in terms of money, that typically could be realized from a liquidation sale, given a reasonable period of time to find a purchaser (or purchasers), with the seller being compelled to sell on an as-is, where-is basis, as of a specific date."

Maynards further describes orderly liquidation value as a privately negotiated sale, properly advertised and professionally managed, by a seller obligated to sell over an extended period of time, in this case within *six to nine months*, as of the effective date of the appraisal. Further, the ability of the asset group to draw sufficient prospective buyers to ensure competitive offers is considered. All assets are to be sold on a piecemeal basis `as is' with purchasers responsible for removal of assets at their own risk and expense. Any deletions or additions to the total assets appraised could change the psychological and/or monetary appeal necessary to gain the value indicated.

---

[2] *American Society of Appraisers, Machinery & Technical Specialties – Valuing Machinery and Equipment: The Fundamentals of Appraising Machinery and Technical Assets, 4th Edition, Updated 2020; wwww.appraisers.org*



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document    Page 38 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

# VI. APPROACH TO VALUE

**Sales Comparison Approach**   One of the three recognized approaches used in appraisal analysis, this approach involves the collection of market data pertaining to the subject assets being appraised.  This approach is also known as the 'market approach'.  The primary intent of the sales comparison approach is to determine the desirability of the assets and recent sales or offerings of similar assets currently on the market in order to arrive at an indication of the most probable selling price of the assets being appraised.  If the comparable sales are not exactly similar to the asset being appraised, adjustments must be made to bring them as closely in line as possible with the subject property.

**Cost Approach**   One of the three recognized approaches used in the appraisal analysis, this approach is based on the proposition that the informed purchaser would pay no more for a property than the cost of producing a substitute property with the same utility as the subject property.  It considers that the maximum value of a property to a knowledgeable buyer would be the amount currently required to construct or purchase a new asset of equal utility.  When subject asset is not new, the current cost must be adjusted for all forms of depreciation as of the effective date of the appraisal.

**Income Approach**   One of the three recognized approaches used in appraisal analysis, this approach considers value in relation to the present worth of future benefits derived from ownership and is usually measured through the capitalization of a specific level of income.  This approach is the least common approach used in the valuation of machinery and equipment since it is difficult to isolate income attributable to such assets and was not utilized for this appraisal project.

<u>Depreciation</u>   Defined as the actual loss in value or worth of a property from all causes including those resulting from physical deterioration, functional obsolescence, and economic obsolescence.

<u>Physical Deterioration</u>   A form of depreciation where the loss in value or usefulness of an asset is attributable solely to physical causes such as wear and tear and exposure to the elements.

<u>Functional Obsolescence</u>   A form of depreciation where the loss in value is due to factors inherent in the property itself and due to changes in design, or process resulting in inadequacy, over capacity, excess construction, lack of functional utility, or excess operating costs.

<u>Economic Obsolescence</u>   A form of depreciation or loss in value, caused by unfavorable external conditions.  These can include such things as the economics of the industry, availability of financing, loss of material and labor sources, passage of new legislation, and changes in ordinances.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

bk 10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document       Page 39 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
Effective Date: March 19, 2025
Report Date: March 24, 2025

All three approaches to value were considered for this engagement. The sales comparison approach and the cost approach were the primary basis upon which the assets were appraised. The income approach was deemed not appropriate for this assignment.

Comparable sales were adjusted to reflect the subject assets, considering factors such as age, condition, usage hours, attachments, location, and market saturation.

Input from used equipment dealers also played a role in forming the value conclusions. Dealers set asking prices for their used inventory by evaluating similar equipment on the market at the time of sale, making adjustments based on differences between the assets they are selling and other comparable offerings.

The assigned values represent the appraiser's most informed and considered opinion of the price point likely to motivate a knowledgeable buyer to purchase.

The value opinions are derived from the facts and data presented in this report. To the appraiser's best knowledge and belief, these facts are accurate and truthful.

**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25 ...
Main Document    Page 40 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

## VII. METHODOLOGY

This appraisal was prepared utilizing some or all of the following methodology:

➢ Each item, unless otherwise noted, was inspected by the appraiser and identified by manufacturer, model number, serial number, year of manufacture, capacity, function, and available attachments.

➢ Instances where "N/A" appears in the equipment listing indicate "not available," signifying that the model, serial number, year, or asset number could not be located or verified during the inspection.

➢ Perishable tooling, product line-dedicated tooling, custom fixtures, custom dies and molds, and factory supplies were excluded from this appraisal, as they are outside the scope of this engagement.

➢ The value of spare parts, raw materials, work-in-process, and finished goods inventories has not been included in this appraisal, as it falls outside the scope of this engagement.

➢ Factors such as condition, age, functionality, obsolescence, marketability, and plant location are taken into account when determining the appraised value presented in this report. Items that are out of service or incomplete are specifically noted within the appraisal.

➢ Values are determined by comparing the appraised items with similar items recently sold at auctions or liquidation sales, consulting with dealers of both new and used equipment offering comparable products, reviewing relevant trade publications, periodicals, and machinery catalogs, and, when necessary, seeking input from professional machinery movers.

➢ When permitted by Spearman, the appraiser records each item digitally to allow a committee to review it.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 8:24-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document        Page 41 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

# VIII. COMPANY OVERVIEW

## SPEARMAN AEROSPACE, INC.[3]



Spearman Aerospace manufactures components for the aerospace industry, satellite/space and molds, using the most advanced CNC technology available in the market.

Among our clients, we are very proud to serve the Triumph Group, The Boeing Company, Gulfstream Aerospace, PCC Aerostructures and HM Dunn Aerospace and several other key players in the industry.

## FACILITY OVERVIEW



**9215 Greenleaf Avenue, Santa Fe Springs, CA 90670**

- ➤ Building size: approximately 7,000 square feet
- ➤ Used mainly for CNC machining of aerospace parts
- ➤ Facility was clean and organized
- ➤ Machinery & equipment was clean and under power

---

[3] *Newco Website;* **www.newco.com**

**Maynards**
SINCE 1902
APPRAISAL SERVICES

INDUSTRIAL SOLUTIONS
AUCTIONS / LIQUIDATIONS
EQUIPMENT FINANCE
ENERGY EXCHANGE
REAL ESTATE

12

**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:24-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document        Page 42 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

## MACHINERY & EQUIPMENT OVERVIEW

*Original Equipment Manufacturers (OEM)*

Manufacturers such as Doosan, Matsuura, and Hexagon all have a large presence in the industry and are considered very desirable. Hwacheon is less prevalent in the United States.

The machinery and equipment consist of CNC turning and machining centers. This equipment is standard in the metalworking industry including aerospace parts manufacturing.

