1  ANTHONY J. NAPOLITANO (SBN: 227691)
      anapolitano@buchalter.com
2  BUCHALTER, A Professional Corporation
   1000 Wilshire Boulevard, Suite 1500
3  Los Angeles, CA 90017-1730
   Telephone: (213) 891-0700
4  Facsimile: (213) 896-0400

5  Attorneys for lessor and secured creditor
   SIEMENS FINANCIAL SERVICES, INC.

6

7                   **UNITED STATES BANKRUPTCY COURT**

8          **CENTRAL DISTRICT OF CALIFORNIA (LOS ANGELES DIVISION)**

9  In re                              Case No. 2:25-bk-10917-DS

10 SPEARMAN AEROSPACE, INC.,          Chapter 11 (Subchapter V)

11            Debtor.                 **SIEMENS FINANCIAL SERVICES'**
                                      **OPPOSITION TO THE DEBTOR'S**
12                                    **MOTION FOR ORDER SETTING**
                                      **PROPERTY VALUE FOR PURPOSES**
13                                    **OF SECTION 506(a) OF THE**
                                      **BANKRUPTCY CODE AND**
14                                    **EXTINGUISHING LIENS IN EXCESS**
                                      **OF SAID VALUE**
15
                                      **Hearing:**
16                                    Date:      April 22, 2025
                                      Time:      1:00 p.m.
17                                    Place:     United States Bankruptcy Court
                                                 Edward Roybal Federal Building
18                                               Courtroom 1639
                                                 255 East Temple Street
19                                               Los Angeles, CA 90012

20

21

22

23

24

25

26

27

28

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, ITS COUNSEL, AND ALL INTERESTED PARTIES:**

Siemens Financial Services, Inc., as successor in interest to Manufacturers Financing Services ("Siemens") respectfully submits this opposition to the *Motion for Order Setting Property Value for Purposes of Section 506(a) of the Bankruptcy Code and Extinguishing Liens in Excess of Said Value* [Docket No. 90] (the "Motion") filed by Spearman Aerospace, Inc., debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor") as follows:

**I.        INTRODUCTION**

The Court should deny the Debtor's Motion for three critical reasons.  First, the Motion is premature.  In order to invoke the valuation procedure under section 506(a) of the Bankruptcy Code, there must be "an allowed claim of a secured creditor."  Given that the Debtor has scheduled Siemens' secured claim as unliquidated and disputed and with an "unknown" amount, there is no "allowed claim" for purposes of section 506(a).  Until Siemens timely files its Proof of Claim, the relief sought in the Motion is premature and inappropriate.

Second, the Motion inappropriately seeks to extinguish the lien of Siemens in excess of the value of its collateral under section 502(d).  Section 502(d) first requires that the secured claim be disallowed (subject to certain exceptions not applicable here) in order for such lien is void.  The Debtor has taken no efforts to seek the disallowance of Siemens claim given that the April 17, 2025 bar date has not yet passed.  Further, while section 502(d) provides that a lien may be "void," it does not specify the means for such avoidance.  Indeed, Rule 7001(b) of the Federal Rules of Bankruptcy Procedure require an adversary for any proceeding to determine the validity, priority, or extent of a lien or other interest in property.  The Debtor's attempt to extinguish the liens via the Motion cannot be supported.  Further, such efforts would result in an impermissible nullification of an undersecured creditor's right to seek to have its claim treated as fully secured under section 1111(b).

Finally, the "orderly liquidation value" standard proposed in the Motion is not appropriate.  For purposes of determining the amount that must be paid to a secured creditor in the cramdown

**SIEMENS FINANCIAL SERVICES' OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE**

context, the question of value under section 506(a) turns on the value of the debtor's proposed use of the relevant property under the plan, not the value achievable in a foreclosure or liquidation scenario that is not proposed.  The Debtor intends to seek confirmation of a Subchapter V plan of reorganization to enable it to continue its business operations.  A liquidation value "orderly" is not the appropriate valuation method for purposes of section 506(a).

Accordingly, Siemens requests that the Court deny the Motion in its entirety or, at least as it relates to Siemens' claims and collateral.

## II.    STATEMENT OF FACTS

### A.    The Debtor's Secured Equipment Lease with Siemens.

On June 22, 2021, Manufacturers Financing Services ("Manufacturers"), as lessor, and the Debtor, as lessee, entered into an Equipment Lease Agreement designated as No. 2021001720 (the "Lease Agreement") pursuant to which the Debtor would lease from Manufacturers certain equipment for use in the Debtor's business.  Manufacturer's interest in the equipment that is the subject of the Lease Agreement has been recorded with the California Secretary of State through that certain UCC-1 Financing Statement designated as File No. U210059649935 filed on June 24, 2021 (the "Financing Statement").  Thereafter, Manufacturers assigned all its right, title, and interest in the Lease Agreement and the equipment described in the Lease Agreement to Siemens pursuant to an executed Notice of Assignment.  For the convenience of the Court, copies of the Lease Agreement, the Financing Statement and the Notice of Assignment are attached hereto as Exhibits 1, 2, and 3, respectively.[1]

### B.    The Debtor's Chapter 11 Case.

On February 6, 2025, the Debtor filed its voluntary, chapter 11 (Subchapter V) bankruptcy petition commencing the above-captioned bankruptcy case.  *See* Docket No. 1.  On February 19, 2025, the Debtor filed its case commencement documents, which included its Summary of Assets and Liabilities for Non-Individual, Schedules A/B, D, E/F, G, and H, and Statement of Financial Affairs for Non-Individual Filing for Bankruptcy.  *See* Docket No. 44.  On *Schedule D:  Creditors*

---

[1]  By the time of the hearing on the Debtor's Motion, Siemens will have filed its Proof of Claim with fully authenticated copies of these documents attached thereto.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SIEMENS FINANCIAL SERVICES' OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE**

BN 87645818v1

*Who Have Claims Secured by Property*, the Debtor scheduled Siemens as a secured creditor with an "unliquidated" and "disputed" claim in an "unknown" amount. *See* Docket No. 44, ECF p. 28 of 73 at Creditor No. 2.15.

