VALERIE BANTNER PEO (SBN: 260430)
    vbantnerpeo@buchalter.com
ARLEN P. MORADI (SBN: 353956)
    amoradi@buchalter.com
BUCHALTER, A Professional Corporation
425 Market St., Suite 2900
San Francisco, CA  94105
Telephone: (415) 227-3533

Attorneys for creditor
MIDLAND STATES BANK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA (LOS ANGELES DIVISION)

| | |
|---|---|
| In re | Case No. 2:25-bk-10917-DS |
| SPEARMAN AEROSPACE, INC., | Chapter 11 (Subchapter V) |
| Debtor. | **MIDLAND STATES BANK'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING THE DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE AND EXTINGUISHING LIENS IN EXCESS OF SAID VALUE** |

**Hearing:**
Date:      April 22, 2025
Time:      1:00 p.m.
Place:     United States Bankruptcy Court
           Edward Royal Federal Building
           Courtroom 1639
           255 East Temple Street
           Los Angeles, CA 90012

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1

BN 88305022v2

**TO THE HONORABLE DEBORAH J. SALTZMAN, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, ITS COUNSEL, AND ALL INTERESTED PARTIES:**

Midland States Bank ("Midland") respectfully submits this limited objection and reservation of rights in response to the *Motion for Order Setting Property Value for Purposes of Section 506(a) of the Bankruptcy Code and Extinguishing Liens in Excess of Said Value* [Docket No. 90] (the "Motion") filed by Spearman Aerospace, Inc., debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor") as follows:

**I.    INTRODUCTION**

By the Motion, the Debtor seeks to extinguish "all purported liens" of Midland (and other creditors) because its liens are either (i) junior in priority to Pacific Premier Bank's secured claim and related blanket lien, or (ii) "over something that was not an asset of the Debtor's estate as of the February 6, 2025 petition date." As discussed below, the relief sought by the Motion is inappropriate with respect to Midland's interest in its Equipment (defined below) and premature with respect to Midland's Judgment Lien (defined below).

**II.    STATEMENT OF FACTS**

**A.    The Debtor's Agreement with Midland and the Equipment.**

On or about July 11, 2019, Debtor and Midland's predecessor, Manufacturers Finance Services ("Manufacturers"), entered into a written Lease Agreement No. 2019001580 (the "Agreement") whereby Manufacturers agreed to purchase and then lease to Debtor a Doosan NHP 4000 Horizontal Machining Center (the "Equipment").[1] Manufacturers' security interest in the Equipment was perfected by the filing of a UCC-1 Financing Statement with the California Secretary of State on July 10, 2019, bearing File No. 197722435757.

Thereafter, Manufacturers assigned all its right, title and interest in the Agreement and the Equipment to Midland pursuant to an executed Notice of Assignment. For the convenience of the

---

[1] Midland expressly reserves all rights with respect to the character of the Agreement as either a lease or a secured financing arrangement.

**MIDLAND STATES BANK'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 88305022v2

1  Court, copies of the Agreement, UCC-1 Financing Statement, and Notice of Assignment are

2  attached hereto as Exhibits 1, 2, and 3, respectively.[2]

3  Debtor defaulted under the Agreement by, among other things, failing to make payments

4  when due thereunder.

5  **B.    The State Court Action and Judgment Lien.**

6  On June 25, 2024, Midland filed a Complaint in the Superior Court of the State of

7  California, County of Los Angeles, Case No. 24STCV15866, asserting causes of action against the

8  Debtor and others for breach of the Agreement, recovery of Equipment, conversion, and breach of

9  guaranty.

10  On September 9, 2024, the Superior Court of California entered its Judgment in favor of

11  Midland and against the Debtor for $327,262.73. Midland thereafter caused a Notice of Judgment

12  Lien to be filed with the California Secretary of State, which was assigned File No.

13  U240071087625 (the "Judgment Lien"). Pursuant to the Judgment Lien, "[a]ll property subject to

14  enforcement of a Money Judgment against the Judgment Debtor to which a Judgment Lien on

15  personal property may attach under Section 697.530 of the Code of Civil Procedure is subject to

16  this Judgment Lien." A copy of the Judgment Lien is attached hereto as Exhibit 4.

17  The Judgment of the Superior Court further ordered that Midland recover the Equipment

18  from the Debtor's principals. Subsequent to the entry of Judgment but prior to the Petition Date,

19  the Debtor turned over possession of the Equipment to Midland.

20  **C.    The Debtor's Chapter 11 Case.**

21  On February 6, 2025, the Debtor filed its voluntary, chapter 11 (Subchapter V) bankruptcy

22  petition commencing the above-captioned bankruptcy case. *See* Docket No. 1.

23  On February 19, 2025, the Debtor filed its case commencement documents, which included

24  its Summary of Assets and Liabilities for Non-Individual, Schedules A/B, D, E/F, G, and H, and

25  Statement of Financial Affairs for Non-Individual Filing for Bankruptcy. *See* Docket No. 44.

26

27  [2] By the time of the hearing on the Debtor's Motion, Midland will have filed its proof of claim, including authenticated copies of all exhibits referenced in this Objection.

28

**MIDLAND STATES BANK'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 88305022v2

Schedule D identifies Midland as a secured creditor with an "unliquidated" and "disputed" claim in an "unknown" amount. *See id.*, ECF p. 27 of 73 at Creditor No. 2.13. The Equipment is not listed as property of the estate on Schedule A/B.

The deadline for filing proofs of claim is April 17, 2025. *See* Docket No. 27.