*OEM Tier Description*

Tier 1 OEMs dominate the market with strong brand recognition, extensive dealer networks, and a reputation for high-quality, reliable equipment. This results in their machinery having a higher resale value than Tier 2 and Tier 3 counterparts.

Tier 1 OEMs valued in Appendix B include Matsuura and Hexagon.

Tier 2 OEMs have a moderate market share with a smaller dealer network and limited support. Their equipment remains in demand but has some geographical or segmental constraints, leading to a slightly lower resale value than Tier 1 brands.

Tier 2 OEMs valued in Appendix B include Doosan.

Tier 3 OEMs are emerging brands with limited market share, dealer support, and brand recognition. Their equipment is less tested, leading to reliability concerns and lower resale value due to service and parts availability challenges. Most Chinese OEMs are considered Tier 3.

Tier 3 OEMs valued in Appendix B include Hwacheon.



13

**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

ok 10917-DS     Doc 90     Filed 04/01/25     Entered 04/01/25

Main Document     Page 43 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*







**Company Appraised:**
**SPEARMAN AEROSPACE, INC.**
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Bk 10917-DS     Doc 90     Filed 04/01/25     Entered 04/01/25
Main Document     Page 44 of 69

**Report Prepared For:**
**OBERG LAW GROUP, A.P.C.**
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

## IX. CONDITION STATEMENTS

The general condition of the assets is assessed as good. The equipment ranges in age from four to thirteen years.

Proper maintenance is crucial for ensuring safety, maintaining efficient production levels, and extending the normal useful life of machinery and equipment. For the purpose of this appraisal, it is assumed that all equipment is in good working condition unless explicitly stated otherwise in the report. Any condition statements included in the detailed asset listing are based on the appraiser's visual inspection and information provided by Spearman.

It is important to note that determining the actual mechanical condition of the assets requires reliance on representations made by Spearman management, as this appraisal is not a technical or engineering evaluation.

The following sections provide explanations for the condition statements used in this report.

**EXCELLENT (E)** The machinery or equipment is either recently purchased, new, unused, or used with extremely limited use, and is in practically new mechanical condition. It may be installed or uninstalled.

**VERY GOOD (VG)** The machinery or equipment is in like-new condition, slightly used, and capable of operating at full capacity according to design specifications without the need for modifications. It is in exceptionally good mechanical condition, having either been completely overhauled or having had such limited use that no repairs or replacement of worn parts are necessary. The equipment has very low operating hours.

**GOOD (G)** The property is used but capable of operating at or near its full specified capacity. There are no known mechanical defects, except those that may be described. It is in operating condition, although it may have some worn parts that will require repair or replacement in the near future. It may have undergone repairs as part of regular maintenance at some point.

**FAIR (F)** The property is used and has seen considerable service. It may require a general overhaul in the near future. The condition of the item is consistent with its actual age, assuming normal usage.

**POOR (P)** The property is used and has seen hard service. It is operating below its fully specified capacity due to age and/or application. The equipment is worn and will require general maintenance and/or replacement of components and wear parts in the foreseeable future.

**SCRAP (X)** Beyond service life.

**NOT INSPECTED (N/I)** The asset has not been inspected by the appraiser, and its condition is unknown. It is assumed that the asset is in good working condition and is valued accordingly.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25 13:22:05    Desc
Main Document    Page 45 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*



\* *It is important to note that companies experiencing financial distress often defer necessary preventative maintenance and repairs on equipment. This practice can accelerate deterioration, negatively impacting the condition, age, and overall value of the equipment, potentially resulting in further discrepancies from the values presented in this report.*



16

**Company Appraised:**
**SPEARMAN AEROSPACE, INC.**
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Bk 10917-DS      Doc 90      Filed 04/01/25      Entered 04/01/25
Main Document      Page 46 of 69

**Report Prepared For:**
**OBERG LAW GROUP, A.P.C.**
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

# X. USEFUL LIFE OVERVIEW

The ratio of a property's "age" to its "life" can be used to measure physical deterioration. While this is a form of straight-line depreciation, it should not be confused with accounting depreciation. The appraiser uses valuation concepts of age and life, rather than accounting principles.

Depending on the purpose of the appraisal analysis, different definitions of age and life can be used as the numerator and denominator in the "age/life" ratio. Various definitions are provided here to help clarify the process used to estimate the Remaining Useful Life of the asset.

***Chronological Age*** is the number of years that have elapsed since a property was originally built or placed in service.

***Effective Age*** is the apparent age of a property in comparison with a new property of like kind; that is, the age indicated by the actual condition of a property. In estimating effective age, the appraiser considers the effect that overhauls, rebuilds, and above-average or below-average maintenance may have on the property's current condition. If the property has received regular overhauls, its effective age will normally be less, often significantly less, than its chronological age. Effective age is often the more appropriate numerator in the age/life ratio than is chronological age.

***Normal Useful Life*** is the estimated number of years that a new property will actually be used before it is retired from service. A property's normal useful life relates to how long similar properties actually tend to be used, as opposed to the more theoretical economic life calculation of how long a property can profitably be used. The best evidence of normal useful life is statistical or actuarial date derived from the study of properties that are similar to the subject under actual operating conditions. An asset's useful life may be longer that its *economic life* because the owner may elect not to retire the asset from service upon expiration of the asset's theoretical economic life.

***Remaining Useful Life*** is the estimated period during which a property, of a certain effective age is expected to actually be used before it is retired from service. The best evidence of remaining useful life is statistical or actuarial data derived from the study of properties that are similar to the subject under actual operating conditions.

Remaining useful life can sometimes be approximated by deducting the asset's *effective age* from its *normal useful life*; however, this is an over-simplification and not technically correct in some situations, for the same reason that a person who had a 72-year life expectancy when born, and is now 70 years old, has more than a 2-year remaining life expectancy according to human mortality tables. Statistical and actuarial studies of asset useful lives indicate that many assets follow a similar pattern.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:24-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document        Page 47 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

# XI. EFFECTIVE AGE, NORMAL & REMAINING USEFUL LIFE

Effective age, normal useful life, and remaining useful life have been estimated for the various asset types below, utilizing the American Society of Appraisers' Estimated Normal Useful Life Study, discussions with original equipment manufacturers and used equipment dealers, input from Spearman management, and the appraiser's professional experience.

*Please note that these estimates are based on the average age for the entire asset type, and some assets within that group may have a newer or older effective age, resulting in differing remaining useful lives. All equipment appeared to be operational at the time of inspection unless otherwise noted in the asset listing.*

➤ The normal useful life of the CNC machinery is estimated to be 12 years from the year of manufacture, assuming normal maintenance. The average effective age is estimated to be 9 years, leaving an estimated remaining useful life of 3 years.

➤ The normal useful life of the coordinate measuring machine is estimated to be 15 years from the year of manufacture, assuming normal maintenance. The average effective age is estimated to be 7 years, leaving an estimated remaining useful life of 8 years.