**C.     The Relief Sought in the Debtor's Valuation Motion.**

On April 1, 2025, the Debtor filed the Motion. Through the Motion, the Debtor seeks the Court's determination of the value of secured creditors' collateral for purposes of determining the extent of the secured claims and for purposes of confirming a chapter 11, subchapter V plan. *See* Motion, ECF p.6 of 69, ln. 7-17.  The basis of the proposed valuations that are to be applied to Siemens' equipment is a March 24, 2025 appraisal prepared by the Maynards Group of Companies (the "Appraisal"), which assigns an orderly liquidation value of $115,000 to Siemens' equipment. *See* Motion, ECF p. 10 of 69, ln. 8-11 and ECF pp. 28 to 68 of 69.  Finally, pursuant to the Motion, the Debtor seeks to extinguish Siemens' lien to the extent it exceeds this amount.  *See* Motion, ECF p.6 of 69, ln. 7-17.

**III.     LEGAL ARGUMENT**

**A.     The Debtor's attempt to seek a determination of value under Section 506(a) is premature given the absence of an allowed claim.**

In order to invoke the valuation procedure under section 506(a) of the Bankruptcy Code, there must be "an allowed claim of a secured creditor."  Specifically, section 506(a)(1) provides:

> An **allowed claim** of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1) (emphasis added).

Section 506(a) requires a determination of the extent to which the claim is an allowed claim, meaning whether the claim is valid under applicable nonbankruptcy law and not invalid under some provision of the Bankruptcy Code.  Section 502 governs the allowance of claims and provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  The filing of a proof of claim is prima facie sufficient to establish the existence of an allowed claim.  FED. R. BANKR. P. 3002(f).  Yet, if

4

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 87645818v1

an objection is filed, the claim may be disallowed for any of the relevant reasons set forth in section 502.  If a claim is disallowed, it cannot qualify as a secured claim under section 506(a) to the extent of the disallowance.

Here, the Debtor scheduled Siemens' secured claim as "unliquidated" and "disputed" and with an "unknown" amount.  Accordingly, Siemens must file a proof of claim under the Bankruptcy Rules.  *See* FED. R. BANKR. P. 3003(c)(2).  Once filed, that claim will be deemed allowed under section 502(a) (unless a party in interest objections) and, therefore, ripe for determination of its secured status under section 506(a).  Until that time, the Debtor cannot seek the relief it desires in its Motion.  For this reason, the Motion should be denied without prejudice.

**B.    The Debtor's attempt to "extinguish" the allegedly undersecured portion of Siemens' lien is procedurally and statutorily improper.**

The Debtor's Motion inappropriately seeks to extinguish the lien of Siemens in excess of the value of its collateral under section 502(d).  Section 502(d) first requires that the secured claim be disallowed (subject to certain exceptions not applicable here) in order for such lien is void.  Specifically, section 502(d) provides:

> To the extent that a lien secures a claim against the debtor that is **not an allowed secured claim**, such lien is void, unless—
>
> (1)    such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
>
> (2)    such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 502(d) (emphasis added).

Application of section 502(d) requires that a secured claim must be disallowed.  Given that Siemens has yet to file its Proof of Claim and given that the April 17, 2025 claims bar date has not occurred, the Debtor's attempt to invoke section 502(d) is procedurally improper.  Assuming that Siemens had filed its Proof of Claim prior to the filing of the Motion, the Debtor would need to then seek the disallowance of such claim.  None of that has occurred here.

Further, section 502(d) merely decrees that such lien is "void," but it does not specify the procedure for obtaining a determination of being "void."  Rule 7001(b) of the Federal Rules of

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 87645818v1

Bankruptcy Procedure states that an adversary proceeding is required to "determine, the validity, priority, or extent of a lien or other interest in property—except a proceeding under Rule 3012 or Rule 4003(d)" FED. R. BANKR. P. 7001(b).[2]  The cross-reference to Rule 3012 is significant in that Rule 3012 solely allows the court to "determine the amount of a secured claim under § 506(a) . . . ." FED. R. BANKR. P. 3012(a).  It speaks nothing about the ability to avoid a lien under section 505(d).

Thus, "a party in interest that seeks to avoid a lien may be required to bring an adversary proceeding pursuant to Rule 7001 . . . if proof of the relevant claim has not been filed (and the time to file has not expired)" rather than attempting to proceed under section 506(d).  4 COLLIER ON BANKRUPTCY ¶ 506.06 (16th ed. rev. 2025).  While the Ninth Circuit in *HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 744 (9th Cir. 2015), permitted the avoidance of a lien under section 506(d) outside of an adversary proceeding, the Court did note that an adversary proceeding had been filed seeking the precise relief requested under section 506(d).  *Id.* at 497.  The *Blendheim* court found that due process had been satisfied through the creditor's filing of its proof of claim, proper notice was given by the debtor through its claim objections, and the creditor chose not to contest the disallowance of its claim.  *Id.* at 490-91.  Until such time as the claims bar date has passed or the disallowance of a timely filed claim, the Debtor's cannot proceed with their Motion.