**D.    The Relief Sought by the Debtor's Valuation Motion.**

On April 1, 2025, the Debtor filed the Motion. The Motion seeks a judicial determination of the value of secured creditors' collateral for purposes of determining the extent of the secured claims, for purposes of confirming a chapter 11, subchapter v plan.

Through a single sentence in the introductory paragraph, the Debtor also seeks to extinguish all liens held by Midland and similarly situated creditors (defined as the "Wholly Underwater Creditors") because the liens are either (i) junior in priority to Pacific Premier Bank's allegedly senior secured claim and related blanket lien, or (ii) "over something that was not an asset of the Debtor's estate as of the February 6, 2025 petition date." *See* Motion, p. 4, lns. 12-23. The Motion provides no specific information regarding the liens held by the Wholly Underwater Creditors or the assets by which they are purportedly secured. Nevertheless, the Debtor seeks extinguishment of all such liens, before the proof of claim bar date has passed.

**III.    LEGAL ARGUMENT**

**A.    The Debtor's Attempt to Extinguish Midland's Interest in the Equipment is Inappropriate.**

Without citing any authority in support thereof, the Debtor, by the Motion, appears to request that the Court extinguish Midland's perfected purchase money security interest in the Equipment. Pursuant to California Commercial Code section 9324, "a perfected purchase money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods." In light of Midland's duly-perfected UCC-1 Financing Statement, Midland's lien on the Equipment has priority over all other creditors that may claim an interest in the Equipment, including any prior "all asset" lienholder.

---

4

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 88305022v2

Indeed, Midland took possession of the Equipment prior to the Petition Date and, by excluding the Equipment from its Schedules, Debtor appears to take the position that the Equipment is not property of this Bankruptcy Estate. Midland agrees the Equipment is not property of this Estate – but that is not grounds to extinguish Midland's lien. Only after Midland has sold the Equipment and used the proceeds to pay down the outstanding balance owed under the Agreement should its lien be extinguished. *See* Cal. Civ. Code § 2910 ("The sale of any property on which there is a lien, in satisfaction of the claim secured thereby, or in case of personal property, its wrongful conversion by the person holding the lien, extinguishes the lien thereon."). The attempt by the Motion to impair Midland's right to liquidate the Equipment by "extinguishing" its lien is inappropriate.

### B.    The Debtor's Attempt to Extinguish Midland's Judgment Lien is Premature.

Though the Motion fails to explicitly state which of Midland's liens the Debtor seeks to extinguish (and on what basis such extinguishment is sought), the Debtor appears to be attempting to extinguish Midland's Judgment Lien on account of its allegedly junior position to Pacific Premier Bank's secured claim and related blanket lien. Again, the Debtor fails to cite any authority in support of its position other than section 506 of the Bankruptcy Code.

Given the Debtor's listing of Midland's secured claim as "unliquidated" and "disputed" and in an "unknown" amount in its Schedule D, Midland must file a proof of claim to be considered a creditor pursuant to Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 3003(c)(2). Midland intends to timely file a proof of claim on or before the April 17, 2025 deadline. Should the Debtor wish to object to Midland's timely filed proof of claim, or to the extent or validity of any liens asserted therein, Debtor may do so using the procedures set forth by the Bankruptcy Rules. Alternatively, the Bankruptcy Code sets forth the bases upon which the Debtor may seek to avoid Midland's Judgment Lien, if that is what it wishes to do. However, Debtor has foregone any such process and instead seeks to circumvent procedure by requesting the extinguishment of Midland's Judgment Lien on the basis that it is purportedly "out of the money." Unless and until the Debtor

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**MIDLAND STATES BANK'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE**

BN 88305022v2

1  seeks avoidance of the Judgment Lien using the appropriate procedure and process, Midland objects

2  to the extinguishment of its Judgment Lien.

3  **IV.    CONCLUSION**

4  For these reasons, Midland respectfully requests that the Court deny the Motion either in its

5  entirety or at least to the extent that it relates to Midland, and grant such other relief as is just and

6  proper.

7  DATED:  April 8, 2025                    BUCHALTER, A Professional Corporation

8

9                                  By:   /s/ Arlen P. Moradi
                                        ARLEN P. MORADI
10
                                      Attorneys for creditor
11                                     MIDLAND STATES BANK

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MIDLAND STATES BANK'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE
DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION
506(a) OF THE BANKRUPTCY CODE

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 88305022v2

# EXHIBIT 1

EQUIPMENT LEASE NO. <u>2019001580</u>

Manufacturers Financing Services ("Lessor") hereby leases to the undersigned ("Lessee") the equipment described below ("Equipment") under the terms and conditions contained herein which, together with all riders, schedules, exhibits and amendments hereto, is hereinafter referred to as the ("Lease").

| LESSEE | | VENDOR | |
|---|---|---|---|
| Name: | Spearman Aerospace, Inc. | Name: | Ellison Technologies - Esc |
| dba: | | | See Schedule "A" for additional vendor(s) (if applicable) |
| Address: | 9215 Greenleaf Avenue | Address: | 9912 Pioneer Blvd. |
| | Santa Fe Springs, CA  90670 | | Santa Fe Springs, CA  90670 |
| Telephone: | 714-523-4751 Fax: 714-523-0136 | Telephone: | 562-949-8311   Fax: 562-949-8049 |
| Contact: | Urio Zanetti | Contact: | Ken Bennett |