*\* It is important for the reader of this report to understand that Maynards has been engaged to provide a valuation based on the concept of forced liquidation value and orderly liquidation value. Typically, when a company is facing financial distress, there is often a deferral of necessary preventative maintenance or repairs on the equipment, which can contribute to further erosion of its useful life compared to the values presented in this report.*

**Company Appraised:**
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

Case 2:24-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document        Page 48 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

## XII. INDUSTRY OUTLOOK[4]

The machine shop industry is expected to see steady revenue growth over the next five years (2025-30), driven by increased demand from sectors like aerospace, oil and gas, and automotive manufacturing. The industry is forecast to have a revenue CAGR of 1.1% through 2030, reaching $46.2 billion by the end of the period.

Investments in cutting-edge technologies and automation will enhance productivity and efficiency. Additionally, rising private investments and increased domestic industrial production play crucial roles in bolstering growth. The Infrastructure Investment and Jobs Act (IIJA) will also drive demand by revitalizing infrastructure, which in turn increases the need for industrial machinery and fabricated metal components.

Challenges include rising input prices, particularly for raw materials like steel and aluminum. When costs for these materials increased in the past, machine shops could often pass these costs on to their customers. However, the recent volatility in prices has made this more difficult. Sharp declines in material prices have forced shops to lower their prices, even as their operational costs remain high, leading to decreased revenue. This volatility makes financial planning difficult and can hinder the ability to accept long-term orders, posing a risk to growth and sustainability.

---

[4] *Machine Shop Services in the US, US Industry (NAICS) Report 33271, February 2025, IBISWorld, www.ibisworld.com*



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

bk 10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document    Page 49 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

# XIII. VALUATION CONSIDERATIONS

Industry sources used or contacted in the research of the assets contained in this report include but are not limited to:

- ➤ Maynards Industries Internal Sales Database (**www.maynards.com**)
- ➤ DataRef (**www.dataref.com**)
- ➤ Various Original Equipment Manufacturers (**OEM's**)
- ➤ Various CNC Used Machinery Dealer Websites
- ➤ eBay (**www.ebay.com**)

This appraisal of the assets at Spearman is submitted under the forced liquidation value and orderly liquidation value concepts.

Implicit in both forced liquidation value and orderly liquidation value is the assumption that the company has ceased operations, is shut down, and is no longer conducting business. The sale of assets occurs under duress conditions, meaning there is an inherent compulsion to sell.

Forced liquidation value represents an auction-based sale, where assets are sold to the highest bidder regardless of price, typically after a brief market exposure period—in this case, forty-five days.

While orderly liquidation allows an extended timeframe to secure buyers—typically six to nine months—it remains a duress-driven sale. The seller is still in a "must-sell" situation, which can impact realized values.

Fair market value reflects a transaction where both buyer and seller act voluntarily, with no pressure or compulsion on either side. Since time is not a critical factor, fair market value allows for negotiation and optimal market conditions. However, the fair market value concept is outside the scope of this appraisal.

**Impact of Asset Additions or Deletions**

Any removals or additions to the appraised asset list could significantly influence their financial appeal and perceived market value, thereby impacting the valuation presented.

**Valuation Methodology**

- **Sales Comparison Approach**: Used where practical, comparing the assets to recent market transactions.
- **Cost Approach**: Considered when appropriate, but only to the extent that market participants recognize cost as an indication of value.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:24-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document        Page 50 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

Given the extensive number of assets, a detailed discussion of each valuation factor for every individual item would be impractical. Instead, this appraisal identifies the key issues that impact overall asset values, ensuring clarity for the reader.

Both liquidation values assume that assets are sold "as is, where is":

- **"As Is"**: Assets are sold without warranties, guarantees, or representations regarding fitness for use. Buyers assume all risks and must address any defects at their own expense. This "buyer beware" scenario can reduce marketability, especially if comparable alternatives exist.

- **"Where Is"**: Assets must be removed at the buyer's risk and expense. Any installation costs incurred by the seller are irrecoverable, as buyers do not attribute value to prior installation expenses.

### Buyer Categories in Liquidation Sales

There are typically two primary types of buyers in an asset liquidation:

1. **End Users** – Buyers seeking machinery to expand production or replace outdated equipment.
2. **Used Machinery Dealers & Brokers** – Speculative buyers who purchase assets for resale. These buyers consider removal and transportation costs, storage fees, repair expenses, marketing efforts, warranty risks, and profit margins when determining their offer prices.

Encouraging end-user participation in the sale is preferred, as it can lead to higher realized values compared to speculative buyers, thereby maximizing gross recoverable value.

### Market Research & Value Conclusions

Extensive market research has been conducted to assess the marketability and potential value of the assets.

- The condition and presentation of the equipment were found to be good.

- It is anticipated that end users will attend the sale, which could increase competition and drive higher prices.

The valuation estimates are based on the best available market data and appraisers' professional judgment, considering factors such as recent sales trends, equipment condition, and market demand.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25 ...
Main Document        Page 51 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

### Market Conditions & Sale Variability

It is important to note that liquidation sales are inherently uncertain:

- Some assets may sell above the estimated values.
- Others may sell below expectations, depending on market demand and buyer interest.

Despite these variations, the appraisers believe that the overall value conclusions accurately reflect current market conditions under both forced liquidation value and orderly liquidation value scenarios.

### Key Considerations

- **Forced Liquidation/Orderly Liquidation vs Fair Market Value**: This appraisal is based on forced liquidation and orderly liquidation value. If the assets were sold under fair market value conditions, recoveries should be significantly different.
- **Deferred Maintenance Risks**: In financial distress situations, companies often defer maintenance and necessary repairs, which can erode asset values further and impact recoveries compared to those presented in this report.

This appraisal reflects the best-informed opinion of asset values based on current market conditions, research, and industry expertise.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 8:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25

Main Document        Page 52 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

## XIV. STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS

➢ All facts and data set forth in this report are based upon an estimate of value only and are true and accurate to the best of the appraiser's knowledge and belief.

➢ No investigation has been made into title to the property and all items listed are assumed to be the property of the subject company unless otherwise noted.

➢ Maynards has relied upon management to identify any equipment that is leased or owned by parties unrelated to the appraisal. Conducting a UCC search is outside the scope of this appraisal assignment. It is assumed the information is reliable and credible for the appraisal assignment.

➢ No allowance has been made for possible liens or encumbrances that may be against the property other than those discussed in the report.

➢ No allowance has been made nor was any consideration given to potential environmental problems and the possible impact those problems would have on the findings within this appraisal. It is assumed that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless noncompliance is stated, defined, and considered in the appraisal report.

➢ The appraised property has been physically inspected, unless otherwise noted in the equipment listing.