Finally, the Debtor's attempt to void Siemens' lien for the to be determined undersecured portion of the claim would result in an impermissible end around section 1111(b),[3] which provides significant rights to an undersecured creditor as explained by the court in *680 Fifth Ave. Assocs.*:

> First, § 1111(b) states that all liens encumbering property of the debtor are treated as recourse, regardless of whether the creditor's lien was recourse or nonrecourse under nonbankruptcy law.  Second, regardless of the terms of the loan and applicable nonbankruptcy law, § 1111(b) allows an undersecured nonrecourse creditor to split its claim into a secured claim equal to the value of the collateral and an unsecured claim for the deficiency.  **Third, § 1111(b)(2) permits an undersecured creditor to elect to have its claim treated as fully secured in a plan that provides for the debtor's retention of the collateral.**

---

[2] Rule 7001(b) was renumbered in 2024 from Rule 7001(2) "as part of the general restyling of the Bankruptcy Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. BANKR. P. 7001 Adv. Comm. Note-2024 Amendment.

[3] Section 1111(b) applies in Subchapter V cases by virtue of section 1181(a) by negative implication.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SIEMENS FINANCIAL SERVICES' OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE**

BN 87645818v1

*680 Fifth Ave. Assocs. v. Mut. Benefit Life Ins. Co. in Rehab. (In re 680 Fifth Ave. Assocs.)*, 156 B.R. 726, 731 (Bankr. S.D.N.Y. 1993) (emphasis added). Thus, "section 1111(b)(2) gives an undersecured lender some ability to control its destiny in a chapter 11 case because it allows the creditor to elect to be treated as fully secured," *Dever v. IRS (In re Dever)*, 164 B.R. 132, 141-42 (Bankr. C.D. Cal. 1994)

Even though the *Dever* court held that lien-stripping under Section 506(d) is available in chapter 11, it recognized that the secured creditor, the IRS in that case, had the right to make an election under section 1111(b) to have its undersecured claim treated as fully secured. *Id.* at 145. Notably, the debtors in Dever promptly commenced and adversary proceeding upon conversion to chapter 11 in order to seek the relief sought under section 506 against the IRS. *Id.* at 133.

Based on the foregoing, the Motion should be denied as premature (i.e., there has been no allowed claim let alone an allowed claim), procedurally improper, and an impermissible end-around Siemens statutory rights under section 1111(b).

**C.     The Debtor's use of the "orderly liquidation value" is not appropriate.**

The Debtor seeks to value the secured claims using an "orderly liquidation value" standard, which is not appropriate in light of the Debtor's intent to confirm a Subchapter V plan and continue as a going concern. The second part of section 506(a) provides that the "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a). The Supreme Court in *Assoc. Comm. Corp. v. Rash*, 520 U.S. 953, 117 S. Ct. 1879 (1997) resolved a circuit split regarding valuation standard to be employed under Section 506(a) and focused on the last sentence of Section 506(a), which states that the value must be determined in light of the purpose of the valuation and disposition of the collateral.

In *Rash*, the debtor proposed a cramdown plan of reorganization and the Fifth Circuit held that the collateral that debtor proposed to retain should be valued at a foreclosure value standard. *Id*. at 956-59, 117 S. Ct. at 1882-84. The *Rash* Court reversed the Fifth Circuit and adopted the replacement value standard advocated by the First, Second, Seventh, Eight and Ninth Circuits. Indeed, the *Rash* Court specifically noted that "our use of the term replacement value is consistent

**SIEMENS FINANCIAL SERVICES' OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER
SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE**

with the Ninth Circuit's understanding of the meaning of fair-market value; by replacement value, we mean the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition." *Id.* at 959, 117 S. Ct. at 1884 (citing *In re Taffi*, 96 F.3d 1190, 1191-92 (9th Cir. 1996) (*en banc*).

The *Taffi* court clearly articulated the basis for determining the value of property that the debtor seeks to retain for purposes of section 506(a). "When a Chapter 11 debtor or a Chapter 13 debtor intends to retain property subject to a lien, the purpose of a valuation under section 506(a) is not to determine the amount the creditor would receive if it hypothetically had to foreclose and sell the collateral." *Taffi*, 96 F.3d at 1192. The *Taffi* court further determined that "[n]either the foreclosure value nor the costs of repossession are to be considered because no foreclosure is intended" and that "the purpose of the valuation is to determine how much the creditor will receive for the debtor's continued possession." *Id.* Critically, the Court noted that "[t]he foreclosure value is not relevant because no foreclosure is intended by the Plan" and "[v]aluation must be accomplished within the actual situation presented." *Id.*

The *Taffi* court concluded that "the value has to be the fair market value of what the debtors are using." *Id.* As a result, it determined that "[t]he fair market value is not 'replacement value' because the House is not being replaced. The fair market value is the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property has been exposed to the market for a reasonable time." *Id.* Finally, the court found that "[b]y agreeing to the Plan and allowing the Taffis to retain their residence, the IRS runs a risk. It is appropriate that it also benefit from the higher valuation." *Id.* at 1192-93.

Here, the Debtor has proposed valuing all of its collateral, including the Siemens collateral, at an "orderly liquidation value" on a collateral by collateral basis. *See* Motion, ECF p. 13 of 69, ln. 19-21. The appraiser defines "orderly liquidation value" as "[a]n opinion of the gross amount, expressed in terms of money, that typically could be realized from a liquidation sale, given a reasonable period of time to find a purchaser (or purchasers), with the seller being compelled to sell on an as-is, where-is basis, as of a specific date." Motion, ECF p. 37 of 69. Yet, the Debtor

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**SIEMENS FINANCIAL SERVICES' OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER
SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE**

"intends to continue operations and reorganize pursuant to a subchapter V plan of reorganization to be filed concurrently with this Motion."  Motion, ECF p. 13 of 69, ln. 7-8.  (Curiously, a review of the Debtor's docket reveals that no subchapter V plan has been filed.)