## EQUIPMENT SCHEDULE

| Quantity | Description | Model No. | Serial No. |
|---|---|---|---|
| 1 | Doosan Horizontal Machining Center Equipped with MP Systems Coolant Unit, Stackable Chiller, MP Systems Mist Collector, Renishaw RMP60 Spindle Probe, LNS \Turbo MF2, rear discharge, filtering Chip Conveyor, Tooling, Workholding, and equipped with all standard and together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto. | NHP 4000 | |

The Equipment shall be delivered to and located at: 9215 Greenleaf Avenue , Santa Fe Springs, CA  90670

## PAYMENT SCHEDULE

**PAYMENTS**

Payments shall be made in <u>Seventy-Two</u> consecutive installments throughout the Lease term, commencing on the Acceptance Date of the equipment (the "Term Commencement Date") and the remaining installments are to commence 30 days from the Term Commencement Date and are due the same day of each successive month.  Each Payment shall be in the amount set forth below.

| PAYMENT NO. | PAYMENT AMOUNT |
|---|---|
| #1 | $7,774.12 (Plus Use Tax) |
| #2 - #4 | $0.00 (Plus Use Tax) |
| #5 - #72 | $7,774.12 (Plus Use Tax) |

Lease Term:  <u>72</u> months commencing on the Term Commencement Date.

Advance Payments:  <u>First and Last</u>  Payable upon signing of this lease.

Documentation Fee:        $400.00

Security Deposit:        $0.00

Purchase Option:        $101.00

Sales/Use Tax:  Payment amount may be increased to include applicable sales/use tax.

THIS LEASE INCLUDES ALL OF THE TERMS AND CONDITIONS HEREIN WHICH THE PARTIES ACKNOWLEDGE THEY HAVE READ.  THIS LEASE IS NOT BINDING ON LESSOR PARTY UNTIL EXECUTED BY LESSOR.  This Lease constitutes the entire agreement between the parties with respect to the subject matter hereof.  There are no other representations, warranties or agreements except as set forth herein (including, without limitation, rights to purchase any of the Equipment).  All amendments and waivers shall be written and signed by the parties hereto.  The term "Lessee" as used herein shall mean and include any and all Lessees who sign hereunder, each of whom shall be jointly and severally bound thereby.  This Lease will not be binding on Lessor until accepted and executed by Lessor.

LESSEE INITIALS: X _____

AGREED AND ACCEPTED BY:
Manufacturers Financing Services

By: _____

Darryl Schoen

Title:    President

Date:    July 11, 2019

**MFS** *MANUFACTURERS FINANCING SERVICES*

10370 Slusher Drive, Suite 10
Santa Fe Springs, CA 90670

Dated as of:    July 03, 2019

Lessee:    Spearman Aerospace, Inc.

By:    x  URIO ZANETTI _____

Title:    President

Attest:    X  URIO ZANETTI _____
        (If Corporation, Corporate Secretary)

Guarantor:    Urio Zanetti

By:    X _____

Title:    Individual

Attest:    X _____
        (Witness)



**MFS** MANUFACTURERS FINANCING SERVICES

## TERMS AND CONDITIONS

**1. DELIVERY AND ACCEPTANCE OF EQUIPMENT**
The Equipment is to be delivered and installed at Lessee's expense at the location specified on the face of this Lease and shall be deemed to have been accepted by Lessee for all purposes under this Lease upon Lessor's receipt of the Acceptance Certificate hereto executed by Lessee. Lessor shall not be liable or responsible for any failure or delay in the delivery of the Equipment to Lessee for whatever reason.

**2. TERM AND PAYMENTS**
The Lease Term shall commence on the Term Commencement Date and shall continue for the number of months set forth on the face hereof beyond the Term Commencement Date. Payments ("Payments") shall commence on the Term Commencement Date and shall be due and payable as set forth on the face hereof. The Lease Term - shall automatically extend beyond its original expiration date, on the same terms and conditions (including payments) unless ninety (90) days prior to the expiration of the Lease Term, Lessee gives Lessor written notice of Lessee's election to extend the Lease Term, purchase the Equipment or return the Equipment under the terms hereof. Lessee shall pay an administrative late charge of 5% of the amount of any overdue payment plus interest on such delinquent payment of 1 1/2% per month or the maximum amount permitted by law, whichever is lower. All payments to be made to Lessor shall be made to Lessor at the address shown on the face hereof or at such other place as Lessor shall specify in writing.

If a Fair Market Value Purchase Option or other Purchase Option(s) are indicated on the face hereof, then so long as no Event of Default has occurred and is continuing hereunder and upon at least ninety (90) days prior written notice to Lessor, Lessee shall have the option at the expiration of the initial Lease Term of this Lease to: 1) purchase all, but not less than all, of the Equipment for an amount equal to either the Fair Market Value of the Equipment or other stated Purchase Option amount indicated on the face hereof (plus any taxes applicable at the time of purchase) on the date of the expiration of the initial Lease Term (the "Purchase Date) or, 2) to extend the Lease Term covering all, but not less than all, of the Equipment for a mutually agreed upon period. This Lease shall continue in effect following said extended period until terminated by either party upon not less than ninety (90) days prior written notice. Title to the Equipment shall automatically pass to Lessee on the Purchase Date, provided Lessee had paid the full purchase price. If the Purchase Option is Fair Market Value, then the Fair Market (Rental) Value shall be determined on the basis of and shall be aggregate amount which would be obtainable at the expiration of the initial Lease Term in an arm's length transaction between an informed and willing buyer/user (Lessee) and an informed and willing seller (Lessor) under no compulsion to sell.