➢ We have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved. However, should the equipment that is the subject of this report become available for sale, our firm could be considered as a source for liquidation.

➢ This Appraisal Report has been prepared in compliance with the <u>Uniform Standards of Professional Appraisal Practice</u> (USPAP) 2024-2025 edition, as well as the guidelines established by the <u>American Society of Appraisers</u> (ASA) and the <u>Association of Machinery and Equipment Appraisers</u> (AMEA) and reflects the best judgment of the appraiser.

➢ It is assumed that there are no hidden or unapparent conditions of the equipment, which would alter its appraised value.

➢ Information provided by others has been assumed to be correct for the purposes of this report and no responsibility is taken for the accuracy of it.

➢ The fees for this appraisal are not contingent upon values reported.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document        Page 53 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

➢ Other limitations or assumptions, if any, are clearly defined and individually set out at that point relating to the subject.

➢ The appraiser is not required to give testimony, be present in any court of law, or appear before any commission or board by reason of this appraisal, unless prior arrangements have been made.

➢ The effective date of the appraisal establishes the current value and is not prospective or retrospective.

➢ Any additions or deletions to the total assets appraised could change the psychological and/or monetary appeal necessary to gain the prices indicated. No value or consideration was given to raw materials; work in process or finished inventory.

➢ The contents of the appraisal are considered confidential and will not be transmitted to any third party without written permission of the Client.

➢ Digital pictures have been taken of the inspected appraised assets and are on file and available for review in the offices of Maynards Group of Companies ⏐ Appraisal Services.

➢ It is assumed that there are no hidden or unapparent conditions of the equipment that would render it more or less valuable.

➢ The appraiser disclaims any knowledge with respect to each asset's operational ability, capability or past performance, nor is there any determination as to hidden, latent or undisclosed defects which may have resulted from current or past use of the asset by present and/or past owners.

➢ Possession of this report, or a copy thereof, does not carry with it the right of publication. It may not be used for any purpose by any person other than the party to whom it is addressed without the written consent of that party and, in any event, only with proper written qualification and only in its entirety.

➢ Maynards Group of Companies ⏐ Appraisal Services reserves the right to recall all copies of this report to correct any error or omission.

➢ Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser, or the firm with which the appraiser is connected) shall be disseminated to the public through advertising, public relations, news, sales, or other media without the prior written consent and approval of the appraiser.

➢ This appraisal report contains **thirty-nine (39)** pages, beginning with the table of contents through Appendix C. The appraisal report must be viewed in its entirety to be considered valid.



24

**Company Appraised:**
**SPEARMAN AEROSPACE, INC.**
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document    Page 54 of 69

**Report Prepared For:**
**OBERG LAW GROUP, A.P.C.**
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

➤ Any value statements contained in this appraisal report are the appraiser's opinion and are not a guarantee of value.



Company Appraised:
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

Case 2:24-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document    Page 55 of 69

Report Prepared For:
OBERG LAW GROUP, A.P.C.
Effective Date: March 19, 2025
Report Date: March 24, 2025

## XV. APPRAISER'S CERTIFICATION

Michael R. Ostrom, ASA, CEA, ARM-MTS of Maynards Group of Companies | Appraisal Services does hereby certify, to the best of my knowledge and belief, that:

➢ The statements of fact contained in this report are true and correct.

➢ The reported analyses, opinions and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions and conclusions and not a guarantee of value.

➢ I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved. However, should the equipment that is the subject of this report become available for sale, our firm could be considered as a source for liquidation.

➢ I have appraised the assets contained in this report and owned by Spearman Aerospace, Inc., located at 9215 Greenleaf Avenue, Santa Fe Springs, CA 90670 during the past (3) years. Client was made aware of this prior to being engaged by Maynards.

➢ I hereby certify that, to the best of my knowledge and belief, the statements of fact contained in this report are true and correct, and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP) 2024-2025 edition of The Appraisal Foundation, the Principles of Appraisal Practice and Code of Ethics of the American Society of Appraisers (ASA) and the Code of Ethics of the Association of Machinery and Equipment Appraisers (AMEA).

➢ A copy of this report and the data, reasoning, and analyses supporting Maynards value conclusions shall remain in our files and be retained for a period of at least five (5) years after preparation, or at least two (2) years after final disposition of any judicial proceeding as required by the records keeping section of USPAP.

➢ My engagement was not contingent upon developing or reporting predetermined results.

➢ My compensation was not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of the appraisal.

➢ No person or persons other than those acknowledged below prepared the analysis, conclusions, and opinions within this report; however, in some instances industry professionals were consulted to provide assistance in reaching a value conclusion.



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document        Page 56 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

> ➤ I have made a physical inspection of the personal property that is the subject of this report, unless noted by a (*) below.

> ➤ The American Society of Appraisers (ASA) and the Association of Machinery & Equipment Appraisers (AMEA) has a mandatory recertification program for all of its senior members. I am currently in compliance with the requirements of those programs.

**Maynards Group of Companies │Appraisal Services**

_____

Michael R. Ostrom, ASA, CEA, ARM-MTS
Managing Director
**mostrom@maynards.com**

   __March 24, 2025__
        Date




**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:24-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document        Page 57 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

# XVI. QUALIFICATIONS OF THE APPRAISER

## Michael R. Ostrom, ASA, CEA, ARM-MTS

**Professional Experience**

Mr. Ostrom is Managing Director, Appraisal Services and operates out of the Orange County, California office of Maynards Group of Companies.

Mr. Ostrom is responsible for managing machinery and equipment valuation projects. He has been involved in and managed tangible asset valuations throughout the world for many Global 4000 corporations, prominent financial institutions, law firms and private equity firms. Tangible asset valuation projects have included machinery and equipment analyses for financing and secured lending transactions, sale/leaseback transactions, loan and lease portfolio acquisitions, valuations for financial and tax reporting including purchase price allocations for mergers and acquisitions, and due diligence support. He has also provided expert witness testimony in the United States Bankruptcy Court.