Given that the Debtor intends to conduct business as a going concern, the liquidation valuation of its assets on a piecemeal basis is not appropriate.  "In an effort to lend greater precision to the relevant terminology, some courts have taken specific issue with use of the term 'liquidation value' to mean 'forced sale value,' or to imply that 'going concern' values are not to be realized." 4 COLLIER ON BANKRUPTCY ¶ 506.03 (16th ed. rev. 2025) (collecting cases).

Thus, putting aside the procedural deficiencies with the Debtor's Motion, the Debtor seeks to use an inappropriate valuation standard for valuing the collateral on a piecemeal, liquidation basis.  Instead, the appropriate valuation standard to apply would be a going concern value.  Once the section 506(a) and 506(d) issues are properly before this Court, a proper evidentiary valuation process can unfold.

## IV.    CONCLUSION

For these reasons, Siemens respectfully requests that the Court deny the Motion either in its entirety or at least to the extent that it relates to Siemens, and grant such other relief as is just and proper.

DATED:  April 8, 2025                          BUCHALTER, A Professional Corporation


By:    */s/ Anthony J. Napolitano*
       ANTHONY J. NAPOLITANO

       Attorneys for lessor and secured creditor
       SIEMENS FINANCIAL SERVICES, INC.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

SIEMENS FINANCIAL SERVICES' OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER
SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE

BN 87645818v1

# EXHIBIT 1

EQUIPMENT LEASE NO.  **2021001720**

Manufacturers Financing Services ("Lessor") hereby leases to the undersigned ("Lessee") the equipment described below ("Equipment") under the terms and conditions contained herein which, together with all riders, schedules, exhibits and amendments hereto, is hereinafter referred to as the ("Lease").

| LESSEE | | VENDOR | |
|---|---|---|---|
| Name: | Spearman Aerospace, Inc. | Name: | Ellison Technologies - Esc |
| dba: | | | See Schedule "A" for additional vendor(s) (if applicable) |
| Address: | 9215 Greenleaf Avenue | Address: | 9912 Pioneer Blvd. |
| | Santa Fe Springs, CA  90670 | | Santa Fe Springs, CA  90670 |
| Telephone: | 714-523-4751 Fax: 714-523-0136 | Telephone: | 562-949-8311  Fax: 562-949-8049 |
| Contact: | Urio Zanetti | Contact: | Ken Bennett |

## EQUIPMENT SCHEDULE

| Quantity | Description | Model No. | Serial No. |
|---|---|---|---|
| 1 | Doosan CNC Vertical Machining Center Equipped with MP Systems AK-VR8-SD high pressure coolant unit and with all standard and together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto. | DVF 5000 | |

The Equipment shall be delivered to and located at: 9215 Greenleaf Avenue , Santa Fe Springs, CA  90670

## PAYMENT SCHEDULE

**PAYMENTS**
Payments shall be made in Sixty-Four consecutive installments throughout the Lease term, commencing on the Acceptance Date of the equipment (the "Term Commencement Date") and the remaining installments are to commence 30 days from the Term Commencement Date and are due the same day of each successive month.  Each Payment shall be in the amount set forth below.

| PAYMENT NO. | PAYMENT AMOUNT |
|---|---|
| #1 | $60,000.00 |
| #2 - #4 | $0.00 |
| #5 - #64 | $4,886.05 |

**Lease Term:**  64  months commencing on the Term Commencement Date.

**Advance Payments:** First Payable upon signing of this lease.

**Documentation Fee:**      $400.00

**Security Deposit:**      $0.00

**Purchase Option:**      $1.00

**Sales/Use Tax:  Payment amount may be increased to include applicable sales/use tax.**

THIS LEASE INCLUDES ALL OF THE TERMS AND CONDITIONS HEREIN WHICH THE PARTIES ACKNOWLEDGE THEY HAVE READ.  THIS LEASE IS NOT BINDING ON LESSOR PARTY UNTIL EXECUTED BY LESSOR.  This Lease constitutes the entire agreement between the parties with respect to the subject matter hereof.  There are no other representations, warranties or agreements except as set forth herein (including, without limitation, rights to purchase any of the Equipment).  All amendments and waivers shall be written and signed by the parties hereto.  The term "Lessee" as used herein shall mean and include any and all Lessees who sign hereunder, each of whom shall be jointly and severally bound thereby.  This Lease will not be binding on Lessor until accepted and executed by Lessor.

LESSEE INITIALS: X

AGREED AND ACCEPTED BY:
Manufacturers Financing Services

By: _____
Darryl Schoen

Title:    President

Date:    JUL 08 2021

Dated as of:    June 22, 2021
Lessee:    Spearman Aerospace, Inc.

By:    X
Title:    President
Attest:    X
(If Corporation, Corporate Secretary)

**MFS  MANUFACTURERS FINANCING SERVICES**

10370 Slusher Drive, Suite 10
Santa Fe Springs, CA 90670

Exhibit 1, Page 11


**MANUFACTURERS FINANCING SERVICES**

## TERMS AND CONDITIONS

### 1. DELIVERY AND ACCEPTANCE OF EQUIPMENT
The Equipment is to be delivered and installed at Lessee's expense at the location specified on the face of this Lease and shall be deemed to have been accepted by Lessee for all purposes under this Lease upon **Lessor's** receipt of the Acceptance Certificate hereto executed by Lessee. Lessor shall not be liable or responsible for any failure or delay in the delivery of the Equipment to Lessee for whatever reason.