If the Purchase Option stated above is for a nominal amount (such as a $1.00, $101.00 or similar amount) then this Lease is a mandatory purchase and is a lease intended for security and a secured transaction. Lessor is solely financing Lessee's purchase of the Equipment and Lessee's owns and holds legal title to the Equipment and any legal title Lessor has transferred to Lessee on the Term Commencement Date on an "AS IS", "WHERE IS" basis, without any express or implied representations or warranties. Lessee at all times holds good legal valid title in and to the Equipment and Lessor is not the owner of the Equipment for any purpose; provided, however that Lessor retains a valid, enforceable, first priority perfected security interest in the Equipment, subject to no other interest, lien or encumbrance, until all Lease obligations are satisfied. Lessee is obligated to purchase all of the Equipment at the end of the Lease Term for the Purchase Option amount stated to be paid on the last day of Lease Term, which such amount constitutes the anticipated or estimated residual value of the Equipment.

The risk of loss and obligation to insure the Equipment shall remain with the Lessee until the Purchase Option is properly and fully exercised in Lessor's sole discretion. In the event Lessee shall elect to not properly exercise any such Purchase Option as herein required, Lessor may declare a default hereunder and the term of this Lease with respect to such Equipment shall

continue month-to-month and is terminable by Lessor upon thirty (30) days advance written notice, with the same terms of the Lease, including the highest monthly rent payable during the Lease Term, until such Purchase Option is properly exercised pursuant to the requirements of subsection 1) above, the Lease is properly renewed as required pursuant to the requirements of subsection 2) above, or the Lessor agrees to permit Lessee to return the Equipment in compliance this Lease, including Section 18 below.

The parties agree that the Lease is a "Finance Lease" as defined in Section 2 A of the Uniform Commercial Code ("UCC"). The Lessee may contact the manufacturer of the Equipment (Manufacturer) for a copy of or a description of any rights the Lessee may have arising from a purchase order or supply contract. This Lease cannot be cancelled or terminated by Lessee except as expressly provided herein.

**3. TAXES AND OTHER CHARGES**
Lessee shall pay when due, and defend and indemnify Lessor against liability for, all fees, charges, assessments, and taxes of any kind whatsoever (including any related interest or penalties) now or hereafter imposed by any governmental entity upon the Lease or the Equipment, or with respect to the manufacturing, ordering, shipment, purchase, sale ownership, delivery, leasing, operation, possession, use, return, or other disposition thereof or the rental hereunder (other than taxes on or measured solely by the net income of a Lessor).

If a Fair Market Value or other true lease Purchase Option (for purposes of federal and state income tax purposes) is indicated on the face hereof, Lessor shall be entitled to claim Tax Benefits (hereinafter defined), then, in the event Lessor shall not be entitled, for any reason, to all or any portion of the Tax Benefits (a "Loss"), and after 30 days written notice from Lessor that a Loss has occurred, Lessee shall pay to Lessor a lump sum amount as stated in the notice which, in Lessor's reasonable opinion, will cause Lessor's after-tax economic yield and overall net after tax cash flows to be maintained at the same level as though the Loss had not occurred. As used in this Section, "Tax Benefits" means any deduction under Section 168 of the Internal Revenue Code of 1986 and interest deductions with respect to any indebtedness incurred by Lessor with respect to acquisition of Equipment by Lessor, and assuming Lessor's then effective corporate tax rate.

**4. INDEMNITY**
Lessee shall bear all risk of loss with respect to the Equipment and indemnify and hold harmless, and defend Lessor against (a) any liabilities and expenses whatsoever (including legal expenses of every kind and nature) arising out of the manufacturing, ordering, purchase, shipment, acceptance or rejection, ownership, titling, registration, leasing, possession, operation, use, return, or other disposition of the Equipment, including patent or latent defects, any claims based on absolute tort liability, warranty or patent, trademark or copyright infringement; and (b) any obligation or liability to the Manufacturer of the Equipment arising under any purchase orders issued by or assigned to Lessor.

The covenants and indemnities contained in this Section 4 and Section 3 shall survive the termination of this Lease and shall be payable by Lessee within 7 days of Lessor's written demand thereof.

Lessor shall have the right to recover from Lessee any expenses paid or incurred by Lessor in connection with the repossession, transporting, holding, insuring, repairing, refurbishing and subsequent sale, lease or other disposition of the Equipment including reasonable attorney fees and legal expenses.

**5. POSSESSION; INSPECTION; PERSONAL PROPERTY**
Provided no Event of Default has occurred, Lessee shall have quiet possession of the Equipment during the Lease Term. Lessor may require Lessee at Lessee's expense, to affix plates or markings on the Equipment indicating Lessor is the owner. Lessor may enter the Equipment location at reasonable

Initials: X



times upon reasonable notice to inspect the Equipment or show it to prospective purchasers or lessees. The Equipment shall remain personal property even though attached or affixed to real property.

**6. DISCLAIMER OF WARRANTIES; LIMITATION OF LIABILITY**
LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER, INCLUDING WITHOUT LIMITATION, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, DESIGN, CONDITION, CAPACITY, DURABILITY, QUALITY OF MATERIAL OR WORKMANSHIP, CONFORMITY WITH ANY DESCRIPTION OR PATENT INFRINGEMENT, AND HEREBY DISCLAIMS ANY SUCH WARRANTY. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE EQUIPMENT. DEFECTS THEREIN OR FAILURES IN THE OPERATION THEREOF OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES. LESSEE HAS MADE THE SELECTION OF EACH ITEM OF EQUIPMENT BASED ON ITS OWN JUDGEMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSEE LEASES THE EQUIPMENT "AS IS."