**Professional Background**

| | |
|---|---|
| Current | Maynards Group of Companies │Appraisal Services, Managing Director |
| 2017 – 2024 | Maynards Industries, Director - Valuations |
| 2006 – 2017 | Lakonia Machinery Appraisals, President |
| 2005 – 2006 | Greystone & Co., Vice President-Valuations |
| 2001 – 2005 | DoveBid Valuation Services, Inc., Senior Appraiser |

**Education**

Michigan State University – East Lansing, MI (1990-95 - Communications)
National Uniform Standards of Professional Appraisal Practice (USPAP) 2024-2025
ASA Courses Completed: ME201 - ME204, ME206, ME208, ME214, AR201- AR204

**Accreditations**

Accredited Senior Appraiser (ASA), Appraisal Review & Management (ARM), American Society of Appraisers #61523
* *Mr. Ostrom is in compliance with the mandatory reaccreditation requirements of the American Society of Appraisers*
Certified Equipment Appraiser (CEA), AMEA #2128
* *Mr. Ostrom is in compliance with the mandatory reaccreditation requirements of the Associate of Machinery & Equipment Appraisers (AMEA)*

**Professional Memberships**

**CFA** – Commercial Finance Association
**TMA** – Turnaround Management Association
**ACG** – Association for Corporate Growth

**Contact**

Phone: **714.351.8615**     Email: **mostrom@maynards.com**



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Doc 90   Filed 04/01/25   Entered 04/01/25
Main Document      Page 58 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*



The American Society of Appraisers

Attests that

# Michael R. Ostrom

**Accredited Senior Appraiser**
**Machinery & Technical Specialties**

has successfully participated in **ASA's Mandatory Reaccreditation Program**

and has complied with its continuing education requirements, as set forth in the organization's Constitution, Bylaws and Administrative Rules. Therefore, formal reaccreditation has been granted by the International Board of Governors and will remain valid through

## May 31, 2025

Signed, Sealed and Attested

January 18, 2023

*Johnnie White*
Chief Executive Officer

*Sarah E. Sebastian*
Director of Credentialing Services



Senior Member
Certified Machinery & Equipment Appraiser

*Recognition is hereby granted to*

## *Michael Ostrom*

*#2128*

By the AMEA for the period **10/01/2024 – 09/30/2025**



*In witness whereof, the said organization has caused this certificate to be signed by its duly authorized officers and its seal is to be affixed this 15th day of September A.D. 2024.*



*Robert Yeoman, CEA*
*Chair, Accreditation & Standards*

*David DiBenedetto, CEA*
*President*



**Company Appraised:**
SPEARMAN AEROSPACE, INC.
*9215 Greenleaf Avenue*
*Santa Fe Springs, CA 90670*

Case 2:24-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document    Page 59 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C.
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*



The American Society of Appraisers

Attests that

# Michael R. Ostrom

**Accredited Senior Appraiser**
**Appraisal Review & Management**

has successfully participated in **ASA's Mandatory Reaccreditation Program**
and has complied with its continuing education requirements, as set forth in the organization's Constitution, Bylaws and Administrative Rules. Therefore, formal reaccreditation has been granted by the International Board of Governors and will remain valid through

## May 31, 2025

Signed, Sealed and Attested

January 18, 2023

*Johnnie White*
Chief Executive Officer

*Sarah E. Sebastian*
Director of Credentialing Services

## The American Society of Appraisers

2121 Cooperative Way, Suite 210, Herndon, VA 20171

*Hereby awards*
**Michael Ostrom**

*a certificate of completion for the following continuing education offering successfully completed*
**2024-2025 7-Hour USPAP Update Course for Personal Property, Gems & Jewelry, and Machinery & Technical Specialties**

*in accordance with the Society's bylaws and administrative rules. Obtaining this Certificate of Completion is not a substitute for having achieved a professional appraisal designation. It is a certificate of completion for an individual course, in contrast to the award of a distinct professional credential which would be based on the requisite certification process. Accordingly, this Certificate does not connote authority for an individual to hold themselves out to the public or a specific client as a qualified appraiser, without having first obtained the requisite education, experience and background to achieve a professional designation in the specific appraisal discipline required for the subject engagement.*
*Signed, Sealed and Attested*
**February 13, 2024**

Contact Hours: 7
ASA CE Credit: 7

*Benny F. Price, ASA COO*
*ASA Chief Operations Officer*

*Johnnie White, ASA CEO*
*ASA Chief Executive Officer*



**Maynards**
SINCE 1902
APPRAISAL SERVICES

INDUSTRIAL SOLUTIONS
AUCTIONS / LIQUIDATIONS
EQUIPMENT FINANCE
ENERGY EXCHANGE
REAL ESTATE

30

# Maynards

SINCE 1902

INDUSTRIAL SOLUTIONS
AUCTIONS / LIQUIDATIONS
EQUIPMENT FINANCE
ENERGY EXCHANGE
REAL ESTATE

APPRAISAL SERVICES

| LOCATION SUMMARY | FORCED LIQUIDATION VALUE | ORDERLY LIQUIDATION VALUE |
|---|---|---|
| SPEARMAN AEROSPACE, INC. 9215 GREENLEAF AVENUE SANTA FE SPRINGS, CA 90670 | $1,132,500 | $1,507,500 |

| *EFFECTIVE DATE: MARCH 19, 2025* | FORCED LIQUIDATION VALUE | ORDERLY LIQUIDATION VALUE |
|---|---|---|
| **GRAND TOTAL (USD)** | **$1,132,500** | **$1,507,500** |