### 2. TERM AND PAYMENTS
The Lease Term shall commence on the Term Commencement Date and shall continue for the number of months set forth on the face hereof beyond the Term Commencement Date. Payments (**"Payments"**) shall commence on the Term Commencement Date and shall be due and payable as set forth on the face hereof. The Lease Term - shall automatically extend beyond its original expiration date, on the same terms and conditions (including payments) unless ninety (90) days prior to the expiration of the Lease Term, Lessee gives **Lessor written notice of Lessee's election to extend the Lease Term, purchase** the Equipment or return the Equipment under the terms hereof. Lessee shall pay an administrative late charge of 5% of the amount of any overdue payment plus interest on such delinquent payment of 1 1/2% per month or the maximum amount permitted by law, whichever is lower. All payments to be made to Lessor shall be made to Lessor at the address shown on the face hereof or at such other place as Lessor shall specify in writing.

If a Fair Market Value Purchase Option is indicated on the face hereof, then so long as no Event of Default has occurred and is continuing hereunder and upon at least ninety (90) days prior written notice to Lessor, Lessee shall have the option at the expiration of the initial Lease Term of this Lease to: 1) purchase all, but not less than all, of the Equipment for an amount equal to the Fair Market Value of the Equipment (plus any taxes applicable at the time of purchase) on the date of the expiration of the initial Lease Term (the **"Purchase Date**) or, 2) to extend the Lease Term covering all, but not less than all, of the Equipment for a mutually agreed upon period. This Lease shall continue in effect following said extended period until terminated by either party upon not less than ninety (90) days prior written notice. Title to the Equipment shall automatically pass to Lessee on the Purchase Date, provided Lessee had paid the full purchase price. The Fair Market (Rental) Value shall be determined on the basis of and shall be aggregate amount which would be **obtainable at the expiration of the initial Lease Term in an arm's length** transaction between an informed and willing buyer/user (Lessee) and an informed and willing seller (Lessor) under no compulsion to sell.

**The parties agree that the Lease is a "Finance Lease" as defined in Section 2** A of the Uniform Commercial Code ("UCC"). The Lessee may contact the manufacturer of the Equipment (Manufacturer) for a copy of or a description of any rights the Lessee may have arising from a purchase order or supply contract. This Lease cannot be cancelled or terminated by Lessee except as expressly provided herein.

### 3. TAXES AND OTHER CHARGES
Lessee shall pay when due, and defend and indemnify Lessor against liability for, all fees, charges, assessments, and taxes of any kind whatsoever (including any related interest or penalties) now or hereafter imposed by any governmental entity upon the Lease or the Equipment, or with respect to the manufacturing, ordering, shipment, purchase, sale ownership, delivery, leasing, operation, possession, use, return, or other disposition thereof or the rental hereunder (other than taxes on or measured solely by the net income of a Lessor).

If a Fair Market Value purchase option is indicated on the face hereof, Lessor shall be entitled to claim Tax Benefits (hereinafter defined), then, in the event Lessor shall not be entitled, for any reason, to all or any portion of the Tax Benefits (a **"Loss"), and after 30 days writ**ten notice from Lessor that a Loss has occurred, Lessee shall pay to Lessor a lump sum amount as stated in the **notice which, in Lessor's reasonable opinion, will cause Lessor's after-ta**x economic yield and overall net after tax cash flows to be maintained at the

same level as though the Loss had not occurred. As used in this Section, "Tax Benefits" means any deduction under Section 168 of the Internal Revenue Code of 1986 and interest deductions with respect to any indebtedness incurred by Lessor with respect to acquisition of Equipment by Lessor, and assuming an effective corporate tax rate on Lessor of 34%.

### 4. INDEMNITY
Lessee shall bear all risk of loss with respect to the Equipment and indemnify and hold harmless, and defend Lessor against (a) any liabilities and expenses whatsoever (including legal expenses of every kind and nature) arising out of the manufacturing, ordering, purchase, shipment, acceptance or rejection, ownership, titling, registration, leasing, possession, operation, use, return, or other disposition of the Equipment, including patent or latent defects, any claims based on absolute tort liability, warranty or patent, trademark or copyright infringement; and (b) any obligation or liability to the Manufacturer of the Equipment arising under any purchase orders issued by or assigned to Lessor.

The covenants and indemnities contained in this Section 4 and Section 3 shall survive the termination of this Lease and shall be payable by Lessee within 7 days of **Lessor's** written demand thereof.

Lessor shall have the right to recover from Lessee any expenses paid or incurred by Lessor in connection with the repossession, transporting, holding, insuring, repairing, refurbishing and subsequent sale, lease or other disposition of the Equipment including reasonable attorneys fees and legal expenses.

### 5. POSSESSION; INSPECTION; PERSONAL PROPERTY
Provided no Event of Default has occurred, Lessee shall have quiet possession of the Equipment during the Lease Term. Lessor may require Lessee at **Lessee's expen**se, to affix plates or markings on the Equipment indicating Lessor is the owner. Lessor may enter the Equipment location at reasonable times upon reasonable notice to inspect the Equipment or show it to prospective purchasers or lessees. The Equipment shall remain personal property even though attached or affixed to real property.

### 6. DISCLAIMER OF WARRANTIES; LIMITATION OF LIABILITY
LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, AS TO THE **EQUIPMENT'S MERCHANTABILITY**, FITNESS FOR A PARTICULAR PURPOSE, DESIGN, CONDITION, CAPACITY, DURABILITY, QUALITY OF MATERIAL OR WORKMANSHIP, CONFORMITY WITH ANY DESCRIPTION OR PATENT INFRINGEMENT, AND HEREBY DISCLAIMS ANY SUCH WARRANTY. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE EQUIPMENT. DEFECTS THEREIN OR FAILURES IN THE OPERATION THEREOF OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES. LESSEE HAS MADE THE SELECTION OF EACH ITEM OF EQUIPMENT BASED ON ITS OWN JUDGEMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSEE LEASES THE EQUIPMENT "AS IS."