**7. REPRESENTATIONS, WARRANTIES AND COVENANTS**
Lessee represents, warrants and covenants with Lessor that: (a) Lessee has the form of business organization indicated on the face hereof, and is duly organized, existing, in good standing and qualified to do business wherever necessary to carry on its present business and operations and to own its property; (b) this Lease has been duly executed and delivered, requires no further shareholder or partner approval of, or the giving notice to, any governmental authority and does not to contravene any law, regulation or other governmental order, any certificate or articles of incorporation or by-laws or partnership certificate or agreement, or any agreement, indenture or other instrument to which Lessee is a party or by which it may be bound and constitutes a legal, valid and binding obligation of Lessee enforceable in accordance with its terms; (c) Lessee shall not allow any lien, encumbrance or security interest on or with respect to the Equipment or Lease (except by, through or under Lessor) and shall not assign, sell, sublease, or otherwise dispose of any right or interest in this Lease or the Equipment without the prior written consent of Lessor; (d) the Equipment will be used solely in the conduct of Lessee's business and will remain in the location shown on the face hereof; (e) if Lessee is a corporation, a Secretary or Assistant Secretary, by attesting to the execution by the Lessee on the face hereof, certifies that the officer signing on behalf of the Lessee has been duly authorized and empowered to execute this Lease on behalf of the Lessee by appropriate vote of Lessee's Board of Directors or under Lessee's by laws, that such officer did so execute this Lease, and that this Lease has been duly authorized and approved by or under such vote or by-laws; (f) Lessee's legal name is as stated in the Lease, and if an individual, such name is as stated on Lessee's valid and unexpired state driver's license, or alternative identification issued by Lessee's primary state of residence, and if a legal entity, such legal name is as stated on Lessee's organizational documents; (g) any changes in Lessee's legal name will provide at least thirty (30) days prior written notice if Lessee changes its name, legal entity or principal place of business; (h) Lessee authorizes Lessor to obtain and use credit bureau reports and other similar inquiries Lessor deems necessary, whether obtained directly by Lessor indirectly through other lenders or vendors assisting with Lessee's financing and purchase of Equipment; (i) Lessee will promptly execute and deliver any further documents and take further action as Lessor may request to fulfill the purpose of this Lease; (j) Lessor hereby provides notice that pursuant to the USA PATRIOT Act (Title III of Pub. L. 107-56, October, 26 2001), Lessor is required to obtain, verify and record information identifying Lessee and any guarantor(s), including names, addresses and information to comply with this law; (k) Lessee and any Guarantor(s) agree to promptly provide documentation complying with obligations under anti-money laundering laws, "know your customer" requirements and the Act; (l) Lessee is, and will remain, in full compliance with all applicable laws, including that: (i) no person who owns a controlling interest in or otherwise controls Lessee or any Guarantor is, or shall be, (A) listed on the "Specially Designated Nationals and Blocked Person List" maintained by the Office of Foreign Assets Control ("OFAC"), Department of Treasury or any

similar lists maintained by agencies under statute, regulation, order or other authority, or (B) a person designated under Sections 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), or any related authority; and (ii) all applicable Bank Secrecy Act laws for the prevention and detection of money laundering violations.

**8. DEFAULT**
Lessee shall be in default of this Lease upon: (a) failure to pay rent within 10 days of the due date thereof; or (b) failure to perform or observe any covenant, condition or agreement of this Lease where such failure continues for 10 business days after notice thereof to Lessee, or default under any note, security agreement, equipment lease or title retention or conditional sales agreement beyond any period of grace provided with respect thereto whether with Lessor or any third party if the effect of such default is to cause or permit the holder of such indebtedness to cause such indebtedness to become due prior to its stated maturity; or (c) any representation or warranty made by Lessee to Lessor shall prove to be incorrect or the condition of Lessee's affairs shall change so as in the opinion of Lessor to impair materially Lessor's interest or increase materially Lessor's credit risk; or (d) Lessee shall generally not pay its debts as they become due; file or have filed against it a petition under any bankruptcy or insolvency law of any jurisdiction, make an assignment for the benefit of its creditors; consent to the appointment of a custodian, receiver, trustee or other officer with similar powers of itself or any substantial part of its property; be adjudicated insolvent or be liquidated; or take any action for the purpose of the foregoing; or (e) Lessee or any Guarantor of Lessee is declared legally deceased (if sole proprietor or general partner) or if Lessee or any Guarantor shall terminate its existence by merger, consolidation, sale of substantially all of its assets or otherwise or Lessee or any Guarantor has a change in control resulting in fifty percent (50%) or more of the ownership or interests held by different party(s) than had control when this Lease commenced; (f) any material adverse change in the financial, business or operational condition of Lessee or any Guarantor.

**9. REMEDIES**
Upon default, Lessor may exercise any of the following remedies with respect to any or all Equipment (which for purposes of this Section 9 includes all other personal property Lessee at any time leases or has leased from Lessor or that secures or has secured any indebtedness of Lessee to Lessor); (a) enter the Equipment location and take immediate possession of and remove the same by summary proceedings or otherwise, all without liability to Lessor for or by reason of damage to property or such entry or taking possession; (b) sell any or all of the Equipment at public or private sale, re-lease, or otherwise dispose of any or all of the Equipment at public or private sale, re-lease, or otherwise dispose of the Equipment in compliance with the UCC and other applicable laws; (c) remedy such default for the account of and at the expense of Lessee; (d) terminate this Lease immediately by written notice to Lessee, whereupon Lessee shall without further demand but at Lessor's option, as liquidated damages for loss of a gain and not as a penalty, forthwith pay Lessor an amount equal to all accrued and unpaid Payments plus the Present Value of all future Payments and Lessor's original anticipated residual, all discounted using a rate of three percent (3%) per annum plus all other amounts then payable to Lessor hereunder, and (e) exercise any other right or remedy at law, or in equity or bankruptcy, including specific performance or damages for the breach hereof, including reasonable attorney's fees and court costs.

Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity. No express or implied waiver of any default shall constitute a waiver of any Lessor's other rights.

**10. ADDITIONAL SECURITY**
In order to more fully secure its obligations to Lessor hereunder, Lessee hereby grants to Lessor, a security interest in any and all such personal property as Lessee from time to time leases from Lessor or that secures any indebtedness of Lessee to Lessor. Lessor may apply at any time Lessee's

Initials: X_____




Security Deposit to Lessee's obligations hereunder whereupon Lessee shall immediately reimburse Lessor for the amount of the Security Deposits so applied. Any Security Deposit of Lessee shall be held by Lessor in a non-interest-bearing account, comingled with funds of other parties and shall be returned to Lessee solely upon satisfaction by Lessee of all of its obligations under this Lease.

## 11. NOTICES
Any notices and demands required or permitted under this Lease shall be in writing by registered or certified mail, return receipt requested, and shall become effective when deposited in the United States mail with postage prepaid at the address herein above set forth, or to such other address as the party to receive notice hereafter designates by such written notice.

## 12. USE; REPAIRS; LOSS AND DAMAGE
Lessee will operate the Equipment in accordance with any applicable Manufacturer's manuals by competent and duly qualified personnel only, in accordance with applicable requirements of law, if any, and for business purposes only. Lessee, at its own cost and expense, shall keep the Equipment in good repair, condition and working order. Lessee will immediately notify Lessor in writing if any casualty event occurs causing damage, loss, or theft to the Equipment and no such casualty event shall relieve Lessee of its obligations under the Lease. If any item of Equipment shall become lost, stolen, destroyed, damaged beyond repair or rendered permanently unfit for use for any reason, or in the event of any condemnation, confiscation, theft or seizure or requisition of title to or use of such item, Lessee shall either, at Lessor's option: (a) place the Equipment in good repair, condition, and working order, (b) replace the Equipment with like kind equipment, in good repair, condition, working order, free of all liens and encumbrances; provided, Lessee will obtain Lessor's prior written consent for any Equipment replacement and provide all documents and requirements Lessor deems necessary; or (c) promptly pay Lessor an amount equal to the greater of (i) the full replacement value of such item or (ii) the aggregate of all rental payments then remaining unpaid plus the amount of any Purchase Option or obligation with respect to such item.

## 13. INSURANCE
Lessee shall procure and maintain during the entire term of this Lease, at Lessee's expense, such insurance coverages in such amounts and with such responsible insurers, all as satisfactory to Lessor including: (a) Comprehensive General Liability Insurance with minimum limits of $1,000,000 each occurrence with Lessor named as additional insured; and (b) all Risk Physical Damage Insurance in an amount not less than the greater of (i) the full replacement value of such item or (ii) the aggregate of all rental payments then remaining plus the amount of any Purchase Option or obligation with respect to such item. Lessor will be named as loss payee. Lessee shall waive Lessee's rights and its insurance carrier's right of subrogation against Lessor for any and all loss or damage. All policies shall contain a clause requiring the insurer to furnish Lessor with at least 30 days prior written notice of any material change, cancellation, or non-renewal of coverage. Upon request by Lessor, Lessee shall furnish Lessor with a certificate of insurance or other evidence satisfactory to Lessor that such insurance coverages are in effect. Lessee will provide Lessor a limited power of attorney to make claims for, receive payment of, and endorse all documents, checks or other drafts for loss, theft, or damage to the Equipment and Lessee will cooperate with Lessor and/or insurance agents for procuring insurance and processing claims.

## 14. GUARANTY
In order to induce Lessor to enter into this Lease, each guarantor executing on the face hereof hereby unconditionally and absolutely guarantees payment to Lessor of all liabilities of Lessee to Lessor of whatever nature, whether now existing or hereinafter incurred, including reasonable attorney's fees and costs of collection with respect to the enforcement of any such liabilities or this guaranty. This is a guaranty of payment and not of collection and the liability of each guarantor shall not be affected by any invalidity in or

unenforceability of such liabilities, change, alteration, renewal, extension, continuation, compromise, waiver or other modification of such liabilities, any of which may be done without notice to or the consent of any guarantor. Each guarantor waives notice of acceptance of this guaranty and of extensions of credit by Lessor to Lessee, presentment and demand for payment of any of the liabilities of the Lessee, protest and notice of dishonor of default to such guarantor of any other party with respect to such liabilities and all other notices, demands, set-offs, counterclaims and defenses of any nature whatsoever. This guaranty may be enforced by Lessor without first proceeding against the Lessee or any other party or against any security which may be available with respect to the Lessee's liabilities. In the event of any default by the Lessee on any obligation owed to the Lessor, whether under this Lease or otherwise, each guarantor agrees not to demand, take steps for the collection of, or assign, transfer or otherwise dispose of any indebtedness owed by the Lessee to such guarantor. Lessor shall have the sole right to demand, receive, sue for, collect, receipt for and give full discharge for such indebtedness until all of the liabilities of the Lessee to the Lessor have been satisfied in full. If guarantor is a corporation, guarantor certifies that the officer signing on behalf of the guarantor has been duly authorized and empowered to execute and deliver to Lessor this guaranty and that the guaranty has been duly authorized and approved by and under appropriate vote of the guarantor's Board of Directors or its by-laws. No guarantor shall be released or discharged, either in whole or in part, by Lessor's failure or delay to perfect or continue the perfection of any security interest in any property which secures the liabilities of Lessee to Lessor or to protect the property covered by such security interest. Each guarantor waives any duty on Lessor's part (should such duty exist) to disclose to any guarantor any fact or thing related to the business operations or conditions (financial or otherwise) of the Lessee or its property whether now or hereafter known by Lessor.