*APPENDIX A - LOCATION SUMMARY*

## SPEARMAN AEROSPACE, INC.
**9215 GREENLEAF AVENUE**
**SANTA FE SPRINGS, CA 90670**

*Effective Date: March 19, 2025*



**MAYNARDS**
APPRAISAL SERVICES

| ITEM | QTY | DESCRIPTION | CONDITION | FORCED LIQUIDATION VALUE | ORDERLY LIQUIDATION VALUE |
|---|---|---|---|---|---|
| | | **MANUFACTURING ASSETS** | | | |
| | | **(Cutting Hours Provided By Spearman Mgmt)** | | | |
| 1 | 1 | DOOSAN MODEL DNM 5700 CNC VERTICAL MACHINING CENTER, S/N MV0091-001254, (YEAR: 2017); MACHINE # M4; TRAVELS: X=41.3", Y=22.4", Z=20.1"; TABLE SIZE: 51.2" X 22.4"; SPINDLE SPEEDS: 12,000-RPM; SPINDLE MOTOR: 25-HP; ATC: 30-TOOL; BIG PLUS CAT40; CNC: FANUC I SERIES; THRU-SPINDLE COOLANT SYSTEM; WITH HENNIG MODEL 102578V CHIP CONVEYOR, S/N H137953-003B, (2017)<br><br>**CUTTING HOURS (AS OF 3-20-2025): 17,454** | G | $37,500 | $50,000 |
| 2 | 1 | HWACHEON MODEL VESTA 1000 CNC VERTICAL MACHINING CENTER, S/N M281361K4N C, (YEAR: 2013); MACHINE # M1; TRAVELS: X=39.37", Y=21.65", Z=19.68"; TABLE SIZE: 43.3" X 19.6"; SPINDLE SPEEDS: 10,000-RPM; SPINDLE MOTOR: 20-HP; ATC: 30-TOOL; CAT40; RIGID TAPPING; CNC: FANUC SERIES OI-MD; THRU-SPINDLE COOLANT SYSTEM; WITH JUNG DO ITEM # C45601 CHIP CONVEYOR, S/N CH1341553<br><br>**CUTTING HOURS (AS OF 3-20-2025): 19,313** | F | $22,500 | $32,500 |
| 3 | 1 | HWACHEON MODEL VESTA 1000 CNC VERTICAL MACHINING CENTER, S/N M281361B2N A, (YEAR: 2013); MACHINE # M3; TRAVELS: X=39.37", Y=21.65", Z=19.68"; TABLE SIZE: 43.3" X 19.6"; SPINDLE SPEEDS: 10,000-RPM; SPINDLE MOTOR: 20-HP; ATC: 30-TOOL; CAT40; RIGID TAPPING; CNC: FANUC SERIES OI-MD; THRU-SPINDLE COOLANT SYSTEM; WITH JUNG DO ITEM # C45601 CHIP CONVEYOR, S/N CH1341064<br><br>**CUTTING HOURS (AS OF 3-20-2025): 17,579** | F | $22,500 | $32,500 |
| 4 | 1 | DOOSAN MODEL DNM 500 II CNC VERTICAL MACHINING CENTER, S/N MV0010-003614, (YEAR: 2015); MACHINE # M5; TRAVELS: X=40.2", Y=21.3", Z=20.1"; TABLE SIZE: 47.2" X 21.3"; SPINDLE SPEEDS: 8,000-RPM; SPINDLE MOTOR: 20-HP; ATC: 30-TOOL; CAT40 PLUS; CNC: FANUC I SERIES; THRU-SPINDLE COOLANT SYSTEM; WITH LNS MODEL 57508207 CHIP CONVEYOR, S/N 13575002096<br><br>**CUTTING HOURS (AS OF 3-20-2025): 21,043** | G | $25,000 | $37,500 |
| 5 | 1 | MATSUURA MODEL MX-850 5-AXIS CNC VERTICAL MACHINING CENTER, S/N 22477, (YEAR: 2022); MACHINE # M7; TRAVELS: X=35.43", Y=30.7", Z=25.59"; TABLE SIZE: 33.46"; SPINDLE SPEEDS: 15,000-RPM; SPINDLE MOTOR: 30-HP; ATC: 60-TOOL; CAT40; CNC: MATSUURA G-TECH 31I; RENISHAW PROBES; LNS CHIPBLASTER S-SERIES MODEL S-30 THRU-SPINDLE COOLANT SYSTEM, S/N 23C05S00232, (2022); WITH MOSNIC MODEL RD3C-024 FCE-0425E DRUM FILTER/CHIP CONVEYOR, S/N 22300282, (2022)<br><br>**CUTTING HOURS (AS OF 3-20-2025): 3,408** | VG | $265,000 | $350,000 |
| 6 | 1 | MATSUURA MODEL MX-330 PC10 5-AXIS CNC VERTICAL MACHINING CENTER, S/N 21166, (YEAR: 2018); MACHINE # M9; TRAVELS: X=17.13", Y=18.31", Z=22.05"; TABLE SIZE: 11.81"; PALLET CHANGER: 10-PALLET; SPINDLE SPEEDS: 20,000-RPM; ATC: 90-TOOL; CAT40; CNC: MATSUURA G-TECH 31I; COOLJET MODEL UF73VW23STD REV A THRU-SPINDLE COOLANT SYSTEM, S/N PA1018014, (2018); WITH MOSNIC MODEL RD3C-024 FCE-0501B DRUM FILTER/CHIP CONVEYOR, S/N 19300092-2, (2018)<br><br>**CUTTING HOURS (AS OF 3-20-2025): 20,442** | G | $105,000 | $140,000 |
| 7 | 1 | DOOSAN MODEL PUMA GT2600 CNC TURNING CENTER, S/N ML0258-000203, (YEAR: 2015); MACHINE # L2; CHUCK: 10" 3-JAW; SWING: 24.8"; TURNING DIA: 18.1"; MACHINING LENGTH: 25.9"; SPINDLE BORE: 3.19"; SPINDLE SPEEDS: 3,500-RPM; SPINDLE MOTOR: 30-HP; TURRET: 12-STATION; PROGRAMMABLE TAIL STOCK; 3-JAW CHUCK; CNC: FANUC I SERIES; WITH LNS MODEL 57509706 CHIP CONVEYOR, S/N 13575005052<br><br>**CUTTING HOURS (AS OF 3-20-2025): 9,457** | G | $32,500 | $42,500 |