### 7. REPRESENTATIONS, WARRANTIES AND COVENANTS
Lessee represents, warrants and covenants with Lessor that: (a) Lessee has the form of business organization indicated on the face hereof, and is duly organized, existing, in good standing and qualified to do business wherever necessary to carry on its present business and operations and to own its property; (b) this Lease has been duly executed and authorized, requires no further shareholder or partner approval of, or the giving notice to, any governmental authority and does not to contravene any law, regulation or other governmental order, any certificate or articles of incorporation or by-laws or partnership certificate or agreement, or any agreement, indenture or other instrument to which Lessee is a party or by which it may be bound and constitutes a legal, valid and binding obligation of Lease enforceable in accordance with its terms; (c) Lessee shall not allow any lien, encumbrance or

Initials: X



security interest on or with respect to the Equipment or Lease (except by, through or under Lessor) and shall not assign, sell, sublease, or otherwise dispose of any right or interest in this Lease or the Equipment without the prior written consent of Lessor; (d) the Equipment will be used solely in the conduct of Lessee's business and will remain in the location shown on the face hereof. If Lessee is a corporation, a Secretary or Assistant Secretary, by attesting to the execution by the Lessee on the face hereof, certifies that the officer signing on behalf of the Lessee has been duly authorized and empowered to execute this Lease on behalf of the Lessee by appropriate vote of Lessee's Board of Directors or under Lessee's by laws, that such officer did so execute this Lease, and that this Lease has been duly authorized and approved by or under such vote or by-laws.

### 8. DEFAULT

Lessee shall be in default of this Lease upon: (a) failure to pay rent within 10 days of the due date thereof; or (b) failure to perform or observe any covenant, condition or agreement of this Lease where such failure continues for 10 business days after notice thereof to Lessee, or default under any note, security agreement, equipment lease or title retention or conditional sales agreement beyond any period of grace provided with respect thereto whether with Lessor or any third party if the effect of such default is to cause or permit the holder of such indebtedness to cause such indebtedness to become due prior to its stated maturity; or (c) any representation or warranty made by Lessee to Lessor shall prove to be incorrect or the condition of Lessee's affairs shall change so as in the opinion of Lessor to impair materially Lessor's interest or increase materially Lessor's credit risk; or (d) Lessee shall generally not pay its debts as they become due; file or have filed against it a petition under any bankruptcy or insolvency law of any jurisdiction, make an assignment for the benefit of its creditors; consent to the appointment of a custodian, receiver, trustee or other officer with similar powers of itself or any substantial part of its property; be adjudicated insolvent or be liquidated; or take any action for the purpose of the foregoing; or (e) Lessee or any Guarantor of Lessee is declared legally deceased (if sole proprietor or general partner) or if Lessee shall terminate its existence by merger, consolidation, sale of substantially all of its assets or otherwise.

### 9. REMEDIES

Upon default, Lessor may exercise any of the following remedies with respect to any or all Equipment (which for purposes of this Section 9 includes all other personal property Lessee at any time leases or has leased from Lessor or that secures or has secured any indebtedness of Lessee to Lessor); (a) enter the Equipment location and take immediate possession of and remove the same by summary proceedings or otherwise, all without liability to Lessor for or by reason of damage to property or such entry or taking possession; (b) sell any or all of the Equipment at public or private sale, re-lease, or otherwise dispose of the Equipment; (c) remedy such default for the account of and at the expense of Lessee; (d) terminate this Lease immediately by written notice to Lessee, whereupon Lessee shall without further demand but at Lessor's option, as liquidated damages for loss of a gain and not as a penalty, forthwith pay Lessor an amount equal to all accrued and unpaid Payments plus the Present Value of all future Payments and Lessor's original anticipated residual, all discounted using a rate of three percent (3%) per annum plus all other amounts then payable to Lessor hereunder, and (e) exercise any other right or remedy at law, or in equity or bankruptcy, including specific performance or damages for the breach hereof, including reasonable attorney's fees and court costs.

Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity. No express or implied waiver of any default shall constitute a waiver of any Lessor's other rights.

### 10. ADDITIONAL SECURITY

In order to more fully secure its obligations to Lessor hereunder, Lessee hereby grants to Lessor, a security interest in any and all such personal property as Lessee from time to time leases from Lessor or that secures any

indebtedness of Lessee to Lessor.  Lessor may apply at any time Lessee's Security Deposit to Lessee's obligations hereunder whereupon Lessee shall immediately reimburse Lessor for the amount of the Security Deposits so applied.

### 11. NOTICES

Any notices and demands required or permitted under this Lease shall be in writing by registered or certified mail, return receipt requested, and shall become effective when deposited in the United States mail with postage prepaid at the address herein above set forth, or to such other address as the party to receive notice hereafter designates by such written notice.

### 12. USE; REPAIRS; LOSS AND DAMAGE

Lessee will operate the Equipment in accordance with any applicable Manufacturer's manuals by competent and duly qualified personnel only, in accordance with applicable requirements of law, if any, and for business purposes only.  Lessee, at its own cost and expense, shall keep the Equipment in good repair, condition and working order.  If any item of Equipment shall become lost, stolen, destroyed, damaged beyond repair or rendered permanently unfit for use for any reason, or in the event of any condemnation, confiscation, theft or seizure or requisition of title to or use of such item, Lessee shall promptly pay Lessor an amount equal to the greater of (i) the full replacement value of such item or (ii) the aggregate of all rental payments then remaining unpaid plus the amount of any purchase option or obligation with respect to such item.