## 15. FURTHER ASSURANCES
Lessee shall promptly execute and deliver to Lessor such further documents and take such further actions Lessor may require in order to more effectively carry out the intent and purpose of this Lease. Lessee shall provide to Lessor within 120 days after the close of each Lessee's fiscal year, and upon Lessor's request, within 45 days of the end of each quarter of Lessee's fiscal year, a copy of its financial statements prepared in accordance with generally accepted accounting principles, it being understood that all such material shall be held in confidence by Lessor. Lessee hereby appoints Lessor, with full power of substitution, as its agent and attorney-in-fact, which is irrevocable and coupled with an interest, to execute any such financing statements under the Uniform Commercial Code and any appropriate amendments thereto on Lessee's behalf which Lessor deems necessary to protect Lessor's interest in the Equipment. Lessor may file a duplicate or a photocopy of this Lease as a financing statement. In no event shall Lessee lease or otherwise finance upgrades or additions to Equipment with any party other than Lessor without prior written consent of Lessor.

## 16. ASSIGNMENT
This Lease and all rights of Lessor hereunder shall be assignable by Lessor absolutely or as security, without notice to Lessee, subject to the rights of Lessee hereunder. The term Lessor shall mean, as the case may be, any assignee of Lessor. Any such assignment shall not relieve Lessor of its obligation hereunder unless specifically assumed by assignee, and Lessee agrees it shall pay such assignee without any defense, rights of set-off, or counterclaims and shall not hold or attempt to hold such assignee liable for any Lessor's obligations hereunder. LESSEE MAY NOT SUBLEASE NOR ASSIGN ITS RIGHTS OR OBLIGATIONS HEREUNDER WITHOUT LESSOR'S PRIOR WRITTEN CONSENT.

## 17. LESSEE'S OBLIGATIONS UNCONDITIONAL
This Lease is a net lease and Lessee shall not be entitled to any abatement of any amount payable hereunder and such payments will be made absolutely and unconditionally without set-off, counterclaim, recoupment, defense or

Page 4 of 5

Initials: X



**MANUFACTURERS
FINANCING
SERVICES**

other right which Lessee may have against any person for any reason whatsoever.

**18. RETURN OF EQUIPMENT**

Upon expiration of the Lease Term, if the Lessee chooses not to promptly exercise the Purchase Option, Lessee, at its own expense, shall immediately return the Equipment in the same condition as when delivered to Lessee, ordinary wear and tear excepted, to such location as Lessor shall designate, free and clear of all liens, encumbrances and rights of others pursuant to Manufacturer's de-installation, packing and shipping specification. Upon return of Equipment, Lessee shall provide Lessor with a certificate from the Manufacturer or qualified maintenance organization acceptable to Lessor stating that the Equipment has been inspected, tested, and qualifies for their regular maintenance contract and is in the same condition as at the Acceptance Date (ordinary wear and tear resulting from proper use excepted). In the event that Lessee does not provide such a certificate, Lessor shall have the right to have the Equipment inspected and tested and Lessee shall pay Lessor the cost of such inspection and testing, and any repairs necessary for the Manufacturer or maintenance organization to accept the Equipment under a maintenance contract at it's then standard rates. Lessee shall remain obligated to pay Rent on the unreturned and uncertified Equipment until Lessor has been provided with such certificate or such acceptance. The risk of loss and obligation to insure the Equipment shall remain with the Lessee until the returned Equipment is accepted by Lessor. In the event Lessee shall not surrender up and redeliver the Equipment to Lessor as herein required, the term of this Lease with respect to such Equipment shall continue on a month-to-month basis terminable by Lessor upon 30 days advance written notice as a rent per month equal to the highest monthly rent for the equipment payable during the Lease Term.

**19. MISCELLANEOUS**

Any provision of the Lease which is unenforceable shall not affect the enforceability of the remaining provisions hereof. A waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given. To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon Lessee by Section 2A of the UCC. The original Lease shall constitute the original chattel paper for purposes of the UCC. This Lease shall in all aspects be governed by and construed in accordance with the law of the State of California, including all matters of construction, validity, and performance.

Initials: X _____

# EXHIBIT 2

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

Lien Solutions
Representation of filing

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Phone: (562) 949-4771 x2501 Fax: (562) 942-2657

**B. E-MAIL CONTACT AT FILER (optional)**
talva@mfslease.com

**This filing is Completed**
File Number : 197722435757
File Date  : 10-Jul-2019

**C. SEND ACKNOWLEDGMENT TO: (Name and Address)**    15127 -

Financial Services
10370 Slusher Drive, Suite 10
Santa Fe Springs, CA  90670

70720950

CALI

File with: Secretary of State, CA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Spearman Aerospace, Inc. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 9215 Greenleaf Avenue | Santa Fe Springs | CA | 90670 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MANUFACTURERS FINANCING SERVICES | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 10370 Slusher Drive, Suite 10 | Santa Fe Springs | CA | 90670 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
One (1) Doosan Horizontal Machining Center, Model No. NHP 4000
Equipped with MP Systems Coolant Unit, Stackable Chiller, MP Systems Mist Collector, Renishaw RMP60 Spindle Probe, LNS \Turbo MF2, rear discharge, filtering Chip Conveyor, Tooling, Workholding, and equipped with all standard and together with all replacements, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☒ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
70720950            2019001580