**SPEARMAN AEROSPACE, INC.**
*9215 GREENLEAF AVENUE*
*SANTA FE SPRINGS, CA 90670*
**Effective Date: March 19, 2025**


**Maynards**
APPRAISAL SERVICES

| ITEM | QTY | DESCRIPTION | CONDITION | FORCED LIQUIDATION VALUE | ORDERLY LIQUIDATION VALUE |
|------|-----|-------------|-----------|--------------------------|---------------------------|
| 8 | 1 | DOOSAN MODEL PUMA 2600SY II CNC TURNING CENTER, S/N ML0372-000388, (YEAR: 2021); MACHINE # L1; CHUCKS: 10" & 8" 3-JAW; TURNING DIA: 14.8"; MACHINING LENGTH: 29.9"; SPINDLE BORE: 3.2"; SUB SPINDLE; SPINDLE SPEEDS: 4,000/6,000-RPM; SPINDLE MOTOR: 30/20-HP; TURRET: 12-STATION; LIVE TOOLING; TAIL STOCK; 3-JAW CHUCK; CNC: FANUC I SERIES PLUS; MP SYSTEMS VR SERIES AT VR8 HIGH PRESSURE COOLANT SYSTEM, S/N P142676I, (2021); WITH LNS MODEL 57519018 CHIP CONVEYOR, S/N 13575104030<br><br>**CUTTING HOURS (AS OF 3-20-2025): 3,501** | G | $87,500 | $115,000 |
| 9 | 1 | DOOSAN MODEL DNM 5700 CNC VERTICAL MACHINING CENTER, S/N MV0091-003576, (YEAR: 2021); MACHINE # M13; TRAVELS: X=41.3", Y=22.4", Z=20.1"; TABLE SIZE: 51.2" X 22.4"; SPINDLE SPEEDS: 12,000-RPM; SPINDLE MOTOR: 25-HP; ATC: 30-TOOL; CAT40 PLUS; CNC: FANUC I SERIES PLUS; THRU-SPINDLE COOLANT SYSTEM; WITH LNS MODEL 57519001 CHIP CONVEYOR, S/N 13575104463<br><br>**CUTTING HOURS (AS OF 3-20-2025): 9,858** | G | $55,000 | $72,500 |
| 10 | 1 | DOOSAN MODEL DNM 5700 CNC VERTICAL MACHINING CENTER, S/N MV0091-000316, (YEAR: 2016); MACHINE # M12; TRAVELS: X=41.3", Y=22.4", Z=20.1"; TABLE SIZE: 51.2" X 22.4"; SPINDLE SPEEDS: 12,000-RPM; SPINDLE MOTOR: 25-HP; ATC: 30-TOOL; CAT40 PLUS; CNC: FANUC I SERIES; THRU-SPINDLE COOLANT SYSTEM; WITH HENNIG MODEL 102578V CHIP CONVEYOR, S/N H164698-001, (2017)<br><br>**CUTTING HOURS (AS OF 3-20-2025): 23,161** | G | $32,500 | $45,000 |
| 11 | 1 | DOOSAN MODEL DNM 350/5AX 5-AXIS CNC VERTICAL MACHINING CENTER, S/N MV0053-000278, (YEAR: 2017); MACHINE # M11; TRAVELS: X=23.6", Y=25.8", Z=19.7"; SPINDLE SPEEDS: 12,000-RPM; SPINDLE MOTOR: 25-HP; ATC: 30-TOOL; CAT40 BIG PLUS; CNC: FANUC I SERIES; 13.8" DIA. 5TH AXIS TRUNNION TABLE; WITH HENNIG MODEL 102054V CHIP CONVEYOR, S/N H170070-001, (2017)<br><br>**CUTTING HOURS (AS OF 3-20-2025): 17,377** | G | $65,000 | $85,000 |
| 12 | 1 | MATSUURA MODEL MX-330 5-AXIS CNC VERTICAL MACHINING CENTER, S/N 20444, (YEAR: 2016); MACHINE # M8; TRAVELS: X=17.13", Y=18.31", Z=22.05"; TABLE SIZE: 11.81"; SPINDLE SPEEDS: 20,000-RPM; ATC: 90-TOOL; CAT40; CNC: MATSUURA G-TECH 31I; RENISHAW DUAL PROBE KIT; COOLJET MODEL 5025P-230-F THRU-SPINDLE COOLANT SYSTEM, S/N 53944, (2016); WITH LNS MODEL 57109026 CHIP CONVEYOR, S/N 13571000007; TRINITY MODEL AX3 AUTOMATED PALLET SYSTEM, 45-PALLET, PLC  WITH FANUC MODEL M-201A/35M 6-AXIS ROBOT, S/N N/A, WITH 35-KG PAYLOAD<br><br>**CUTTING HOURS (AS OF 3-20-2025): 26,530** | G | $160,000 | $210,000 |
| 13 | 1 | DOOSAN MODEL DNM 750L II CNC VERTICAL MACHINING CENTER, S/N MV0062-000785, (YEAR: 2018); MACHINE # M2; TRAVELS: X=85", Y=30", Z=25.6"; TABLE SIZE: 85" X 29.9"; SPINDLE SPEEDS: 12,000-RPM; SPINDLE MOTOR: 21-HP; ATC: 30-TOOL; CAT40; CNC: FANUC I SERIES; CHICK SUBPLATE & QUICK RELEASE SYSTEM; THRU-SPINDLE COOLANT SYSTEM; WITH LNS MODEL 57009569 CHIP CONVEYOR, S/N 13570003337<br><br>**CUTTING HOURS (AS OF 3-20-2025): 11,311** | G | $65,000 | $85,000 |

## SPEARMAN AEROSPACE, INC.
### 9215 GREENLEAF AVENUE
### SANTA FE SPRINGS, CA 90670
*Effective Date: March 19, 2025*


Maynards
SINCE 1902
APPRAISAL SERVICES

| ITEM | QTY | DESCRIPTION | CONDITION | FORCED LIQUIDATION VALUE | ORDERLY LIQUIDATION VALUE |
|------|-----|-------------|-----------|--------------------------|---------------------------|
| 14 | 1 | DOOSAN MODEL DVF 5000 5-AXIS CNC VERTICAL MACHINING CENTER, S/N MV0111-000328, (YEAR: 2020); MACHINE # M6; TRAVELS: X=24.6", Y=17.7", Z=15.7"; TABLE SIZE: 19.7"; SPINDLE SPEEDS: 18,000-RPM; SPINDLE MOTOR: 30-HP; ATC: 90-TOOL; CAT40; CNC: FANUC SERIES 31I-MODEL B5; 5TH AXIS TRUNNION TABLE; RENISHAW RMP600 SPINDLE PROBE; RENISHAW RTS TTP TOOL SETTER; MP SYSTEMS VR SERIES AT VR8 HIGH PRESSURE COOLANT SYSTEM, S/N P150937B, (2021); WITH LNS MODEL 57109046 CHIP CONVEYOR, S/N 13571000196<br><br>**CUTTING HOURS (AS OF 3-20-2025): 7,337** | G | $87,500 | $115,000 |
| 15 | 1 | DOOSAN MODEL DNM 5700 CNC VERTICAL MACHINING CENTER, S/N MV0091-000411, (YEAR: 2016); MACHINE # M10; TRAVELS: X=41.3", Y=22.4", Z=20.1"; TABLE SIZE: 51.2" X 22.4"; SPINDLE SPEEDS: 10,000-RPM; SPINDLE MOTOR: 25-HP; ATC: 30-TOOL; CAT40 PLUS; CNC: FANUC I SERIES; THRU-SPINDLE COOLANT SYSTEM; WITH HENNIG MODEL 102579V CHIP CONVEYOR, S/N H164780-001, (2017)<br><br>**CUTTING HOURS (AS OF 3-20-2025): 21,492** | G | $32,500 | $45,000 |
| 16 | 1 | HEXAGON MODEL GLOBAL S GREEN 05.07.05 COORDINATE MEASURING MACHINE, S/N 0519-1149 UA, (YEAR: 2019); MEASURING RANGE: X= 19.68", Y=27.55", Z=19.68"; SURFACE PLATE: 31.49" X 46.85"; HEXAGON MODEL HH-AS6-T5 PROBE HEAD; HEXAGON HP-S-X1H SCANNING PROBE; 9-PROBE CHANGER WITH PROBES; WALL-MOUNTED AIR DRYER; COMPUTER SYSTEM & CONTROLS | G | $37,500 | $50,000 |
| | | **SUBTOTAL:  MANUFACTURING ASSETS** | | **$1,132,500** | **$1,507,500** |

| | FORCED LIQUIDATION VALUE | ORDERLY LIQUIDATION VALUE |
|---|--------------------------|---------------------------|
| **GRAND TOTAL (USD) :  SPEARMAN AEROSPACE, INC.** | **$1,132,500** | **$1,507,500** |

Company Appraised:
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

Case 2:24-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25 ...
Main Document        Page 64 of 69

Report Prepared For:
OBERG LAW GROUP, A.P.C
Effective Date: March 19, 2025
Report Date: March 24, 2025