### 13. INSURANCE

Lessee shall procure and maintain during the entire term of this Lease, at Lessee's expense, such insurance coverages in such amounts and with such responsible insurers, all as satisfactory to Lessor including: (a) Comprehensive General Liability Insurance with minimum limits of $1,000,000 each occurrence with Lessor named as additional insured; and (b) all Risk Physical Damage Insurance in an amount not less than the greater of (i) the full replacement value of such item or (ii) the aggregate of all rental payments then remaining plus the amount of any purchase option or obligation with respect to such item. Lessor will be named as loss payee. Lessee shall waive Lessee's rights and its insurance carrier's right of subrogation against Lessor for any and all loss or damage. All policies shall contain a clause requiring the insurer to furnish Lessor with at least 30 days prior written notice of any material change, cancellation, or non-renewal of coverage. Upon request by Lessor, Lessee shall furnish Lessor with a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverages are in effect.

### 14. GUARANTY

In order to induce Lessor to enter into this Lease, each guarantor executing on the face hereof hereby unconditionally and absolutely guarantees payment to Lessor of all liabilities of Lessee to Lessor of whatever nature, whether now existing or hereinafter incurred, including reasonable attorney's fees and costs of collection with respect to the enforcement of any such liabilities or this guaranty.  This is a guaranty of payment and not of collection and the liability of each guarantor shall not be affected by any invalidity in or unenforceability of such liabilities, change, alteration, renewal, extension, continuation, compromise, waiver or other modification of such liabilities, any of which may be done without notice to or the consent of any guarantor. Each guarantor waives notice of acceptance of this guaranty and of extensions of credit by Lessor to Lessee, presentment and demand for payment of any of the liabilities of the Lessee, protest and notice of dishonor of default to such guarantor of any other party with respect to such liabilities and all other notices, demands, set-offs, counterclaims and defenses of any nature whatsoever.  This guaranty may be enforced by Lessor without first proceeding against the Lessee or any other party or against any security which may be available with respect to the Lessee's liabilities.  In the event of any default by the Lessee on any obligation owed to the Lessor, whether under this Lease or otherwise, each guarantor agrees not to demand, take steps for the collection of, or assign, transfer or otherwise dispose of any indebtedness



owed by the Lessee to such guarantor. Lessor shall have the sole right to demand, receive, sue for, collect, receipt for and give full discharge for such indebtedness until all of the liabilities of the Lessee to the Lessor have been satisfied in full. If guarantor is a corporation, guarantor certifies that the officer signing on behalf of the guarantor has been duly authorized and empowered to execute and deliver to Lessor this guaranty and that the guaranty has been duly authorized and approved by and under appropriate vote of the guarantor's Board of Directors or its by-laws. No guarantor shall be released or discharged, either in whole or in part, by Lessor's failure or delay to perfect or continue the perfection of any security interest in any property which secures the liabilities of Lessee to Lessor or to protect the property covered by such security interest. Each guarantor waives any duty on Lessor's part (should such duty exist) to disclose to any guarantor any fact or thing related to the business operations or conditions (financial or otherwise) of the Lessee or its property whether now or hereafter known by Lessor.

### 15. FURTHER ASSURANCES
Lessee shall promptly execute and deliver to Lessor such further documents and take such further actions Lessor may require in order to more effectively carry out the intent and purpose of this Lease. Lessee shall provide to Lessor within 120 days after the close of each Lessee's fiscal year, and upon Lessor's request, within 45 days of the end of each quarter of Lessee's fiscal year, a copy of its financial statements prepared in accordance with generally accepted accounting principles, it being understood that all such material shall be held in confidence by Lessor. Lessee hereby appoints Lessor, with full power of substitution, as its agent and attorney-in-fact, which is irrevocable and coupled with an interest, to execute any such financing statements under the Uniform Commercial Code and any appropriate amendments thereto on Lessee's behalf which Lessor deems necessary to protect Lessor's interest in the Equipment. Lessor may file a duplicate or a photocopy of this Lease as a financing statement. In no event shall Lessee lease or otherwise finance upgrades or additions to Equipment with any party other than Lessor without prior written consent of Lessor.

### 16. ASSIGNMENT
This Lease and all rights of Lessor hereunder shall be assignable by Lessor absolutely or as security, without notice to Lessee, subject to the rights of Lessee hereunder. The term Lessor shall mean, as the case may be, any assignee of Lessor. Any such assignment shall not relieve Lessor of its obligation hereunder unless specifically assumed by assignee, and Lessee agrees it shall pay such assignee without any defense, rights of set-off, or counterclaims and shall not hold or attempt to hold such assignee liable for any Lessor's obligations hereunder. LESSEE MAY NOT SUBLEASE NOR ASSIGN ITS RIGHTS OR OBLIGATIONS HEREUNDER WITHOUT LESSOR'S PRIOR WRITTEN CONSENT.

### 17. LESSEE'S OBLIGATIONS UNCONDITIONAL
This Lease is a net lease and Lessee shall not be entitled to any abatement of any amount payable hereunder and such payments will be made absolutely and unconditionally without set-off, counterclaim, recoupment, defense or other right which Lessee may have against any person for any reason whatsoever.

### 18. RETURN OF EQUIPMENT
Upon expiration of the Lease Term, if the Lessee chooses not to promptly exercise the Purchase Option, Lessee, at its own expense, shall immediately return the Equipment in the same condition as when delivered to Lessee, ordinary wear and tear excepted, to such location as Lessor shall designate, free and clear of all liens, encumbrances and rights of others pursuant to Manufacturer's de-installation, packing and shipping specification. Upon return of Equipment, Lessee shall provide Lessor with a certificate from the Manufacturer or qualified maintenance organization acceptable to Lessor stating that the Equipment has been inspected, tested, and qualifies for their regular maintenance contract and is in the same condition as at the Acceptance Date (ordinary wear and tear resulting from proper use excepted).