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**EXHIBIT 3**



Mr. Urio Zanetti
Spearman Aerospace, Inc.
9215 Greenleaf Avenue
Santa Fe Springs, CA 90670

RE:    Equipment Lease Agreement No.    1580, dated as of July 03, 2019
       (the "Contract")

Dear Mr. Zanetti,

Please be advised that Manufacturers Financing Services has assigned all its right, title and
interest in the above-referenced Contract to Midland Equipment Finance. Effective immediately,
Midland Equipment Finance will bill, collect and otherwise service the Contract in accordance
with its terms.

You are hereby directed and authorized by Manufacturers Financing Services to remit all
payments under the Contract as directed by Midland Equipment Finance and to otherwise deal
with Midland Equipment Finance on all matters relating to the Contract and the Equipment.

Very Sincerely Yours,
Manufacturers Financing Services

By: _____
       Darryl Schoen, President

# EXHIBIT 4



B3030-5023 09/10/2024 6:55 PM Received by California Secretary of State

U240071087625



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**NOTICE OF JUDGMENT LIEN (JL 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: U240071087625 |
| Date Filed: 9/10/2024 |

**Submitter Information:**

| | |
| --- | --- |
| Contact Name | MARK M. SCOTT |
| Organization Name | Buchalter |
| Phone Number | (949) 760-1121 |
| Email Address | MSCOTT@BUCHALTER.COM |
| Address | 18400 VON KARMAN AVENUE SUITE 800 IRVINE, CA 92612 |

**Judgment Debtor Information:**

| Judgment Debtor Name | Mailing Address |
| --- | --- |
| SPEARMAN AEROSPACE, INC. | 9215 GREENLEAF AVENUE SANTA FE SPRINGS, CA 90670 |
| URIO ZANETTI | 9215 GREENLEAF AVENUE SANTA FE SPRINGS, CA 90670 |

**Judgment Creditor Information:**

| Judgment Creditor Name | Mailing Address |
| --- | --- |
| MIDLAND STATES BANK | 5403 Olympic Drive Suite 200 Gig Harbor, WA 98335 |

**Judgment Information:**

| | |
| --- | --- |
| A. Name of Court Where Judgment Was Entered | SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES |
| B. Title of the Action | MIDLAND STATES BANK v. SPEARMAN AEROSPACE, INC. |
| C. Case Number | 24STCV15866 |
| D. Date Judgment Was Entered | 09/09/2024 |

| E. Date(s) of Subsequent Renewal of Judgment (if any) |
| --- |
| None Entered |

| | |
| --- | --- |
| F. Date of This Notice | 09/10/2024 |
| G. Amount Required to Satisfy Judgment at This Date of Notice | $327,352.39 |

All property subject to enforcement of a Money Judgment against the Judgment Debtor to which a Judgment Lien on personal property may attach under Section 697.530 of the Code of Civil Procedure is subject to this Judgment Lien.

**Declaration and Signature:**

Declaration:   I am the Attorney of Record for the Judgment Creditor.

☒  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*MARK M. SCOTT*                                             *09/10/2024*

Sign Here                                                              Date

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Buchalter PC, 425 Market St., Suite 2900, San Francisco, CA 94105.

A true and correct copy of the foregoing document entitled (*specify*): **MIDLAND STATES BANK'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS REGARDING THE DEBTOR'S MOTION FOR ORDER SETTING PROPERTY VALUE FOR PURPOSES OF SECTION 506(a) OF THE BANKRUPTCY CODE EXTINGUISHING LIENS IN EXCESS OF SAID VALUE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 8, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Karen L Belair    kbelair@zwickerpc.com
- David A Berkley    david.berkley@wbd-us.com, mary.koo@wbd-us.com;Sul.Lee@wbd-us.com
- M Douglas Flahaut    df@echoparklegal.com
- Robert Paul Goe (TR)    bktrustee@goeforlaw.com,
  kwareh@goeforlaw.com;bkadmin@goeforlaw.com;C187@ecfcbis.com;kmurphy@goeforlaw.com;rgoe
  @goeforlaw.com
- Arnold L Graff    agraff@wrightlegal.net, nvbkfiling@wrightlegal.net;jpowell@wrightlegal.net
- Noreen A Madoyan    Noreen.Madoyan@usdoj.gov
- Anthony J Napolitano    anapolitano@buchalter.com, docket@buchalter.com;marias@buchalter.com
- Sean A OKeefe    sokeefe@okeefelc.com, seanaokeefe@msn.com
- David L Oberg    david@oberglawapc.com
- Madison B Oberg    madison@oberglawapc.com
- Thomas J Polis    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- Amitkumar Sharma    amit.sharma@aisinfo.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Dylan J Yamamoto    dylan@echoparklegal.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **April 8, 2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Deborah J. Saltzman
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1634 / Courtroom 1639
Los Angeles, CA 90012

James S Livermon
Womble Bond Dickinson (US) LLP
555 Fayetteville St Suite 1100
Raleigh, NC 27601
*Attorney for Creditor The Huntington National Bank*

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 8, 2025 | Elizabeth Hernandez | /s/ Elizabeth Hernandez |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**