### ITEM #1: 2017 Doosan DNM 5700



### ITEM #2: 2013 Hwacheon Vesta 1000



### ITEM #3: 2013 Hwacheon Vesta 1000



### ITEM #4: 2015 Doosan DNM 500 II



Maynards
SINCE 1902
APPRAISAL SERVICES

INDUSTRIAL SOLUTIONS
AUCTIONS / LIQUIDATIONS
EQUIPMENT FINANCE
ENERGY EXCHANGE
REAL ESTATE

1

Company Appraised:
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25 ...
Main Document    Page 65 of 69

Report Prepared For:
OBERG LAW GROUP, A.P.C
Effective Date: March 19, 2025
Report Date: March 24, 2025

## ITEM #5: 2022 Matsuura MX-850



## ITEM #6: 2018 Matsuura MX330/PC10



## ITEM #7: 2015 Doosan Puma GT2600



## ITEM #8: 2021 Doosan Puma 2600SYII



**Maynards**
SINCE 1902
APPRAISAL SERVICES

INDUSTRIAL SOLUTIONS
AUCTIONS / LIQUIDATIONS
EQUIPMENT FINANCE
ENERGY EXCHANGE
REAL ESTATE

2

**Company Appraised:**
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25
Main Document    Page 66 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C
*Effective Date: March 19, 2025*
*Report Date: March 24, 2025*

## ITEM #9: 2021 Doosan DNM 5700



## ITEM #10: 2016 Doosan DNM 5700



## ITEM #11: 2017 Doosan DNM 350/5AX



## ITEM #12: 2016 Matsuura MX-330



**Maynards**
SINCE 1902
APPRAISAL SERVICES

INDUSTRIAL SOLUTIONS
AUCTIONS / LIQUIDATIONS
EQUIPMENT FINANCE
ENERGY EXCHANGE
REAL ESTATE

3

**Company Appraised:**
SPEARMAN AEROSPACE, INC.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

Case 2:25-bk-10917-DS    Doc 90    Filed 04/01/25    Entered 04/01/25 23:56:03    Desc
Main Document    Page 67 of 69

**Report Prepared For:**
OBERG LAW GROUP, A.P.C
Effective Date: March 19, 2025
Report Date: March 24, 2025

### ITEM #13: 2018 Doosan DNM 750L II



### ITEM #14: 2020 Doosan DVF 5000



### ITEM #15: 2016 Doosan DNM 5700



### ITEM #16: 2019 Hexagon Global CMM



**Maynards**
SINCE 1902
APPRAISAL SERVICES

INDUSTRIAL SOLUTIONS
AUCTIONS / LIQUIDATIONS
EQUIPMENT FINANCE
ENERGY EXCHANGE
REAL ESTATE

4

**Maynards expertise in the machinery and equipment industry spans over a century. Maynards began as a single storefront auction house and has since grown into a global presence. Services include:**

### INDUSTRIAL SOLUTIONS

➢ **Maynards Industrial Solutions (MIS) builds on the Maynards Group's established expertise in auctions, appraisals, and finance, offering clients expanded options for monetizing their assets and real estate. MIS adopts a consultative approach, carefully listening to clients' needs to better assess and surpass their expectations, particularly when navigating the complexities of maximizing the disposition of company assets or business units.**

### AUCTIONS / LIQUIDATIONS

➢ **Success in the used machinery and equipment industry is built on a foundation of experience, integrity, research, relationships, and initiative. Maynards consistently delivers top value and returns to customers. This is achieved by combining traditional sales techniques with modern marketing strategies, contrasting the prevailing forces of supply and demand with our database of historical comparables, and offering flexible financing solutions to meet diverse customer needs.**

### APPRAISAL SERVICES

➢ **Our expert team uses deep knowledge, a proprietary database, and on-site expertise to assess and maximize the value of assets in auction and liquidation scenarios. We provide accurate, real-world valuations across various industries. Maynards' services help businesses secure working capital, ensure proper allocation in acquisitions, and determine asset values for internal use or external sales. Clients benefit from our thorough research, industry knowledge, and unwavering commitment to integrity and professionalism.**

### EQUIPMENT FINANCE

➢ **Maynards specializes in transitional lending, offering flexible financial solutions for businesses across all stages of growth, including distressed situations. They help customers unlock equity in used machinery and equipment with quick fund deployment for working capital, debt refinancing, or asset acquisition. Their expertise in accurately valuing collateral rather than relying on book values allows them to provide more competitive financing terms than many other lenders. Maynards' financing often serves as a strategic bridge, enabling customers to transition to traditional lending options.**

### ENERGY EXCHANGE

➢ **With over 120 years of asset management expertise, the company is transforming the wind energy industry by optimizing asset management, trading, and value maximization. Their offerings include:**

- ▪ **Repowering & Decommissioning: A proven strategy featuring detailed project analysis within 48 hours, guaranteed baseline value, and potential 4-5x returns through upcycling.**

- ▪ **Component & Unit Inventory: A marketplace that converts inactive assets into immediate value through industry-wide exposure, real-time transaction tracking, and maximum value realization.**
- ▪ **Component Requests: Access to critical components from peer energy companies with verified documentation and cost savings of 30-50%.**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Echo Park Legal, APC, 2210 W Sunset Blvd. #301, Los Angeles, CA 90026.

A true and correct copy of the foregoing document entitled (*specify*): DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(A) OF THE BANKRUPTCY CODE AND EXTINGUISING LIENS IN EXCESS OF SAID VALUE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF SCOTT HOLLAND AND MICHAEL OSTROM IN SUPPORT THEREOF will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 4/1/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Karen L Belair**   kbelair@zwickerpc.com
- **David A Berkley**   david.berkley@wbd-us.com, mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
- **M Douglas Flahaut**   df@echoparklegal.com
- **Robert Paul Goe (TR)**   bktrustee@goeforlaw.com, kwareh@goeforlaw.com;bkadmin@goeforlaw.com;C187@ecfcbis.com;kmurphy@goeforlaw.com;rgoe@goeforlaw.com
- **Arnold L Graff**   agraff@wrightlegal.net, nvbkfiling@wrightlegal.net;jpowell@wrightlegal.net
- **Noreen A Madoyan**   Noreen.Madoyan@usdoj.gov
- **Sean A OKeefe**   sokeefe@okeefelc.com, seanaokeefe@msn.com
- **David L Oberg**   david@oberglawapc.com
- **Madison B Oberg**   madison@oberglawapc.com
- **Thomas J Polis**   tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- **Amitkumar Sharma**   amit.sharma@aisinfo.com
- **United States Trustee (LA)**   ustpregion16.la.ecf@usdoj.gov
- **Dylan J Yamamoto**   dylan@echoparklegal.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:

On (date_), 2025, *I caused to be* served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/1/2025 | M. Douglas Flahaut | /s/ M. Douglas Flahaut |
|---|---|---|
| Date | Printed Name | Signature |