In the event that Lessee does not provide such a certificate, Lessor shall have the right to have the Equipment inspected and tested and Lessee shall pay Lessor the cost of such inspection and testing, and any repairs necessary for the Manufacturer or maintenance organization to accept the Equipment under a maintenance contract at it's then standard rates. Lessee shall remain obligated to pay Rent on the unreturned and uncertified Equipment until Lessor has been provided with such certificate or such acceptance. The risk of loss and obligation to insure the Equipment shall remain with the Lessee until the returned Equipment is accepted by Lessor. In the event Lessee shall not surrender up and redeliver the Equipment to Lessor as herein required, the term of this Lease with respect to such Equipment shall continue on a month-to-month basis terminable by Lessor upon 30 days advance written notice as a rent per month equal to the highest monthly rent for the equipment payable during the Lease Term.

### 19. MISCELLANEOUS
Any provision of the Lease which is unenforceable shall not affect the enforceability of the remaining provisions hereof. A waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given. To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon Lessee by Section 2A of the UCC. This Lease shall in all aspects be governed by and construed in accordance with the law of the State of California, including all matters of construction, validity, and performance.

Initials: X

# EXHIBIT 2

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

**Lien Solutions**
Representation of filing

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| Name: Wolters Kluwer Lien Solutions Phone: 800-331-3282 Fax: 818-662-4141 |

**This filing is Completed**
File Number : U210059649935
File Date   : 24-Jun-2021

B. E-MAIL CONTACT AT FILER (optional)
uccfilingreturn@wolterskluwer.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)    15127 -

Lien Solutions

81150641

P.O. Box 29071
Glendale, CA 91209-9071

CALI

File with: Secretary of State, CA

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Spearman Aerospace, Inc. | | | | |
| **OR** 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 9215 Greenleaf Avenue | Santa Fe Springs | CA | 90670 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| **OR** 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Manufacturers Financing Services | | | | |
| **OR** 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 10370 Slusher Drive, Suite 10 | Santa Fe Springs | CA | 90670 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
One (1) Doosan CNC Vertical Machining Center, Model No. DVF 5000
Equipped with MP Systems AK-VR8-SD high pressure coolant unit and with all standard and together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☒ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
81150641    2021001720

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

Exhibit 2, Page 10

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# EXHIBIT 3



# NOTICE OF ASSIGNMENT

Mr. Urio Zanetti
Spearman Aerospace, Inc.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670


RE:     Equipment Lease Agreement# **2021001720,** dated **June 22, 2021,**
        **(the "Agreement")**

Dear Mr. Zanetti,

Please be advised that we have sold and assigned the above-referenced Agreement and the
equipment described in the Agreement (the "Equipment") to Siemens Financial Services,
Inc. ("Siemens").

All future payments under the Agreement should be made directly to Siemens at the
following address or at such other address as may be provided to you by Siemens:

**Siemens Financial Services, Inc.**
**P.O. Box 2083**
**Carol Stream, IL 60132-2083**


We have not assigned to Siemens nor have they assumed any of our warranties or
obligations under the Agreement or with respect to the Equipment.  Any communication with
respect to the Agreement or Equipment should be directed to Siemens other than matters
relating to performance of the Equipment or our performance under the Agreement.


Very truly yours,
Manufacturers Financing Services
A DIVISON OF ELLISON TECHNOLOGIES, INC.

BY : _____
        Darryl Schoen, President

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
    BUCHALTER, 1000 Wilshire Blvd., Suite 1500, Los Angeles, CA  90017

A true and correct copy of the foregoing document entitled (*specify*): **SIEMENS FINANCIAL SERVICES' OPPOSITION TO THE DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE AND EXTINGUISHING LIENS IN EXCESS OF SAID VALUE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **04/08/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Karen L Belair**    kbelair@zwickerpc.com
- **David A Berkley**    david.berkley@wbd-us.com, mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
- **M Douglas Flahaut**    df@echoparklegal.com
- **Robert Paul Goe (TR)**    bktrustee@goeforlaw.com,
    kwareh@goeforlaw.com;bkadmin@goeforlaw.com;C187@ecfcbis.com;kmurphy@goeforlaw.com;rgoe@goeforlaw.com
- **Arnold L Graff**    agraff@wrightlegal.net, nvbkfiling@wrightlegal.net;jpowell@wrightlegal.net
- **Noreen A Madoyan**    Noreen.Madoyan@usdoj.gov
- **Sean A OKeefe**    sokeefe@okeefelc.com, seanaokeefe@msn.com
- **David L Oberg**    david@oberglawapc.com
- **Madison B Oberg**    madison@oberglawapc.com
- **Thomas J Polis**    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- **Amitkumar Sharma**    amit.sharma@aisinfo.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
- **Dylan J Yamamoto**    dylan@echoparklegal.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) , **04/08/025** the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| <u>**Manual Notice Party**</u>: | <u>Presiding Judge</u>: |
| James S Livermon | Hon. Deborah J. Saltzman |
| Womble Bond Dickinson (US) LLP | United States Bankruptcy Court |
| 555 Fayetteville St Suite 1100 | Central District of California |
| Raleigh, NC 27601 | Edward R. Roybal Federal Building and Courthouse |
| | 255 E. Temple Street, Suite 1634 / Courtroom 1639 |
| | Los Angeles, CA 90012 |

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 8, 2025 | Margie Arias | /s/ Margie Arias |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.